MARC E. MAYER (SBN 190969); mem@msk.com
KARIN G. PAGNANELLI (SBN 174763); kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant
Activision Blizzard, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKS ENTERTAINMENT, INC., | CASE NO. 3:21-CV-02003-TWR-MDD |
| Plaintiff, | [Assigned to Judge Todd W. Robinson] |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTIONS AND:** |
| ACTIVISION BLIZZARD, INC. AND ROCKSTAR GAMES, INC., | **(1) MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND** |
| Defendants. | **(2) SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD CLAIM FOR RELIEF FOR COMMERCIAL APPROPRIATION OF LIKENESS PURSUANT TO CCP § 425.16** |
| | [Notice of Motions, Request For Judicial Notice, Declarations of Marc E. Mayer and James Lodato and [Proposed] Order Filed Concurrently Herewith] |
| | Courtroom: 3A (3rd Floor) <br> Date: April 20, 2022 <br> Time: 1:30 p.m. |

Mitchell
Silberberg &
Knupp LLP

13873032.6

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

I.      STATEMENT OF FACTS ......................................................................... 3

II.     THE COURT SHOULD DISMISS PLAINTIFF'S FIRST AND
        SECOND CLAIMS FOR TRADEMARK AND COPYRIGHT
        INFRINGEMENT. .................................................................................... 6

        A.      Plaintiff's Trademark Claim Is Barred By The First Amendment. ...... 8

        B.      Plaintiff's Allegations Do Not Support A Claim For Copyright
                Infringement. .................................................................................. 122

III.    PLAINTIFF'S RIGHT OF PUBLICITY CLAIM SHOULD BE
        STRICKEN UNDER CCP § 425.16(b)(1). ............................................. 17

        A.      The Right of Publicity Claim Arises From Protected Activity ........... 18

        B.      Plaintiff Cannot Establish A Probability Of Prevailing On Its Right
                Of Publicity Claims. ......................................................................... 20

CONCLUSION ................................................................................................. 24

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

### CASES

*Aguilar v. Universal City Studios, Inc.,*
174 Cal. App. 3d 384 (Ct. App. 1985) ............................................... 2, 9, 22, 23

*Allen v. Acad. Games League of Am., Inc.,*
89 F.3d 614 (9th Cir. 1996) ....................................................................... 16, 17

*Allen v. Gordon,*
446 N.Y.S.2d 48. 49 (1st Dep't 1982), *aff'd* 56 N.Y.2d 780 (1982) ................... 23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ....................................................................................... 6, 7

*Basile v. Warner Bros. Entm't, Inc.,*
No. CV155243DMGMRWX, 2016 WL 5867432 (C.D. Cal. Jan. 1,
2016) .......................................................................................................... 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................... 6

*Brown Bag Software v. Symantec Corp.,*
960 F.2d 1465 (9th Cir. 1992) .......................................................................... 12

*Brown v. Elec. Arts, Inc.,*
724 F.3d 1235 (9th Cir. 2013) ................................................................*passim*

*Brown v. Ent. Merchants Ass'n.,*
564 U.S. 786 (2011) ......................................................................................... 19

*Caiz v. Roberts,*
382 F. Supp. 3d 942 (C.D. Cal. 2019) .............................................................. 10

*Capcom U.S.A., Inc. v. Data E. Corp.,*
No. C 93-3259 WHO, 1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) ......... 12, 17

*Cavalier v. Random House, Inc.,*
297 F.3d 815 (9th Cir. 2002) ...................................................................... 12, 15

*Chavez v. Mendoza,*
94 Cal. App. 4th 1083 (2001) .......................................................................... 18

CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

*Clare v. Farrell,*
  70 F. Supp. 276 (D. Minn. 1947) ...............................................................9, 10, 23

*Costanza v. Seinfeld,*
  279 A.D.2d 255 (1st Dep't 2001) .........................................................................23

*Daniels v. Walt Disney Co.,*
  958 F.3d 767 (9th Cir. 2020) ................................................................................16

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) ..................................................................................8

*Data East USA, Inc. v. Epyx, Inc.,*
  862 F.2d 204 (9th Cir. 1988) .........................................................................12, 13

*DaVinci Editrice S.R.L. v. ZiKo Games, LLC,*
  183 F. Supp. 3d 820 (S.D. Tex. 2016)..................................................................16

*Doody v. Penguin Grp. (USA) Inc.,*
  673 F. Supp. 2d 1144 (D. Haw. 2009) .................................................................14

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.,*
  547 F.3d 1095 (9th Cir. 2008)......................................................................8, 9, 10

*Esplanade Prods., Inc. v. Walt Disney Co.,*
  No. CV1702185MWFJCX, 2017 WL 5635024 (C.D. Cal. July 11,
  2017) .....................................................................................................................13

*Evans v. NBCUniversal Media, LLC,*
  No. CV 21-0984-CBM-PD(x), 2021 WL 4513624 (C.D. Cal. July
  23, 2021) ...............................................................................................................14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) .......................................................................................12, 13

*Funky Films, Inc. v. Time Warner Ent. Co.,*
  462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by
  Skidmore v. Zeppelin,* 952 F.3d 1051 (9th Cir. 2020)..............................12, 13, 15

Mitchell
Silberberg &
Knupp LLP

13873032.6

iii                         CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

*Gallagher v. Lions Gate Ent., Inc.,*
No. 215CV02739ODWEX, 2015 WL 12481504 (C.D. Cal. Sept.
11, 2015) ................................................................................................ 16

*Gordon v. Drape Creative, Inc.,*
909 F.3d 257 (9th Cir. 2018) .................................................................. 8

*Hilton v. Hallmark Cards,*
599 F.3d 894 (9th Cir. 2010) ................................................................ 20

*Identity Arts v. Best Buy Enter. Servs. Inc.,*
No. C 05-4656 PJH, 2007 WL 1149155 (N.D. Cal. Apr. 18, 2007) ............. 15, 16

*In re Gilead Scis. Sec. Litig.,*
536 F.3d 1049 (9th Cir. 2008) ................................................................. 7

*Jackson v. Netflix, Inc.,*
506 F. Supp. 3d 1007 (C.D. Cal. 2020) .................................................. 8

*Khoja v. Orexigen Therapeutics, Inc.,*
899 F.3d 988 (9th Cir. 2018) ................................................................... 7

*Kouf v. Walt Disney Pictures & Television,*
16 F.3d 1042 (9th Cir. 1994) ................................................................ 14

*Kronemyer v. Internet Movie Data Base, Inc.,*
150 Cal. App. 4th 941 (2007) ............................................................... 19

*Laws v. Sony Music Ent., Inc.,*
294 F. Supp. 2d 1160 (C.D. Cal. 2003), *aff'd*, 448 F.3d 1134 (9th
Cir. 2006) ............................................................................................. 16

*Litchfield v. Spielberg,*
736 F.2d 1352 (9th Cir. 1984) .............................................................. 14

*Lohan v. Take-Two Interactive Software, Inc.,*
31 N.Y.3d 111 (2018) ............................................................................ 24

*Maloney v. T3Media, Inc.,*
94 F. Supp. 3d 1128 (C.D. Cal. 2015) .................................................. 17

Mitchell
Silberberg &
Knupp LLP

13873032.6

iv          CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ................................................................. 10

*Medina v. Dash Films, Inc.*,
   No. 15-cv-2551 (KBF), 2016 WL 3906714 (S.D.N.Y. Jul, 14, 2016)................ 11

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................. 17

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
   74 F. Supp. 3d 1134 (N.D. Cal. 2014)..................................................... 9

*Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*,
   828 F.2d 1385 (9th Cir. 1987) ............................................................... 8

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ................................................................. 21

*Novalogic, Inc. v. Activision Blizzard*,
   41 F. Supp. 3d 885 (C.D. Cal. 2013)............................................... 3, 9, 11

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ............................................................... 19

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (1997) ............................................................ 21, 22

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ........................................................*passim*

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ...................................................... 18, 19, 20

*Shame on You Prods. v. Elizabeth Banks*,
   120 F. Supp. 3d 1123 (C.D. Ca. 2015) ............................................. 15, 16

*Stewart Surfboards, Inc v. Disney Book Grp., LLC*,
   No. CV 10-2982 GAF, 2011 WL 12877019 (C.D. Cal. May 11,
   2011) ................................................................................................. 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

*Stewart v. Rolling Stone LLC*,
  181 Cal. App. 4th 664 (2010) ................................................................... 20

*Tamkin v. CBS Broad., Inc.*,
  193 Cal. App. 4th 133 (2011) ................................................................... 19

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ................................................................... 8

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ..................................................................... 7

*Valencia v. Universal City Studios LLC*,
  No. 1:14-CV-00528-RWS, 2014 WL 7240526 (N.D. Ga. Dec. 18,
  2014) ....................................................................................................... 9, 10

*Vallejo v. Narcos Prods., LLC*,
  No. 1:18-cv-23462-KMM, 2019 WL 5884513 (S.D. Fla. May 24,
  2019) .......................................................................................................... 10

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.3d 977 (9th Cir. 2002) ..................................................................... 7

*VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*,
  699 F. App'x 667 (9th Cir. 2017) ................................................. 8, 10, 11

*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*,
  141 Cal. App. 4th 15 (2006) ..................................................................... 17

*Washington v. Take-Two Interactive Software, Inc.*,
  2012 WL 5359709 (Cal. App. Oct. 31, 2012) ......................................... 23

*Weinberg v. Feisel*,
  110 Cal. App. 4th 1122 (2003) ................................................................. 20

*Wild v. NBC Universal, Inc.*,
  513 F. App'x 640 (9th Cir. 2013) ............................................................. 14

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................... 7, 12, 13

CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

Cal. Civil Code § 3344 ................................................................20, 21

Cal. Code. Civ. P.
  § 425.16 ....................................................................................2, 17
  § 425.16(a) .................................................................................. 17
  § 425.16(b)(1) ........................................................................ 17, 18
  § 425.16(b)(2) ............................................................................. 17
  § 425.16(c) .................................................................................. 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) .....................................................2, 7, 8, 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

Plaintiff Brooks Entertainment ("Plaintiff") purports to be "a financial and entertainment consultant corporation," founded, owned, and controlled by an individual named Frances S. Brooks (a/k/a "Shon Brooks"). Defendant Activision Publishing, Inc. ("Activision") is a leading video game publisher, known for the *Call of Duty* franchise of first-person military action games. In this lawsuit, Plaintiff alleges that Activision infringed Plaintiff's copyright, trademark, and publicity rights[1] because Plaintiff once hoped to enlist Activision's help in developing educational games about the stock market and, by happenstance, one of Activision's immensely popular *Call of Duty* video games (namely, *Call of Duty: Infinite Warfare* ("*Infinite Warfare*" or the "Game")) included a minor character named Sean Brooks.

Even the most cursory review of Plaintiff's allegations (let alone review of the Game itself) confirms that Plaintiff's lawsuit is a flight of fancy, based upon threadbare, implausible, and observably false allegations. Many of Plaintiff's allegations even misrepresent the actual content of the Game. But even accepting Plaintiff's allegations as true, each of its claims are wholly without basis.

***First***, Plaintiff's claim that Activision infringed its trademark in the word SHON BROOKS is barred by the First Amendment, pursuant to *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and subsequent Ninth Circuit precedent, including *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013). The character at issue is an Irish soldier having the common Irish name "Sean Brooks." That name has "above zero" artistic relevance to the content of the Game and does not explicitly mislead

---

[1] Plaintiff inconsistently alleges that the use of his name and likeness violates "Mr. Brooks' rights" (Compl., ¶ 25) and its own rights as "the owner of the name, likeness, and persona of Shon Brooks (*id.*, ¶ 57). For purposes of this Motion, Activision assumes that Plaintiff has standing to bring this claim, though the facts may ultimately prove otherwise.

Mitchell
Silberberg &
Knupp LLP

13873032.6

1                    CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

1    customers.  Indeed, the character name has a different spelling and the Game

2    character bears no physical resemblance to Shon Brooks.

3        ***Second***, Plaintiff's copyright infringement allegations do not offer any

4    plausible basis to conclude that any of the *Call of Duty* games (especially *Infinite*

5    *Warfare*, which is the only game that includes a character named "Sean Brooks")

6    are substantially similar to Plaintiff's purported (but undisclosed) works.  In fact,

7    while Plaintiff alleges that Activision "knowingly and willfully copied" or "stole[]"

8    content from Plaintiff's purported games *Stock Picker* and *Save One Bank* (Compl.

9    ¶¶ 25, 42), completely absent from the Complaint is ***any*** description of those games

10   (far less any images or screen captures) or any serious discussion of why the works

11   are substantially similar.  The only similarities alleged in the Complaint are random

12   and wholly generic gameplay elements that are common to military action games.

13       ***Third***, no reasonable person possibly could conclude that Activision's game

14   character is based upon, incorporates, includes, or otherwise uses in any manner the

15   "name, image, or likeness" of Shon Brooks.  Sean Brooks, the game character, is a

16   space soldier and is starkly different in every way from Shon Brooks, the financial

17   consultant, including in appearance, clothing, voice, manner of speaking, and life

18   experience.  If claims could be premised on no more than the coincidental overlap of

19   a common name, then it would be impossible for content creators to ever choose

20   character names, since "[i]n a country of this size, containing all nationalities, it

21   would be truly remarkable if an author used a name which was possessed by no

22   one." *Aguilar v. Universal City Studios, Inc.,* 174 Cal. App. 3d 384, 391 (Ct. App.

23   1985).

24       All three claims are subject to dismissal under Rule 12(b)(6).  Additionally,

25   Plaintiff's Right of Publicity Claim should be stricken under California's SLAPP

26   statute, Cal. Code. Civ. P. § 425.16, because it arises from the exercise of free

27   speech rights (*e.g.*, the content of a fictional work) involving matters of public

28

Mitchell
Silberberg &
Knupp LLP

13873032.6

2                        CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

interest (*e.g.*, an iconic video game franchise about the future of international conflict). The Court should grant both Motions and award Activision its reasonable attorneys' fees and costs.

## I.     STATEMENT OF FACTS

**Activision and the *Call of Duty* Franchise.** Activision is a leading worldwide developer, publisher, and distributor of interactive entertainment, including the *Call of Duty* series of video games. *See* Declaration of James Lodato dated February 3, 2022 ("Lodato Decl."), ¶ 2. *Call of Duty* is among the most popular and well-known video game franchises in the world, and tens of millions of people have played *Call of Duty* games. The *Call of Duty* games are military action games "in which a player assumes control of a military soldier and fights against a computer-controlled or human-controlled opponent across a variety of computer-generated battlefields." *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 890 (C.D. Cal. 2013). Activision released its first *Call of Duty* game in 2003, and has released eighteen "core" *Call of Duty* titles for video game consoles and PCs. *See* Lodato Decl., ¶ 2.

In the *Call of Duty* games, players engage in high-stakes military combat missions from a "first person" perspective in a variety of settings and time periods, such as World War II, the Vietnam War, the 1980s, the present day, the near future, and the far future. *Id.*, ¶ 3. The *Call of Duty* games feature both a single-player campaign and a competitive multi-player mode. *Id.*, ¶ 4. The *Call of Duty* campaigns are "a fully cinematic experience featuring story, dialog, music, effects and all of the other elements found in a big budget entertainment franchise." *Novalogic*, 41 F. Supp. 3d at 890. In *Call of Duty*'s multi-player mode, players compete against each other in individual or team-based combat on a variety of simulated virtual battlefields, ranging from battle-torn cityscapes to high-tech indoor environments. *See* Lodato Decl., ¶ 4.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

***Call of Duty: Infinite Warfare.*** On or about November 4, 2016, Activision released *Call of Duty: Infinite Warfare* (the "Game"), which was the thirteenth installment in the *Call of Duty* franchise. *Id.*, ¶ 5; *see also* Declaration of Marc E. Mayer ("Mayer Decl."), Ex. 1. Like the other games in the series, the Game is a military action thriller featuring intense action, cinematic set pieces, and cutting-edge graphics. *Id.*, ¶ 6 & Ex. 1; *see also* Mayer Decl., Exs. 1-4. Also like the other *Call of Duty* games, the Game shipped with both a single-player campaign mode and a competitive multi-player mode. *See* Lodato Decl., ¶ 4.

The Game's campaign mode allows players to participate in a series of story-based missions, which together comprise an overarching fictional narrative about the future of international warfare and conflict. *Id.*, ¶ 6; *see also* Mayer Decl., Ex. 1. The Game is set in a distant future, in which Earth has been stripped of its natural resources, humans have colonized the solar system, and militant radical groups and political entities jockey for control of the solar system's remaining resources. *See* Lodato Decl., ¶ 6. In the Game, players assume the role of Commander Nick Reyes, the newly appointed captain of a space warship named *Retribution*. *Id.* Players, as Reyes, must lead the *Retribution*'s crew in an ongoing effort to protect the solar system against an extremist group of human colonists from Mars. *Id.* Reyes and his crew are tasked with a series of high-stakes missions on Earth and in space, requiring the player to engage in a variety of battle scenarios. *Id.*

While the player remains in control of Reyes throughout the campaign, the player is assisted in some missions by one or more computer-controlled crew members, including Corporal Sean Brooks (the "Brooks Character"). *See id.*, ¶ 7; Mayer Decl., Exs. 1, 3-4. The Brooks Character appears only as a computer-controlled digital model. Lodato Decl., ¶ 7. The Brooks Character is not playable, and is just one of the supporting characters in the story. *Id.* In the Game, the Brooks Character is depicted as a Caucasian male of Irish descent. *See id.*, ¶ 8 &

Mitchell
Silberberg &
Knupp LLP

13873032.6

4

CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Ex. 1; Mayer Decl., Exs. 1, 3-4. He speaks with an Irish accent, and generally appears in the Game in military gear and armor (*see id.*, ¶ 8 & Ex. 1; Mayer Decl., Exs. 3-4), as depicted below:



The Brooks Character does not appear in any other *Call of Duty* game. Lodato Decl., ¶ 9.

**Fran Shatone "Shon" Brooks.** Plaintiff claims to be a "financial and entertainment consultant[sic] corporation which helps its customers build their financial empire safely and hosts a TV Show aimed at encouraging and empowering youth to take control of their destiny and become successful adults." Compl., ¶ 9. The founder, CEO, and Chief Financial Officer (CFO) of Brooks Entertainment is Fran Shatone Brooks (a/k/a "Shon Brooks"). *Id.*, ¶ 9; *see also* Mayer Decl., Exs. 5-6. According to Plaintiff, Shon Brooks is a financial consultant, an "Award Winning Television Talk Show Host, Writer, [and] Producer" (*id.*), and a cigar importer. *See* Compl., ¶¶ 9-13. Shon Brooks is an African-American businessman who typically appears to the public in a dark suit and glasses, as illustrated below:

 

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

*See* Mayer Decl., Ex. 6.

Plaintiff claims that it is the owner of a registered trademark in the name SHON BROOKS, as well as the owner of Shon Brooks' rights of publicity. Compl., ¶¶ 14, 58. Plaintiff also claims that it owns a registered copyright in "concepts" that Brooks prepared for two educational video games about financial management: *Stock Picker* and *Save One Bank*. *Id.*, ¶ 39. Plaintiff has described *Stock Picker* as a "game [that] is downloadable through the internet and covers the fast-paced, and often misunderstood, world of the stock market, Wall Street, and the impact they have on the economy. Students can use play money to compete with different classrooms around the country in picking and investing in the most viable stocks." Mayer Decl., Ex. 7; *see also id.*, Ex. 8. It described *Save One Bank* as a game in which "[a]gents at Save One Bank will embark on a mission in 18 months to doggedly pursue greedy financial executives." *Id.*, Ex. 9; *see also id.*, Ex. 10. Brooks does not allege that either of these games were actually developed (far less released to the public). He does not allege that either of his video games were "first person" military shooters or involved military combat or futuristic warfare.

**The Lawsuit.** On November 30, 2021, Plaintiff filed this lawsuit alleging that (1) Activision's use of "the name and mark Sean Brooks as the main character in its Call of Duty Games" infringes Plaintiff's federally-registered trademark in the name "Shon Brooks" (Compl., ¶ 31); (2) the *Call of Duty* games infringe Plaintiff's federally-registered copyrights in the *Save One Bank* and *Stock Picker* games (*id.*, ¶ 25); and (3) the "Sean Brooks" character in the Game "uses the likeness, persona, and name of Plaintiff's owner Shon Brooks" (*id.*, ¶ 23).

## II. THE COURT SHOULD DISMISS PLAINTIFF'S FIRST AND SECOND CLAIMS FOR TRADEMARK AND COPYRIGHT INFRINGEMENT.

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Mitchell
Silberberg &
Knupp LLP

13873032.6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While the Court must accept material factual allegations as true, pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

When considering a motion to dismiss, it is proper for a court to consider "documents [such as copies of works] which are not physically attached to the complaint but whose contents are alleged in [the] complaint and whose authenticity no party questions." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007) (citation omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). The "incorporation by reference" doctrine is aimed at "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting … documents upon which their claims are based," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted), including audiovisual works such as videogames. *See Brown*, 724 F.3d 1235, 1240, 1248 n. 7 (approving district court's consideration of *Madden NFL* video game on Rule 12(b)(6) motion: "The district court properly considered the versions of *Madden NFL* submitted to the court as part of the complaint itself through the 'incorporation by reference' doctrine."). Where the incorporation by reference doctrine applies, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (motion to

Mitchell
Silberberg &
Knupp LLP

13873032.6

7                    CASE NO. 3:21-CV-02003
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

dismiss defamation claim analyzed in light of complete interview transcripts and tapes). Moreover, the Court need not accept as true any allegations that are contradicted by documents which are incorporated by reference or otherwise subject to judicial notice. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1388 (9th Cir. 1987).

A. **Plaintiff's Trademark Claim Is Barred By The First Amendment.**

Plaintiff's Lanham Act claim arises from the use of the name "Sean Brooks" for a ***fictional character in the Game***. In circumstances like this, courts in this Circuit do not apply the traditional "likelihood of confusion" test. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017). Instead, the plaintiff first must overcome a strict threshold test articulated in *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989). "Although this test traditionally applies to uses of a trademark in the title of an artistic work, there is no principled reason why it ought not also apply to the use of a trademark in the body of the work." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (citations omitted).

The *Rogers* test requires the defendant to make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment. *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018). Once this showing is made, the plaintiff bears the two-part burden of proving that the alleged use of its trademark (1) "has ***no artistic relevance*** to the underlying work whatsoever" or (2) "***explicitly misleads*** as to the source or the content of the work." *E.S.S.*, 547 F.3d at 1099 (citations omitted and emphasis added).[2] The Game

[2] Courts routinely dismiss Lanham Act claims at the pleading stage for failing to meet the *Rogers* test. *See, e.g.*, *VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming Rule 12(b)(6) dismissal of Lanham Act claims for failure to meet the *Rogers* test); *Brown*, 724 F.3d at 1248 (same); *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1014 (C.D. Cal. 2020) ("The Ninth Circuit applies *Rogers* to Lanham Act claims, often at the Rule 12 stage.").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell Silberberg & Knupp LLP

13873032.6

indisputably is an expressive work, featuring fictional characters and environments, dialogue, music, and dynamic storytelling. *See* Mayer Decl., Ex. 1; *see also Brown,* 724 F.3d at 1241 ("[the] *Madden NFL* [video game] is an expressive work" because it "features characters (players), dialogue (between announcers), plot (both within a particular simulated game and more broadly), and music."); *Novalogic*, 41 F. Supp. 3d at 898 (holding *Call of Duty: Modern Warfare 3* video game is an "expressive work" entitled to First Amendment protection); *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1140 (N.D. Cal. 2014) (same, for *Call of Duty: Ghosts*). As a result, Plaintiff must carry its burden of proving either of the two prongs of the *Rogers* test. It cannot do so.

**Artistic Relevance.** For purposes of the *Rogers* test, "the level of artistic relevance … merely must be above zero." *Brown*, 724 F.3d at 1243 (citation omitted). In other words, "only the use of a trademark with '*no* artistic relevance to the underlying work *whatsoever*' does not merit First Amendment protection." *E.S.S.*, 547 F.3d at 1100 (emphasis in original and citation omitted). There is sound basis for this "appropriately low" standard: "This black-and-white rule [that artistic relevance must merely be above zero] has the benefit of limiting [the court's] need to engage in artistic analysis in this context." *Brown*, 724 F.3d at 1243.

Activision's selection of "Sean Brooks" as the name of its character was an expressive and artistic choice with direct and obvious relevance to the Game. "Sean Brooks" is a logical and realistic name for a male soldier of Irish descent. In fact, "Sean" is the most popular boys' name in Ireland (Mayer Decl., Ex. 11), and thousands (if not hundreds of thousands) of people around the world share the last name "Brooks" (*id.*, Ex. 12). Thus, it was entirely appropriate for Activision to conclude that the name would be a good fit for the character in the Game. *See* Lodato Decl., ¶ 8. As the California Court of Appeal observed, "[a]t least some latitude must be given authors in their selection of names for [fictional] characters."

1     *Aguilar*, 174 Cal. App. 3d at 391 (quoting *Clare v. Farrell*, 70 F. Supp. 276, 279 (D.

2     Minn. 1947)).   *See also Valencia v. Universal City Studios LLC*, No. 1:14-CV-

3     00528-RWS, 2014 WL 7240526, at *8 (N.D. Ga. Dec. 18, 2014) (use of the name

4     "Honey" in film title is "artistically relevant to the protagonist Honey Daniels's first

5     name"); *Vallejo v. Narcos Prods.*, *LLC*, No. 1:18-cv-23462-KMM, 2019 WL

6     5884513, at *4 (S.D. Fla. May 24, 2019) ("Plaintiff does not and cannot allege that

7     the character of Valeria Velez is not artistically relevant to the show.").

8     **Not Explicitly Misleading.** Where, as here, the use has some artistic

9     relevance, *Rogers* provides that such use does not violate the Lanham Act unless it

10    "explicitly misleads" consumers as to the source or content of the work. This is a

11    high bar. *Rogers* and its progeny make clear that for the allegedly infringing use to

12    be "explicitly misleading," it must make an "***explicit* indication,**" "***overt* claim,**" or

13    "***explicit* misstatement**" about the source or content of the work. *Rogers*, 875 F.2d

14    at 1000-01 (emphasis added). "It is key here that the creator must *explicitly* mislead

15    consumers." *Brown*, 724 F.3d at 1245 (emphasis in original) (illustrative example

16    of explicitly misleading use: "Jim Brown Presents Pinball"); *Rogers*, 875 F.2d at

17    1107 (illustrative examples: "Nimmer on Copyright" and "Jane Fonda's Workout

18    Book"). "[T]he mere use of a trademark alone cannot suffice to make such use

19    explicitly misleading." *E.S.S.*, 547 F.3d at 1100. Accordingly, courts have

20    dismissed Lanham Act claims arising from the use of a common word or name that

21    does not "explicitly mislead," notwithstanding any similarity to a pre-existing mark.

22    *See, e.g.*, *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002)

23    (dismissing Lanham Act claims arising from use of the mark "Barbie" in song title);

24    *Caiz v. Roberts*, 382 F. Supp. 3d 942, 952 (C.D. Cal. 2019) (same, use of

25    "mastermind" in album title).

26         Plaintiff does not and cannot point to ***anything*** in the Game or its marketing

27    that even suggests—much less explicitly indicates—that Plaintiff is the source of the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Game or otherwise affiliated therewith. *See VIRAG, S.R.L.*, 2015 WL 5000102, at *12 (dismissing Lanham Act claims where "[t]he plaintiffs do not allege or even suggest that the defendants explicitly indicated, claimed, or misstated that VIRAG was a source of content for [the games] or sponsored [the games]"). To the contrary, the Game, its packaging, and concomitant promotional materials prominently and uniformly display the "Activision" and *Call of Duty* names and logos, making it abundantly clear to consumers that Activision is the source of the Game and that its content is akin to that of the dozen other games in the *Call of Duty* series. *See* Mayer Decl., Exs. 1-2, 13; *see also Novalogic*, 41 F. Supp. 3d at 901 (dismissing Lanham Act claims because "Activision does not explicitly misrepresent or in any manner affirmatively state to the public that Plaintiff is associated with, sponsored, endorsed, or otherwise is the source of ['Call of Duty—MW3']" and the "packaging is very clear as to its origin and source" insofar as it "prominently displays the title 'CALL OF DUTY—MW3,' and identifies its makers as 'Activision,' and its affiliated studios"); *Stewart Surfboards, Inc v. Disney Book Grp., LLC*, No. CV 10-2982 GAF (SSx), 2011 WL 12877019, at *7 (C.D. Cal. May 11, 2011) (dismissing Lanham Act claims for failure to meet the "explicitly misleading" prong of the *Rogers* test where the disputed book's jacket and spine include various Disney logos); *Medina v. Dash Films, Inc.*, No. 15-cv-2551 (KBF), 2016 WL 3906714, at *5 (S.D.N.Y. Jul. 14, 2016) (absence of explicitly misleading conduct is "particularly true where defendants employed their own source designations elsewhere on the product"). There certainly is nothing on or in the Game that "explicitly misleads" customers into believing that Plaintiff endorsed, sponsored, or was in any way involved with the Game. Plaintiff makes no allegations to the contrary. Obviously, if Activision intended to mislead as to Plaintiff's involvement with the Game, there would be at least a modicum of similarity between the Brooks Character and Shon Brooks.

Mitchell
Silberberg &
Knupp LLP

13873032.6

11          CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

**B.** **Plaintiff's Allegations Do Not Support A Claim For Copyright Infringement.**

To state a claim for copyright infringement, a plaintiff must allege, *inter alia*, that "the works at issue are substantially similar in their protected elements." *Zella*, 529 F. Supp. 2d at 1132-33 (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)).[3] Courts in the Ninth Circuit apply the "extrinsic test" to assess substantial similarity, which "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works." *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). The extrinsic test involves an "'analytic dissection' of the alleged similarities to determine whether similarities stem from unprotectable or protectable expression." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475 (9th Cir. 1992). Courts must take care to "filter out and disregard the non-protectable elements" and "inquire only whether 'the ***protectible elements, standing alone***, are substantially similar.'" *Cavalier*, 297 F.3d at 822 (emphasis in original).

The Ninth Circuit has identified several categories of unprotectable elements that must be filtered out of the analysis and disregarded under the extrinsic test. *See Capcom U.S.A., Inc. v. Data E. Corp.*, No. C 93-3259 WHO, 1994 WL 1751482, at *6 (N.D. Cal. Mar. 16, 1994) (collecting cases). First, it is axiomatic that "copyright protects only an author's expression of an idea, not the idea itself." *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207 (9th Cir. 1988) (citation omitted). Second, no

---

[3] To state a claim for copyright infringement, a plaintiff also must allege ownership of a valid copyright and that the alleged infringer had access to the plaintiff's work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Even assuming *arguendo* that Plaintiff has plausibly alleged that Activision had access to its validly copyrighted work (which Activision does not concede), Plaintiff's copyright infringement claim still must be dismissed for lack of substantial similarity. *See Zella*, 529 F. Supp. 2d at 1133 ("even if access is present, Plaintiffs cannot state a [copyright infringement] claim [because] substantial similarity is lacking") (collecting cases).

Mitchell
Silberberg &
Knupp LLP

13873032.6

12                    CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

1  copyright protection extends to "scenes-à-faire," which are elements that
2  "necessarily follow from an idea" or that are, "as a practical matter, indispensable or
3  at least standard in the treatment of a given [idea]." *Id.* at 208. Third, unoriginal
4  stock elements of a copyrighted work are not eligible for protection. *See Feist*, 499
5  U.S. at 348.

6      Plaintiff's failure to attach, describe, or even include images from its
7  purported copyrighted games is telling. Indeed, Plaintiff fails to engage in any
8  serious discussion of the works at issue, let alone explain how they are similar in
9  any relevant way, such as in their plot, characters, themes, dialogue, mood, or
10  sequence of events. *See Funky Films,* 462 F.3d at 1077-78. This is not surprising,
11  because Plaintiff is well aware that none of the *Call of Duty* games is even remotely
12  similar to *Save One Bank* and/or *Stock Picker*.

13      Plaintiff's deliberate decision not to attach or describe its purported
14  copyrighted works or to describe how Activision's accused works are similar to any
15  protectable expression alone is fatal to its claims. To "allow the [copyright claim] to
16  proceed based on [such] deliberate obfuscation would run afoul of what the Ninth
17  Circuit considers to be 'a critical policy interest in 'preventing plaintiffs from
18  surviving a Rule 12(b)(6) motion by deliberately omitting references to documents
19  upon which their claims are based.'" *Esplanade Prods., Inc. v. Walt Disney Co.*,
20  No. CV1702185MWFJCX, 2017 WL 5635024, at *10 (C.D. Cal. July 11, 2017)
21  (granting motion to dismiss copyright infringement claim; "the [plaintiff's] failure to
22  include, at the least, any clear summary of the [plaintiff's work's] plot, dialogue,
23  themes, and so on indicates, on some level, that [the plaintiff] believed including
24  those details would have been detrimental to its [copyright] claims"); *see also, e.g.*,
25  *Zella*, 529 F. Supp. 2d at 1132 (granting motion to dismiss copyright infringement
26  claim where the plaintiff attached only 8 of 150 allegedly infringing television
27  episodes to the complaint, because otherwise "future plaintiffs alleging copyright
28

Mitchell
Silberberg &
Knupp LLP

13873032.6

13                    CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

infringement … could evade dismissal simply by alleging infringement from common elements by citing only a handful of specific examples in the Complaint"); *Evans v. NBCUniversal Media, LLC*, No. CV 21-0984-CBM-PD(x), 2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021) (same, where plaintiff "did not attach a copy of [the works] to the Complaint" and instead made "general, conclusory allegations," including that the defendant "copied … the title and medium of the screenplay, dialogue, structure, themes, choices of shots, camera, angles, colors, lighting, textual descriptors, and other artistic and expressive elements of Plaintiff's work").

Rather than explaining how the works are substantially similar, Plaintiff offers only a self-serving (and, at times, incomprehensible) list of random purported similarities. *See* Compl., ¶ 28. It is well established that lists such as that contained in the Complaint are insufficient to support a claim for copyright infringement, because they are "inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) ("We are particularly cautious where, as here, the list emphasizes random similarities scattered throughout the works."); *see also Wild v. NBC Universal, Inc.*, 513 F. App'x 640, 642 (9th Cir. 2013) ("'random similarities scattered throughout the works' … are insufficient to support a claim of substantial similarity"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045-46 (9th Cir. 1994) ("we are equally unimpressed by Kouf's compilation of random similarities scattered throughout the works, such as a lawnmower scene, a sprinkler scene, the presence of an attic, danger scenes, concerned parents, and kids sleeping outside overnight") (internal quotation marks omitted).[4] Regardless, review of the purported similarities reveals that ***not one*** involves protectable expression:

---

[4] Plaintiff not only plucks the list of alleged similarities from multiple games, but often fails to identify the specific games possessing the alleged similar element. *See, e.g.*, Compl., ¶ 28(c) & (d) (referring vaguely to "games"); *see also Doody v. Penguin Grp. (USA) Inc.*, 673 F. Supp. 2d 1144, 1155-56 (D. Haw. 2009) (the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell Silberberg & Knupp LLP

13873032.6

28

***Scenes-à-faire.*** Plaintiff alleges that the games are similar insofar as they include "missiles," "exotic and action-packed locations," and "battle scenes." Compl., ¶ 28(a), (f), (k). All of these elements are common (indeed, necessary) to military action games or international political thrillers such as *Call of Duty*. *See Funky Films*, 462 F.3d at 1077 ("scenes *à* faire, which flow naturally from generic plot-lines, are not protectable"); *Cavalier*, 297 F.3d at 824 ("the night sky setting constitutes scenes-a-faire and cannot support a finding of substantial similarity" because it "naturally and necessarily flows from the basic plot premise of a child's journey through the night sky"). Indeed, these "similarities" describe virtually every Hollywood action movie franchise, from *James Bond* to *The Fast & The Furious.*

***Stock elements.*** Plaintiff alleges that "[t]he main characters of the games both bring thieves to justice." Compl., ¶ 28(d). This is a "familiar stock theme," which "may not serve as grounds for substantial similarity." *Basile v. Warner Bros. Entm't, Inc.*, No. CV155243DMGMRWX, 2016 WL 5867432, at *8 (C.D. Cal. Jan. 1, 2016) ("General themes such as … good-versus-evil are [unprotectable] 'familiar stock themes' …."); *see also Cavalier*, 297 F.2d at 822 ("Familiar stock scenes and themes … are not protected."). Likewise, the allegations that some portions of the games are set on "the Red Planet or Mars" and "in a high fashion couture shopping center mall" (Compl., ¶ 28(i), (k)) are too generic to warrant copyright protection (*see* Mayer Decl., Exs. 14-15), and thus, should be filtered out and disregarded in the substantial similarity analysis. *See Identity Arts v. Best Buy Enter. Servs. Inc.*, No. C 05-4656 PJH, 2007 WL 1149155, at *16 (N.D. Cal. Apr. 18, 2007) ("To the extent that similarities exist, they are too generic to qualify for protection, or otherwise unprotectable (*e.g.*, scenes a faire)."); *Shame on You Prods. v. Elizabeth*

---

notion that the court should "assess substantial similarity … between [the plaintiff's book] and the [defendant's multiple books] collectively … runs wholly counter to the extrinsic test …").

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

1   *Banks*, 120 F. Supp. 3d 1123, 1159 (C.D. Ca. 2015) ("The mere fact that some

2   portion of both works occurs in a city is generic and inconsequential, and thus fails

3   to meet substantial similarity.") (citation and quotation marks omitted).[5]

4        **Non-distinct character.**  Plaintiff alleges that the games' "main characters"

5   have a similar "name and likeness" and "unlimited resources."  Compl., ¶¶ 25,

6   28(e).  But nothing about Plaintiff's alleged "Shon Brooks" character qualifies for

7   copyright protection.  *See Laws v. Sony Music Ent., Inc.*, 294 F. Supp. 2d 1160,

8   1163 (C.D. Cal. 2003) ("a person's name, voice, likeness and overall persona are not

9   copyrightable") (citation omitted), *aff'd*, 448 F.3d 1134 (9th Cir. 2006); *Daniels v.*

10  *Walt Disney Co.*, 958 F.3d 767, 773 (9th Cir. 2020) (no copyright protection for

11  characters that "are not 'especially distinctive' and do not 'contain some unique

12  elements of expression'") (citation omitted); *Gallagher v. Lions Gate Ent., Inc.*, No.

13  215CV02739ODWEX, 2015 WL 12481504, at *8 (C.D. Cal. Sept. 11, 2015) (no

14  copyright protection for characters with similar names, "Jules" and "Julie," and

15  "bubbly" personality).

16       **Game Mechanics.**  Plaintiff also claims that Activision "copied" a variety of

17  miscellaneous features in its *Call of Duty* games, including their ability to be

18  "played in First Person Shooter and Third Person Shooter," "day and night mode,"

19  and "single and multiplayer campaign and experience."  Compl., ¶ 28(b), (g), (h).

20  These features are commonplace and describe countless modern video games.  *See,*

21  *e.g.*, Mayer Decl., Ex. 16 ("first-person shooter" "has been a staple genre … since

22  the early days [of video games]"); *id.*, Ex. 17.  Moreover, it is well-established that

23  such "[g]ame mechanics and rules are not entitled to [copyright] protection."

24  *DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 830 (S.D. Tex.

25  2016) (citation omitted); *see also Allen v. Acad. Games League of Am., Inc.*, 89 F.3d

26

27  _____

[5] Plaintiff's allegations that the "games are played offshore" and have a "red orbit sky" are incomprehensible.  Compl., ¶ 28(c), (j).  To the extent they may be construed as relating to setting, they are also too generic to warrant protection.  *See Identity Arts*, 2007 WL 1149155, at *16.

28

Mitchell
Silberberg &
Knupp LLP

13873032.6

16                          CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

1  614, 617-18 (9th Cir. 1996) ("abstract rules and play ideas" for games are not

2  protectable); *Capcom*, 1994 WL 1751482, at *8 (no copyright protection for video

3  game's "attract mode" or its "method of selecting characters, designating winners

4  and tracking a fighter's vitality during a fight").

5      In sum, even taking the alleged similarities as true and construing every

6  possible inference therefrom in Plaintiff's favor, there is no plausible basis to find

7  that the parties' games are substantially similar in any protectable expression.

8  **III.   PLAINTIFF'S RIGHT OF PUBLICITY CLAIM SHOULD BE**

9  **STRICKEN UNDER CCP § 425.16(b)(1).**

10     California's anti-SLAPP statute provides:

11         A cause of action against a person arising from any act . . . in
           furtherance of the person's right of petition or free speech . . . in
12         connection with a public issue shall be subject to a special motion to
           strike, unless the court determines that the plaintiff has established
13         that there is a probability that the plaintiff will prevail on the claim.

14  Civ. Proc. Code ("CCP") § 425.16(b)(1). "The anti-SLAPP statute was enacted to

15  allow for early dismissal of meritless first amendment cases aimed at chilling

16  expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v.*

17  *Wornick,* 264 F.3d 832, 839 (9th Cir. 2001). Given the importance of the principles

18  protected by the statute, it is "broadly construed to encourage continued

19  participation in free speech and petition activities." *Wanland v. Law Offices of*

20  *Mastagni, Holstedt & Chiurazzi,* 141 Cal. App. 4th 15, 22 (2006); *see also* CCP

21  § 425.16(a). Additionally, while "framed as a rule of state procedure, California's

22  anti-SLAPP statute protects substantive rights and thus applies in federal court."

23  *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1132 (C.D. Cal. 2015) (citation

24  omitted).

25     In determining whether CCP 425.16 applies, courts consider "the pleadings,

26  and supporting and opposing affidavits stating the facts upon which the liability or

27  defense is based." CCP § 425.16(b)(2). The analysis consists of two steps:

28

Mitchell
Silberberg &
Knupp LLP

13873032.6

17                    CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

**_First_**, the defendant must make a _prima facie_ showing that the claims at issue "arise from" protected activity—namely, "any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." CCP § 425.16(b)(1); _see also Sarver v. Chartier_, 813 F.3d 891, 901 (9th Cir. 2016). "[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis." _Chavez v. Mendoza_, 94 Cal. App. 4th 1083, 1089 (2001).

**_Second_**, once it is shown that the claims arise from protected activity, the burden shifts to the plaintiff to show, by "competent and admissible evidence," the **_probability_** he or she will prevail on the merits. _Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.,_ 106 Cal. App. 4th 1219, 1236 (2003) (citations omitted); CCP § 425.16(b)(1). An anti-SLAPP motion should be granted unless the plaintiff can show that: (i) each claim is legally viable and supported by competent and admissible evidence on all essential elements, sufficient to defeat a directed verdict at trial and to support a judgment in plaintiff's favor; and (ii) the admissible evidence the plaintiff offers negates defenses to the claims. _Tuchscher_, 106 Cal. App. 4th at 1235-38. If the plaintiff cannot make the requisite showing, the action is dismissed and the defendant **_must_** be awarded its attorneys' fees and costs. CCP § 425.16(c).

## A.     The Right of Publicity Claim Arises From Protected Activity.

Plaintiff's claims "arise from" protected activity under CCP § 425.16(e), which defines an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue," in relevant part, as "(4) … conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Plaintiff's claims plainly arise from Activision's rights of "free speech." As noted above, the Game is an

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

expressive work, entitled to the full protection of the First Amendment. *See Brown v. Ent. Merchants Ass'n.,* 564 U.S. 786, 790 (2011) (video games are protected by the First Amendment; they "communicate ideas—and even social messages").

This dispute also involves matters of "public interest," which is broadly defined as "***any issue in which the public is interested***." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original); *see also Sarver*, 813 F.3d at 901 ("Interpreting the California Supreme Court's pronouncements, we have 'construe[d] 'public issue or public interest' broadly…'"). The *Call of Duty* video game franchise certainly is a matter of public interest, as it is among the most popular and best-selling game franchises in the world. To date, Activision has released eighteen "core" *Call of Duty* games for personal computers and game consoles. Lodato Decl., ¶ 2. It has been reported that as of 2021, more than 400 million copies of the *Call of Duty* series of games have been sold. *See, e.g.*, Mayer Decl., Ex. 18. Plaintiff itself alleges that *Call of Duty* tournaments "are attended by participants from all over the world." Compl., ¶ 22. *See Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (television producer had satisfied first prong of anti-SLAPP analysis because of substantial public interest in hit television series "CSI"); *see also Kronemyer v. Internet Movie Data Base, Inc.,* 150 Cal. App. 4th 941, 949 (2007) (film "My Big Fat Greek Wedding" constituted "a topic of widespread public interest" because it was "a successful independent motion picture"). The Game itself sold more than 1.8 million copies in the week of its release and was written about in numerous publications.

The topics and themes addressed in the Game also involve or implicate matters of public interest. For decades, Congress, military leaders, and think tanks have discussed the need for enhanced military operations in space, recognizing that future wars may be fought over resources and territory in the solar system. *See, e.g.* Mayer Decl., Ex. 19; *see also id.*, Exs. 20-21. As noted by *The Atlantic* in 2016 (the

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell Silberberg & Knupp LLP

13873032.6

year that the Game was released): "It is not only science fiction… to suggest that the future of war could be offworld." *Id.*, Ex. 22. In 2019, the U.S. even created an independent "U.S. Space Force" as a branch of the military. *Id.*, Ex. 23. *See Sarver*, 813 at 902 (film *The Hurt Locker* was a matter of public interest, because the "[Iraq] war, its dangers, and soldiers' experiences were subjects of longstanding public attention.").

Additionally, "there is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677-78 (2010). *See also Hilton v. Hallmark Cards*, 599 F.3d 894, 907 (9th Cir. 2010) (matters of public interest include "statements concerning a person or entity in the public eye"). Plaintiff (and Brooks) have placed themselves in the "public eye" through their issuance of numerous press releases and aggressive marketing and advertising. *See, e.g.*, Mayer Decl., Exs. 5-7, 9. Brooks also publicized his purported video game aspirations, describing himself (falsely) as a "video game developer" (*id.*, Ex. 24) and issuing press releases about his video game concepts (*id.*, Ex. 25). Brooks also has attempted to bring public attention to *this case*, including by posting links to the Complaint on social media and thanking the "Brooks Entertainment legal team." *Id.*, Exs. 26. In so doing, Brooks made himself *and this case* a matter of public interest. *See Hilton*, 599 F.3d at 908 (Paris Hilton's career is "something of concern to a substantial number of people.") (citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003)).

## B. <u>Plaintiff Cannot Establish A Probability Of Prevailing On Its Right Of Publicity Claims.</u>

Plaintiff's Third Claim for Relief is premised upon Cal. Civil Code section 3344, which states, in relevant part:

> "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent… shall be liable for any damages sustained by the person or persons injured as a result thereof…."

Thus, to prevail on its right of publicity claim, plaintiff must establish that: (1) the defendant "knowingly used" the plaintiff's "name, voice, signature, photograph, or likeness;" (2) the appropriation of plaintiff's name or likeness was on or in connection with products, merchandise or goods, or for purposes of advertising and selling such products, merchandise, goods or services; (3) the use was without consent; and (4) the plaintiff suffered a resulting injury. Additionally, the Ninth Circuit has held that to be actionable under California law, the likeness must be "readily identifiable as [the plaintiff]." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998).

The Court need go no further than the first element (knowing use of the plaintiff's name, voice, signature, photograph, or likeness) to conclude that Plaintiff cannot prevail. "Invasion of privacy claims have been rejected by the courts when there is merely alleged to be some resemblance between an actual person and a character in a work of fiction." *Polydoros v. Twentieth Century Fox Film Corp.,* 67 Cal. App. 4th 318, 322-23 (1997). Here, there is not even a single point of resemblance between Shon Brooks (the financial consultant) and Sean Brooks (the space soldier). *Compare* Compl., ¶¶ 10-11 *with* Lodato Decl., ¶ 8 & Ex. 1. The two do not look alike. They do not sound alike. They do not work in the same profession. They do not share life or career experiences. They exist in completely different time periods (more than 100 years apart). Even their names are spelled differently. No person playing the Game could confuse the two or reasonably could conclude that Sean Brooks the space solider is based on Shon Brooks the financial consultant.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell Silberberg & Knupp LLP

13873032.6

In *Polydoros*, the California Court of Appeals addressed similar (in fact, much stronger) claims in connection with a film titled *The Sandlot*, a comedic coming-of-age story about "a motley group of boys on a sandlot baseball team." 67 Cal. App. 4th at 320. The plaintiff, Michael Polydoros, claimed that a character in the film named "Michael Palledourous" was based on him, because the character's name was similar to his own name and the plaintiff (like the character) wore glasses, dressed in a similar shirt, played baseball, swam in a community pool, and "was somewhat obstreperous." *Id.* at 321. However, "other than the similarity in names and attire, the enjoyment of baseball and swimming, and the brash nature of the… character, [plaintiff] cannot point to any other aspects in which the film accurately portrays his life." *Id.* The Court concluded that these purported similarities could not support a right of publicity claim:

> First, there was a marked difference in age and appearance between our appellant, the 40–year–old Michael Polydoros, and the 10–year–old character of Squints Palledorous. No person seeing this film could confuse the two. Second, the rudimentary similarities in locale and boyhood activities do not make "The Sandlot" a film about appellant's life. This is a universal theme and a concededly fictional film. The faint outlines appellant has seized upon do not transform the fiction into fact.

*Id.* at 323.

In *Aguilar*, the plaintiff, Bertha Aguilar, alleged that a film about a 1942 murder case infringed her right of publicity, because a character in the film named "Bertha" purportedly was based on her. 174 Cal. App. 3d at 387-88. The California Court of Appeals affirmed the dismissal of the claim, finding that the plaintiff's life experiences were "so dissimilar" to the "Bertha" character that "no reasonable person could connect the two":

> In the film, only the character's first name, "Bertha" is used. That first name is identical to plaintiff's and therefore similar to her full name, Bertha Aguilar. However, as a matter of law, mere similarity or even identity of names is insufficient to establish a work of fiction is of and concerning a real person….

CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

> The similarity of names appears to have been purely coincidental….
> In a country of this size, containing all nationalities, it would be truly
> remarkable if an author used a name which was possessed by no one.
> Only the creator of "Mork" from Ork would appear to be safe.

*Id.* at 391. Other courts have come to the same conclusion. *See, e.g., Clare*, 70 F. Supp. at 279 ("It would be an astonishing doctrine if every writer of fiction were required to make a search among all the records available in this Nation … in order to determine whether perchance one of the characters in the contemplated book designated as a novel may have the same name and occupation as a real person."); *Costanza v. Seinfeld,* 279 A.D.2d 255, 255 (1st Dep't 2001) (rejecting claim by Michael Costanza that the *Seinfeld* character George Castanza is based on him: "the similarity of last names between plaintiff and the fictional character is not cognizable under the statute"); *Allen v. Gordon*, 446 N.Y.S.2d 48, 49 (1st Dep't 1982) (dismissing claim by Eugene Allen that a "Dr. Allen" character infringed his right of publicity: "the name 'Dr. Allen' used in said defendant's book was selected at random as a commonly used name."), *aff'd* 56 N.Y.2d 780 (1982).

In the context of video games, claims such as those made by Plaintiff repeatedly and consistently have been rejected—even where the facts are far more compelling than those here. In *Washington v. Take-Two Interactive Software, Inc.*, 2012 WL 5359709 (Cal. App. Oct. 31, 2012), the California Court of Appeals affirmed the dismissal of a right of publicity claim brought by an individual who claimed that a character in the defendant's video game (namely, *Grand Theft Auto: San Andreas*) was based on his image and likeness—and even possessed evidence that he was listed in the game booklet as among the game's "models" and met directly with people working on the game. But because "there is not a single feature that 'directly links' [the character] to the plaintiff, such as 'distinctive tattoos, birthmarks, or other physical features'" (*id.*, at *11), the plaintiff could not sustain a claim, and his purported work as a character model was irrelevant.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**

Mitchell
Silberberg &
Knupp LLP

13873032.6

In *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111 (2018), actress Lindsay Lohan claimed that a character avatar and two illustrated images of a blonde woman (in one image, being frisked; in the other, taking a selfie and displaying the peace sign with her hands) in the game *Grand Theft Auto V* were based on images of her. The trial court dismissed the case, and the New York appellate court affirmed, holding that the avatar and images were not recognizable as the plaintiff:

> Here, the [character] simply is not recognizable as plaintiff inasmuch as it merely is a generic artistic depiction of a 'twenty something' woman without any particular identifying physical characteristics… Those artistic renderings are indistinct, satirical representations of the style, look, and persona of a modern, beach-going young woman. It is undisputed that defendants did not refer to plaintiff in GTAV, did not use her name in GTA, and did not use a photograph of her in that game.

*Id.* at 112-13. Likewise here, other than a common sounding name, there simply are no similarities between the Brooks Character and Brooks.

## CONCLUSION

For the foregoing reasons, Activision requests that the Court grant the Motions and dismiss each of Plaintiff's claims.


DATED: FEBRUARY 8, 2022    RESPECTFULLY SUBMITTED,

MARC E. MAYER
KARIN G. PAGNANELLI
MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Marc E. Mayer
    Marc E. Mayer
    Attorneys for Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE**