MARC E. MAYER (SBN 190969); mem@msk.com
KARIN G. PAGNANELLI (SBN 174763); kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant
Activision Blizzard, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKS ENTERTAINMENT, INC., | CASE NO. 3:21-CV-02003-TWR-MDD |
| Plaintiff, | [Assigned to Judge Todd W. Robinson] |
| v. | |
| ACTIVISION BLIZZARD, INC. AND ROCKSTAR GAMES, INC., | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |
| Defendants. | |
| | [Memorandum of Points and Authorities, Declarations of Marc E. Mayer and James Lodato, and [Proposed] Order Filed Concurrently Herewith] |
| | Courtroom:  3A (3rd Floor)<br>Date:  May 26, 2022<br>Time:  1:30 pm |

Mitchell Silberberg & Knupp LLP

13835936.8

1                    CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

I.   STATEMENT OF FACTS.................................................................................. 3

    A.   Plaintiff and Its Owner Shon Brooks. ................................................... 3

    B.   Activision, *Call of Duty,* and *Infinite Warfare*. .................................... 4

    C.   Plaintiff Files Its Frivolous Claims. ...................................................... 6

    D.   Activision Advises Plaintiff's Counsel Of The Serious Errors and Deficiencies In The Complaint. ............................................................... 7

II.   PLAINTIFF'S COMPLAINT VIOLATES RULE 11. ...................................... 9

    A.   Plaintiff's Claims Are Based On False And Unsupported Factual Allegations. ..........................................................................................11

    B.   Plaintiff's Claims Are Legally Baseless. .............................................15

III.   THE COURT SHOULD STRIKE THE COMPLAINT AND AWARD ACTIVISION ITS ATTORNEYS' FEES AS A SANCTION FOR COUNSEL'S RULE 11 VIOLATIONS. .......................................................19

IV.   CONCLUSION ...............................................................................................21

Mitchell
Silberberg &
Knupp LLP

13835936.8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*ADO Fin., AG v. McDonnell Douglas Corp.*,
   938 F. Supp. 590 (C.D. Cal. 1996) .........................................................................................21

*Aguilar v. Universal City Studios, Inc.*,
   174 Cal. App. 3d 384 (Ct. App. 1985) ...................................................................................18

*AM Gen. LLC v. Activision Blizzard, Inc.*,
   450 F. Supp. 3d 467 (S.D.N.Y. 2020) ....................................................................................17

*Braham v. Sony/ATV Music Publ'g*,
   No. 215CV8422MWFGJSX, 2015 WL 7074571 (C.D. Cal. Nov. 10, 2015) ..........................17

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ...............................................................................................16

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   498 U.S. 533 (1991) ..........................................................................................................10, 11

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
   892 F.2d 802 (1989) ...............................................................................................................10

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ..................................................................................................17

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) .........................................................................9, 10, 12, 14

*Combs v. Rockwell Int'l Corp.*,
   927 F.2d 486 (9th Cir. 1991) ..................................................................................................20

*Dillinger, LLC v. Elec. Arts Inc.*,
   No. 1:09-CV-1236-JMS-DKL, 2011 WL 2457678 (S.D. Ind. June 16, 2011) .......................17

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ................................................................................................16

*Esplanade Prods., Inc. v. Walt Disney Co.*,
   No. CV1702185MWFJCX, 2017 WL 5635024 (C.D. Cal. July 11, 2017) ..............................18

*Gaskell v. Weir*,
   10 F.3d 626 (9th Cir. 1993) ....................................................................................................20

*Gionis v. Cal. Bureau for Private Postsecondary Educ.*,
   No. 2:13-CV-00912-MCE, 2014 WL 466276 (E.D. Cal. Feb. 5, 2014) ..................................20

Mitchell
Silberberg &
Knupp LLP

13835936.8

ii                                    CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

4

*Goel v. Coal. Am. Holding Co., Inc.*,
   No. CV 11-02349 JGB (EX), 2013 WL 12122302 (C.D. Cal. Feb. 26, 2013) ..........................16

5

*Heller v. Cepia L.L.C.*,
   560 F. App'x 678 (9th Cir. 2014).............................................................................11

6

7

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005)..............................................................................10, 15

8

9

*Hudson v. Moore Bus. Forms, Inc.*,
   836 F.2d 1156 (9th Cir. 1987)...........................................................................10, 20

10

11

*Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*,
   790 F.2d 1421 (9th Cir. 1986)....................................................................................19

12

*Ingenuity 13 LLC v. Doe*,
   No. 212-CV-08333-ODW-JC, 2013 WL 765102 (C.D. Cal. Feb. 7, 2013) ............................12

13

14

*Kunimoto v. Fidell*,
   26 F. App'x 630 (9th Cir. 2001).................................................................................20

15

16

*Mellow v. Sacramento Cty.*,
   365 F. App'x 57 (9th Cir. 2010)..................................................................................20

17

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
   74 F. Supp. 3d 1134 (N.D. Cal. 2014) ......................................................................16

18

19

*Moser v. Bret Harte Union High Sch. Dist.*,
   366 F. Supp. 2d 944 (E.D. Cal. 2005).......................................................................11

20

21

*Novalogic, Inc. v. Activision Blizzard*,
   41 F. Supp. 3d 885 (C.D. Cal. 2013)......................................................................4, 16

22

*Patterson v. Aiken*,
   841 F.2d 386 (11th Cir. 1988)...................................................................................11

23

24

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (1997)......................................................................................18

25

26

*Rebellion Devs. Ltd. v. Stardock Ent., Inc.*,
   No. 12-12805, 2013 WL 1944888 (E.D. Mich. May 9, 2013)........................................17

27

*Refac Int'l, Ltd. v. Hitachi, Ltd.*,
   141 F.R.D. 281 (C.D. Cal. 1991) ...............................................................................14

28

iii                      CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)...................................................................................16

*Smith v. Ricks*,
   31 F.3d 1478 (9th Cir. 1994)..................................................................................19

*Truesdell v. S. Cal. Permanente Med. Grp.*,
   209 F.R.D. 169 (C.D. Cal. 2002) ...........................................................................20

*Truesdell v. S. Cal,. Permanente Med. Grp.*,
   293 F.3d 1146 (9th Cir. 2002).................................................................................11

*Valve & Primer Corp. v. Val-Matic Valve & Mfg. Corp.*,
   No. 87 C 8726, 1990 WL 129360, at *3 (N.D. Ill. Aug. 24, 1990)
   *aff'd*, 940 F.2d 666 (7th Cir. 1991) .......................................................................14

*VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*,
   No. 3:15-CV-01729-LB, 2015 WL 5000102 (N.D. Cal. Aug. 21, 2015) ................16

*Washington v. Take-Two Interactive Software, Inc.*,
   2012 WL 5359709 (Cal. App. Oct. 31, 2012) .........................................................19

### STATUTES

Cal. Civ. Proc. Code § 3344 .........................................................................................7

Copyright Act, 17 U.S.C. § 101, *et. seq* ......................................................................7
   § 102(b) ...............................................................................................................17

Lanham Act, 15 U.S.C. ...............................................................................................16
   § 1114 ....................................................................................................................6

### OTHER AUTHORITIES

Fed. R. Civ. P. 11 1993 Adv. Comm. Notes .........................................................11, 20

Fed. R. Civ. P. 11 .................................................................................................passim
   11(b)(1) .................................................................................................................10
   11(b)(2) .................................................................................................................21
   11(b)(4) .................................................................................................................21
   11(b)(3) ............................................................................................................10, 11
   11(c)(1) .................................................................................................................21
   11(c)(2) ...............................................................................................................9, 21
   11(c)(4) .................................................................................................................20

First Amendment, United States Constitution.............................................................16

Mitchell
Silberberg &
Knupp LLP

13835936.8

iv                                CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

## **INTRODUCTION**

This is one of the rare instances in which a lawsuit is so blatantly frivolous that sanctions are not just appropriate, but are necessary to send a message and deter counsel from future abuses of the judicial process.  Specifically, by this Motion, Defendant Activision Publishing, Inc. ("Activision") requests that, pursuant to Fed. R. Civ. P. 11, the Court strike the Complaint and order Plaintiff's counsel, Procopio, Cory, Hargreaves & Savitch LLP ("Procopio"), to pay Activision for the fees incurred in its defense of a Complaint that is so lacking in evidentiary support and legal basis that no reasonable counsel (far less experienced intellectual property counsel) could have concluded that its filing was consistent with their obligations as officers of the court.

At the heart of this case are allegations that Activision, one of the world's leading video game companies and the publisher of the popular *Call of Duty* game franchise, infringed the trademarks, copyrights, and rights of publicity of a financial consulting company (and its owner, Shon Brooks) because it chose the name "Sean Brooks" for a minor supporting character in the 2016 game *Call of Duty: Infinite Warfare* (the "Game" or "*Infinite Warfare*.").  These claims are nothing short of delusional.  Leaving aside that "Sean Brooks" is a very common name shared by hundreds (if not thousands) of people around the world ***and*** that Activision's character is named "Sean" (not "Shon"), the assertion that Activision's fictional character (the "Brooks Character"), an armored Irish space marine, somehow "stole" the name, image and likeness of Shon Brooks, an African American San Diego-based financial consultant and cigar salesman, is simply absurd.  And if that claim were not strange enough, Plaintiff ***also*** claims that *Infinite Warfare*, an intense, mature science fiction military action shooter, is substantially similar to undisclosed and unpublished concepts for two educational games designed to teach children about the stock market and the U.S. banking system.  Anyone who has played

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

*Infinite Warfare* for even a few minutes would realize that *Infinite Warfare* has nothing to do with the stock market or banks, and is not a game designed for children under 17.

It would be one thing if this lawsuit had been prepared and filed by a *pro se* plaintiff who lacks knowledge of copyright and trademark law.  But this Complaint was prepared and filed by a major San Diego firm with more than 200 attorneys -- and with an intellectual property practice staffed by "seasoned" lawyers "that manage complicated legal intellectual property challenges."  Declaration of Marc E. Mayer ("Mayer Decl."), ¶ 2 & Exs. 1-2.  Lead counsel for Plaintiff, Lisel Ferguson, is the head of Procopio's intellectual property department, is among AmLaw's "Top Rated Lawyers in Intellectual Property Law," and has practiced law for more than 20 years.  *Id.*, Ex. 3; *see also id.*, Ex. 4.  Procopio and its partners should have known better than to file and pursue this lawsuit, and they must have known (or at least suspected) that this case was frivolous when they filed it.

Activision is mindful of the gravity of this Motion.  Activision very rarely seeks sanctions against opposing counsel, and only does so in the most egregious circumstances.  However, this case is unusual in that even the most rudimentary investigation would have confirmed the falsity of the allegations and complete lack of supporting caselaw.  In fact, the Complaint is so obviously false, on so many points, that counsel could not possibly have played the games at issue, researched the *Call of Duty* franchise, or reviewed and considered the surrounding facts.  It does not even appear that counsel took the time to confirm their client's own over-the-top representations about its business.  Perhaps most egregiously, even after Activision attempted to explain the facts to Plaintiff's counsel, they continued to embrace their false factual and frivolous legal positions.  Had counsel taken their Rule 11 obligations seriously, this motion – and thousands of dollars of unnecessary legal fees – could have been avoided.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1    Accordingly, Activision respectfully requests that the Court dismiss

2  Plaintiff's Complaint as against Activision with prejudice and order Plaintiff's

3  counsel and their law firm to reimburse Activision for the reasonable attorney's fees

4  and costs incurred in connection with defending against this objectively meritless

5  lawsuit.

6

7  **I.    STATEMENT OF FACTS**

8    **A.    <u>Plaintiff and Its Owner Shon Brooks.</u>**

9    According to the Complaint, Plaintiff is a "financial and entertainment

10  consultant [*sic*] corporation," "formed in 2002," "which helps its customers build

11  their financial empire safely and hosts a TV Show aimed at encouraging and

12  empowering youth to take control of their destiny and become successful adults."

13  Dkt. No. 1 ("Complaint" or "Compl."), ¶ 9.  The founder, CEO, and Chief Financial

14  Officer of Plaintiff Brooks Entertainment, Inc. is an individual named Fran Shatone

15  Brooks a/k/a "Shon Brooks."  *Id.*  Brooks claims to be the "#1 top achiever in the

16  nation in financial services" and an "award winning television talk show host."  Dkt.

17  No. 21-3,[1] Exs. 5-6 at pp. 23, 28.  Even a cursory review of publicly available

18  information reveals that Brooks' business activities are grossly exaggerated.  *See,*

19  *e.g.*, *id.*, Exs. 5-7, 9, 24-25.

20    Plaintiff's intellectual property rights purportedly include a registered

21  trademark in the name SHON BROOKS (Compl., ¶14); exclusive rights in Shon

22  Brooks' name, image, and likeness (*id.*, ¶ 58); and registered copyrights in

23  unpublished, unidentified "concepts" that Brooks prepared for two educational

24  video games about financial management, namely, *Stock Picker* and *Save One Bank*

25  (*id.*, ¶ 39).  Plaintiff has described *Stock Picker* as a "game [that] is downloadable

26

27  [1] In effort to avoid duplication of exhibits, Activision cites to the prior-filed Exhibits
to the Declaration of Marc E. Mayer in support of Activision's Motion to Dismiss
and Special Motion to Strike (Dkt. No. 21-3) ("Mayer MTD Declaration") in this

28  Rule 11 Motion where possible.

Mitchell
Silberberg &
Knupp LLP

13835936.8

3                CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

through the internet and covers the fast-paced, and often misunderstood, world of the stock market, Wall Street, and the impact they have on the economy.  Students can use play money to compete with different classrooms around the country in picking and investing in the most viable stocks."  Dkt. No. 21-3, Ex. 7 at p. 241; *see also id.*, Ex. 8 at p. 244.  Plaintiff described *Save One Bank* as a game in which "[a]gents at Save One Bank will embark on a mission in 18 months to doggedly pursue greedy financial executives."  *Id.*, Ex. 9 at p. 247; *see also id.*, Ex. 10 at p. 254.

Plaintiff's purported games were never actually developed and are not available to the public.  *See* Mayer Decl., ¶ 5.  Plaintiff has never released or posted any images, graphics, gameplay videos, or other material from its purported games, and his counsel did not include any images, graphics, or gameplay descriptions in the Complaint.  *Id.*  (Notably, Plaintiff's counsel has refused to provide Activision with any of Plaintiff's copyrighted works.  *Id.*, ¶ 7.)  Accordingly, members of the public (including Activision) cannot readily ascertain or review the content of any of Plaintiff's purported games.

## B.   Activision, *Call of Duty*, and *Infinite Warfare*.

Activision is a leading worldwide developer, publisher, and distributor of interactive entertainment products, including the extremely popular *Call of Duty* series of video games.  *See* Declaration of James Lodato dated February 28, 2022 ("Lodato Decl."), ¶ 2.  The *Call of Duty* games are military action games "in which a player assumes control of a military soldier and fights against a computer-controlled or human-controlled opponent across a variety of computergenerated battlefields."  *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 890 (C.D. Cal. 2013); *see also* Lodato Decl., ¶¶ 3-4.  Activision released its first *Call of Duty* game in 2003, and to date has released eighteen "core" *Call of Duty* titles for video game consoles and PCs, plus various spin-off titles.  *Id.*, ¶ 2.

Mitchell
Silberberg &
Knupp LLP

13835936.8

4                    CASE NO. 3:21-CV-02003
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

1    The thirteenth installment of the *Call of Duty* series is *Call of Duty: Infinite*

2  *Warfare*, which was released on or about November 4, 2016.  *Id.*, ¶ 6.  Like other

3  *Call of Duty* games, *Infinite Warfare* includes both a single-player story-based

4  "campaign" mode, as well as several multiplayer modes in which players either

5  compete against each other (solo or in teams) or work together to defeat an invading

6  zombie army.  Lodato Decl., ¶¶ 4, 7-8; *see also* Dkt. 21-3, Ex. 1.[2]

7    *Infinite Warfare*'s campaign mode is a far-future military space thriller, set in

8  a world where mankind has colonized the solar system and its survival depends

9  upon mining and exploiting the resources of the planets and their moons.  *See*

10 Lodato Decl., ¶ 7; Dkt. 21-3, Ex. 1.  The player steps into the shoes of Captain Nick

11 Reyes, an officer of "SATO" (the "Solar Associated Treaty Organization"), a

12 military force tasked with defending Earth and its colonies from military threats.  *Id.*

13 As the game opens, SATO has learned that an extremist leader from Mars has risen

14 to power and seeks to both destroy Earth's population and take control of the solar

15 system.  *Id.*  In an effort to save Earth's inhabitants, the player engages in a variety

16 of high-risk, action-packed missions on planetary surfaces, in zero-gravity

17 environments, or in small fighter spaceships called "Jackals."  *Id.*  These missions

18 include defending a moon base from enemy forces, invading and destroying an

19 enemy facility on Saturn's moon Titan, and stealing a prototype vehicle from an

20 enemy spaceship.  *Id.*  Between missions, the player may explore Reyes' military

21 space ship, *Retribution*, where the player can customize weapons, watch news reels,

22 and select missions.  *Id.*

23    The crew of the *Retribution* is a multinational cast of characters, including

24 Lieutenant Nora Salter, a robot sidekick E3N (or "Ethan"), Staff Sergeant Usef

25

26 [2] Exhibit 1 to the Mayer MTD Declaration is a physical exhibit—in particular, a
retail copy of *Infinite Warfare* as made available for the Microsoft Xbox platform—

27 which has been lodged separately with the Court.  *See* Dkt. No. 24.  Exhibit 4 to the
Mayer MTD Declaration, cited *infra*, has also been lodged separately as it contains

28 video files reflecting game play from *Infinite Warfare*.  *Id.*

Mitchell
Silberberg &
Knupp LLP

13835936.8

5                                    CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Omar, Private Todd Kashima, and Corporal Sean Brooks (the "Brooks Character"). *See* Lodato Decl., ¶ 8.  The Brooks Character is a minor, computer-controlled character, who appears only in the single-player campaign mode.  Lodato Decl., ¶¶ 8-10.  The Brooks Character cannot be controlled by the player.  *Id.*, ¶¶ 8-10.  The Brooks Character is of Irish nationality, speaks with an Irish accent, and wears heavy space armor.  *See* Dkt. No. 21-3, Exs. 1, 3-4.  The Brooks Character does not appear in any other *Call of Duty* game.  Lodato Decl., ¶ 10.  The Brooks Character also is not mentioned on the game cover (front or back) or in advertisements for the game.  *See, e.g.*, Dkt. No. 21-3, Exs. 1-2.

*Infinite Warfare's* campaign mode takes approximately six hours to complete, and is comprised of seven primary missions and several smaller optional "side" missions.  *See* Lodato Decl., ¶ 7.  All of the missions in *Infinite Warfare* are intense, action packed military adventures.  *Id.*  **Not one** mission includes or involves banks, the stock market, financial management, Wall Street, the U.S. economy, or white-collar financial crime.  *Id.*; *accord* Mayer Decl., ¶ 9.  In fact, the game takes place almost entirely in space.  *Id.*, ¶ 4.  *Infinite Warfare* (like all of the *Call of* Duty games) is an "M" rated game and is not intended to be played by children under 17 years old.  *See* Dkt. No. 21-3, Exs. 1-2.  *Infinite Warfare* (and all of the other *Call of Duty* games) are available from retail stores (*e.g.*, Amazon, Best Buy, Target) or online digital platforms (*e.g.*, Steam, Xbox Live.)  *See* Lodato Decl., ¶ 6.

### C.   Plaintiff Files Its Frivolous Claims.

On November 30, 2021, five years after *Infinite Warfare* was released to the public, Plaintiff and his counsel filed a complaint against Activision and a wholly unrelated, competitor video game company, Rockstar Games, Inc. ("Rockstar"). (Rockstar had nothing to do with *Call of* Duty).  In its Complaint, Plaintiff alleges that Activision's *Call of Duty* video games (especially *Infinite Warfare*) violate Plaintiff's intellectual property rights.  Specifically, Plaintiff asserts claims for (1)

Mitchell
Silberberg &
Knupp LLP

13835936.8

6

CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1   federal trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114,

2   arising from Activision's alleged use of "the name and mark Sean Brooks as the

3   main character in its *Call of Duty* Games" (Compl., ¶ 31); (2) copyright

4   infringement, in violation of the Copyright Act, 17 U.S.C. §§101, *et. seq*, arising

5   from Activision's alleged copying of Plaintiff's *Save One Bank* and *Stock Picker*

6   games (*id.*, ¶ 35); and (3) commercial appropriation of likeness, in violation of Cal.

7   Civ. Proc. Code § 3344, arising from Activision's alleged use of a fictional character

8   in *Infinite Warfare* that incorporates "the likeness, persona, and name of Plaintiff's

9   owner Shon Brooks" (*id.*, ¶ 23).

10          **D.     Activision Advises Plaintiff's Counsel Of The Serious Errors and**

11                  **Deficiencies In The Complaint.**

12          After reviewing the Complaint and conducting an initial investigation of the

13   factual allegations therein, it was obvious to Activision and its counsel that

14   Plaintiff's allegations were utterly lacking in factual and legal support.  *See* Mayer

15   Decl., ¶¶ 3-6.  For example, it was clear that the Brooks Character did not use the

16   name, image or likeness of Brooks (*id.*, ¶ 4), as illustrated below:

 

24   *Compare id.*, Dkt. No. 21-3, Ex. 6 at p. 28 *with id.*, Ex. 3 at p. 16.

25          It also was obvious from reviewing *Infinite Warfare*, its packaging, and its

26   advertising that the game is nothing at all like Plaintiffs' purported game concepts

27   for *Stock Picker* and *Save One Bank*.  *Id.*, ¶ 4.  The SHON BROOKS name and

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

"trademark" does not even appear anywhere on *Infinite Warfare*'s front or back cover. *See* Dkt. No. 21-3, Exs. 1-2.

In the hopes of resolving this matter before Activision was required to expend attorneys' fees, counsel for Activision promptly advised Plaintiff's counsel, including by phone on December 8, 2021 and by letter dated January 7, 2022, that the Complaint contains serious factual misrepresentations and errors and the claims are both factually and legally frivolous. *See* Mayer Decl., ¶¶ 7-8.[3]  The January 7 letter provided a detailed discussion (with case citations) as to why the claims were without legal merit. *See id.*, ¶ 8 & Ex. 5.  The letter indicated that Activision not only intended to move to dismiss and/or strike Plaintiff's claims, but also intended to move for Rule 11 sanctions if Plaintiff failed to voluntarily dismiss, or at the very least amend, its Complaint. *Id.*, ¶ 8 & Ex. 5.

On January 26, 2022, counsel for Activision and plaintiff met and conferred regarding, *inter alia*, the basis for Activision's anticipated Rule 11 motion. *Id.*, ¶¶ 9-11.  During that call, Activision's counsel again explained to Plaintiff's counsel that the allegations did not align with the actual content of *Infinite Warfare*, and that the case law readily confirmed that the claims could not survive.  Plaintiff's counsel did not agree to voluntarily dismiss or amend its Complaint. *Id.*, ¶ 10.  Instead, Plaintiff's counsel doubled-down on the false allegations, and even attempted to justify her decision not to dismiss the Complaint by providing a set of additional purported "facts" about the game—all of which were demonstrably false.[4]  *See id.*, ¶¶ 9, 11 & Ex. 6.  Also, during the parties' meet-and-confer, Plaintiff's counsel first

---

[3]  Activision's counsel has repeatedly requested that Plaintiff's counsel provide copies of the materials that Plaintiff alleges to have been "stolen" by Activision so that Activision could fully evaluate Plaintiff's claim. *See* Mayer Decl., ¶ 8.  To date, Plaintiff's counsel has refused. *Id.*

[4]  For example, Plaintiff's counsel claimed that *Infinite Warfare* takes place on Wall Street when, in fact, it takes place in space; that the Game involves bank thieves when, in fact, it is about a terrorist from Mars who seeks to control the solar system; and that the Brooks Character is a member of "team USA" when, in fact, he is an Irish national working for a multinational defense group. *See* Mayer Decl., ¶ 9.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1    claimed that she had played *Infinite Warfare* "all the way through." *Id.*, ¶ 11.

2    However, when faced with contradictory facts, she admitted that she actually had

3    just reviewed some unspecified YouTube video—and that the video may have

4    depicted scenes from **other** *Call of Duty* games, including those that pre-date

5    Activision's purported access to Plaintiff's alleged copyrights. *See id.*

6         On February 8, 2022, Activision filed its Motion to Dismiss (the "MTD") and

7    Special Motion to Strike (the "SLAPP Motion"). *See* Dkt. No. 21. The MTD and

8    SLAPP Motion are set for hearing on April 20, 2022. On March 2, 2022, counsel

9    for Activision served a copy of this Rule 11 Motion on Plaintiff's counsel. *Id.*, ¶ 13.

10   Because Plaintiff did not withdraw or appropriately correct the Complaint within

11   twenty-one days after service, Activision has proceeded to file the instant Rule 11

12   Motion. *See* Fed. R. Civ. P. 11(c)(2).

13

14   **II.    PLAINTIFF'S COMPLAINT VIOLATES RULE 11.**

15        A fundamental purpose of Rule 11 of the Federal Rules of Civil Procedure is

16   to "reduce frivolous claims" and "deter costly meritless maneuvers," thereby

17   "avoid[ing] delay and unnecessary expense in litigation." *Christian v. Mattel, Inc.*,

18   286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted). To this end, Rule 11

19   provides in pertinent part as follows:

20             **(b) Representations to the Court.**  By presenting to the
               court a pleading, written motion, or other paper—
21             whether by signing, filing, submitting, or later advocating
               it—an attorney or unrepresented party certifies that to the
22             best of the person's knowledge, information, and belief,
               formed after an inquiry reasonable under the
23             circumstances:

24             **(1)** it is not being presented for any improper purpose,
               such as to harass, cause unnecessary delay, or needlessly
25             increase the cost of litigation;

26             **(2)** the claims, defenses, and other legal contentions are
               warranted by existing law or by a nonfrivolous argument
27             for extending, modifying, or reversing existing law or for
               establishing new law;

28

Mitchell
Silberberg &
Knupp LLP

13835936.8

1

2      **(3)** the factual contentions have evidentiary support or, if
       specifically so identified, will likely have evidentiary
3      support after a reasonable opportunity for further
       investigation or discovery; . . .

4   Fed. R. Civ. P. 11(b)(1)-(3).

5       Rule 11 is intended to prompt attorneys "to validate the truth and legal

6   reasonableness of the papers filed." *Business Guides, Inc. v. Chromatic Commc'ns*

7   *Enters., Inc.*, 498 U.S. 533, 547 (1991). An attorney's signature "certifies to the

8   court that the signer has read the document, has conducted a reasonable inquiry into

9   the facts and the law and is satisfied that the document is well grounded in both, and

10  is acting without any improper motive." *Id.* at 542. The Ninth Circuit has explained

11  that, "[a]n attorney's signature on a complaint is tantamount to a warranty that the

12  complaint is well grounded in fact and 'existing law' (or proposes a good faith

13  extension of the existing law) and that it is not filed for an improper purpose."

14  *Christian*, 286 F.3d at 1127 (citations omitted).

15      When, as here, a "complaint is the primary focus of Rule 11 proceedings, a

16  district court must conduct a two-prong inquiry to determine (1) whether the

17  complaint is legally or factually baseless from an objective perspective, and (2) if

18  the attorney has conducted a reasonable and competent inquiry before signing and

19  filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). "As shorthand for

20  this test, [the Ninth Circuit] use[s] the word 'frivolous' to denote a filing that is *both*

21  baseless *and* made without a reasonable and competent inquiry." *Id.* (emphasis in

22  original and citation omitted). Courts apply a purely objective standard in assessing

23  whether the attorney's inquiry was reasonable. *See Business Guides, Inc. v.*

24  *Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 812 (1989). Thus, Rule 11

25  applies even in the absence of subjective bad faith. *See Hudson v. Moore Bus.*

26  *Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987).

27

28

Mitchell
Silberberg &
Knupp LLP

13835936.8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

The duty to perform a reasonable factual inquiry under Rule 11 "is not a one time obligation," as "Plaintiff is impressed with the continuing responsibility to review and reevaluate his pleadings" so that if it is later found that a factual allegation lacks evidentiary support, it is to be withdrawn. *See* Fed. R. Civ. P. 11, 1993 Adv. Comm. Notes ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention."). Moreover, "Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to other portions." *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988). Even "[i]ndividual factual misrepresentations in a pleading can be sanctionable under Rule 11." *Heller v. Cepia L.L.C.*, 560 F. App'x 678 (9th Cir. 2014) (citing *Truesdell v. S. Cal,. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002)).

## A.     <u>**Plaintiff's Claims Are Based On False And Unsupported Factual Allegations.**</u>

By signing a pleading, an attorney certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005) (Rule 11 violated where attorney "presents 'facts' and 'law' to the Court that are plainly wrong or misleading"). This certification contemplates that the attorney "conduct[ed] a reasonable inquiry into the facts …*before* filing" the pleading with the court. *Business Guides*, 498 U.S. at 551 (emphasis added) (affirming application of objective standard to Rule 11 and upholding sanctions against party for filing complaint of copyright infringement with no factual basis). This pre-filing duty to find supporting facts is "not satisfied

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

by rumor or hunch."  *Ingenuity 13 LLC v. Doe*, No. 212-CV-08333-ODW-JC, 2013 WL 765102, at *1 (C.D. Cal. Feb. 7, 2013) (citation omitted).

Numerous allegations in the Complaint are "factually 'baseless' from an objective perspective."  *Christian,* 286 F.3d at 1127.  In fact, the allegations confirm, without question, that counsel completely failed to engage in ***any*** pre-filing investigation, and never even took the time to ***play*** any *Call of Duty* game, including (and especially) *Infinite Warfare*.  Had counsel actually played *Infinite Warfare* (or watched someone playing the game), they would have immediately realized that nearly all (if not all) of the allegations concerning Activision and the *Call of Duty* games are demonstrably and obviously false, including the following:

| **Allegation** | **Facts** |
|---|---|
| "Defendants are using Sean Brooks as its main character in 'Call of Duty.'" Compl., ¶ 23. | The Brooks Character does not appear in ***any*** *Call of Duty* game other than *Infinite Warfare*.  *See* Lodato Decl., ¶ 10.  In *Infinite Warfare*, the Brooks Character is ***not*** the "main character"; he is a minor supporting character who is not controlled by the user in the game, does not appear until almost halfway through the campaign, and has very few lines of dialogue.  *Id.*, ¶¶ 8-9; *see also* Mayer Decl., ¶ 4. |
| The Brooks Character "uses the likeness, persona, and name of Plaintiff's owner Shon Brooks." Compl., ¶ 23. | The Brooks Character does not bear even the slightest resemblance to Shon Brooks, and does not even use Shon Brooks' name.  *See* Mayer Decl., ¶ 4. |
| The Brooks Character is "the main character in [Activision's] gambling platform which contains all of [Activision's] on e-subscription." Compl., ¶ 25 | Activision does not offer a "gambling" platform or a "subscription" to play all of its games, and it has never done so. *See* Lodato Decl., ¶ 5. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Mitchell Silberberg & Knupp LLP

13835936.8

| | |
|---|---|
| "Defendants… conduct global esports playoffs and championships… which infringe upon … the mark and name SHON BROOKS."  Compl., ¶ 26. | Neither the Brooks Character nor the name "Sean Brooks" ever was used in connection with esports events run by Activision.  *See* Lodato Decl., ¶ 10.  The Brooks Character also is not a playable character and does not appear in any competitive multiplayer matches.  *Id.*, ¶¶ 8, 10. |
| "Sean (Shon) Brooks has missiles at his disposal."  Compl., ¶ 28(a). | The Brooks Character is an infantry soldier who engages in ground combat in space.  *See* Lodato Decl., ¶ 9. |
| "Call of Duty … is played in First Person Shooter and Third Person Shooter."  Compl., ¶ 28(b). | The *Call of Duty* games are first-person shooter games, not third-person.  *See* Lodato Decl., ¶ 3. |
| "Sean Brooks in the Call of Duty game… [has] unlimited resources."  Compl., ¶ 28(e). | The Brooks Character does not have "resources"; he is a computer-controlled character with limited lines that follows the user's character during missions.  *See* Lodato Decl., ¶ 9; *see also* Dkt. No. 21-3, Exs. 1, 4. |
| "Shon Brooks controls character during a single and multiplayer campaign and experience."  Compl., ¶ 28(g). | The Brooks Character is not playable, either in the single-player campaign or the multiplayer mode.  *See* Lodato Decl., ¶¶ 8, 10.  He is a computer-controlled character.  *Id.*, ¶ 8. |
| "Sean Brooks scripted battle scenes take place in a high fashion couture shopping mall."  Compl., ¶ 28(k). | While there is a scene in *Infinite Warfare* that takes place in a shopping mall (in far future Geneva), the Brooks Character is not in the scene (and has not even been introduced to the story when that scene takes place.)  *See* Lodato Decl., ¶ 9. |

1    These are not facts that can be subject to reasonable debate or discussion, and

2    they certainly do not have the modicum of "evidentiary support" required under

3    Rule 11. Nor do any of these facts require discovery. The *Call of Duty* games,

4    including *Infinite Warfare*, speak for themselves. *See* Dkt. No. 21-3, Ex. 1. Each is

5    available to the public, both in tangible and digital form. *See* Lodato Decl., ¶ 6.

6    Counsel very easily could have verified the content of the game and the truthfulness

7    of its allegations simply by purchasing and playing the game(s) (or directing an

8    associate or paralegal to do so.) *See* Mayer Decl., ¶¶ 3-4. For that matter, even a

9    simple Internet search would have confirmed that the Brooks Character is not the

10   main character, is not a playable character, and does not look or act like Shon

11   Brooks. *See id.*, ¶ 4.

12   Moreover, since the games are central to Plaintiff's claims in this action, there

13   is no excuse for not having reviewed them before filing this lawsuit. *See, e.g.*,

14   *Christian*, 286 F.3d at 1129 (affirming Rule 11 sanctions where attorney "would

15   have been able to discover the copyright information [which rendered the plaintiff's

16   claim frivolous] by examining the doll heads" plaintiff claimed were infringing);

17   *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 286 (C.D. Cal. 1991) (imposing

18   Rule 11 sanctions where "not all of the accused products were examined before the

19   filing of the complaint"); *see also Valve & Primer Corp. v. Val-Matic Valve & Mfg.

20   Corp.*, No. 87 C 8726, 1990 WL 129360, at *3 (N.D. Ill. Aug. 24, 1990) (imposing

21   Rule 11 sanctions; "In a copyright action, pre-filing inquiry at the very least entails

22   reviewing: (1) a client's copyright registrations; (2) the [work] … for which

23   copyright protection is claimed, and (3) the [work] of the alleged infringer to ensure

24   that a reasonable basis for a copyright violation claim exists."), *aff'd*, 940 F.2d 666

25   (7th Cir. 1991). Plaintiffs' counsel, an "AmLaw 200" firm with "nearly 200

26   industry-focused attorneys" certainly had the resources to conduct a serious

27   investigation before filing the lawsuit. *See* Mayer Decl., ¶ 2 & Exs. 1-2.

28

Mitchell
Silberberg &
Knupp LLP

13835936.8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

The false allegations concerning the *Call of Duty* and *Infinite Warfare* games are just the tip of the iceberg.  Any serious investigation by competent counsel would have revealed a whole host of other falsehoods.  Most notably, while the Complaint alleges a series of "talks," "meetings," and "negotiations" between Activision and Brooks (Compl., ¶¶ 19-20), but fails to attach any of the alleged communications.  Notably, the only Activision employee that Plaintiff names in its Complaint is Gordon Hall.  Compl., ¶ 19.  The reality is that Hall worked for a short time at a studio in ***Leeds, England*** called Blast Furnace.  *See* Lodato Decl., ¶¶ 11-12.  This studio only developed mobile games (***not*** the Call of Duty console games at issue), and was shut down in March 2014, nine months before Plaintiff claims to have contacted him (in December 2014.)  *Id.*, ¶ 12.

Even the allegations in the Complaint about Plaintiff are false.  For example, Plaintiff (1) could not have "first used" the SHON BROOKS Mark "in commerce" in the 1980s, because Plaintiff did not exist until 2002 (Compl., ¶ 9); (2) never created "content, a platform, concepts, and graphics" for video games (*id.*, ¶ 12); (3) does not distribute "computer technology toys" (*id.*, ¶ 16); and (4) does not have a television series that has "continuously aired" since 2014 (*id.*, ¶ 18).  *See* Mayer Decl., ¶ 6.  One of the more bizarre allegations in the Complaint is that Shon Brooks "appeared on the Simpsons."  Compl., ¶ 11.  That never happened.  What did apparently happen is that Brooks attended a party, where he took a photograph with actors dressed as Bart and Lisa Simpson.  *See id.*, ¶ 6; Dkt. No. 21-3, Ex. 6 at pp. 209-11.

### B.    Plaintiff's Claims Are Legally Baseless.

By signing a pleading, an attorney also certifies that the claims therein are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  *Holgate v. Baldwin*, 425 F.3d 671, 676-77 (9th Cir. 2005).  A claim is "legally baseless," and

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1  thus sanctionable under Rule 11, "where no 'plausible, good faith argument can be

2  made by a competent attorney' in support of the proposition asserted."  *Goel v.*

3  *Coal. Am. Holding Co., Inc.*, No. CV 11-02349 JGB (EX), 2013 WL 12122302, at

4  *6 (C.D. Cal. Feb. 26, 2013) (citation omitted).

5       As set forth in the MTD and SLAPP Motion, ***even if*** all of the allegations in

6  the Complaint were true (which they are not), any lawyer with even the most

7  rudimentary knowledge of intellectual property law—let alone experienced

8  intellectual property counsel at a prestigious law firm such as Procopio—should

9  have known that each and every one of the claims could not survive as a matter of

10  law.  In fact, each of Plaintiff's claims are directly refuted by well-established Ninth

11  Circuit or California law:

12       **Trademark Infringement.**  The law is absolutely clear that Activision's use

13  of the name "Sean Brooks" in *Infinite Warfare* is protected by the First Amendment.

14  The basic principles regarding the use of trademarks in expressive works were

15  established more than twenty years ago in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.

16  1989).  Since then, nearly a dozen cases (including three cases involving *Call of*

17  *Duty*) have confirmed that the First Amendment bars trademark infringement claims

18  based on the use of the mark in or on a video game.  *See, e.g.*, *Brown v. Elec. Arts,*

19  *Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013) (rejecting Lanham Act claim arising from

20  use of plaintiff's likeness in *Madden NFL* video game because it is barred by the

21  First Amendment pursuant to *Rogers*); *E.S.S. Ent. 2000, Inc. v. Rock Star Videos,*

22  *Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (same, use of name and likeness of

23  plaintiff's Los Angeles strip club in the *Grand Theft Auto: San Andreas* video

24  game); *VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*, No. 3:15-CV-01729-LB,

25  2015 WL 5000102, at *12 (N.D. Cal. Aug. 21, 2015) (same, use of trademark as

26  signage on a virtual racetrack in video game); *Novalogic, Inc. v. Activision Blizzard*,

27  41 F. Supp. 3d 885, 889 (C.D. Cal. 2013) (same, use of plaintiff's mark "Delta

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Force" and related logo in *Call of Duty: Modern Warfare 3* video game); *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134 (N.D. Cal. 2014) (same, use of plaintiff's "angry monkey" mark in *Call of Duty: Ghosts* video game); *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 480 (S.D.N.Y. 2020) (same, depiction of "Humvee" vehicles in *Call of Duty* video game); *Rebellion Devs. Ltd. v. Stardock Ent., Inc.*, No. 12-12805, 2013 WL 1944888 at *6 (E.D. Mich. May 9, 2013) (same, use of plaintiff's mark "Rebellion" in title of video game); *Dillinger, LLC v. Elec. Arts Inc.*, No. 1:09-CV-1236-JMS-DKL, 2011 WL 2457678 at *8 (S.D. Ind. June 16, 2011) (same, use of plaintiff's name "Dillinger" weapon in video game). Moreover, all of these cases involved much more compelling factual circumstances; not the mere coincidental overlap of a character name with someone's real name.

**Copyright Infringement.** Plaintiff's copyright infringement claim ignores the basic, bedrock tenet that copyright law does not protect ideas. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea [or] concept."); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (courts must take care to "filter out and disregard the non-protectible elements" and "inquire only whether the ***protectible elements, standing alone***, are substantially similar") (emphasis in original). Plaintiff's counsel certainly knows this. Nevertheless, Plaintiff's entire copyright infringement claim is based upon alleged similarities in ***unprotectable*** expression, including *scenes-à-faire* (*e.g.*, "exotic and action-packed locations"), familiar stock themes (*e.g.*, "bring[ing] thieves to justice"), non-distinct characters (*e.g.*, individuals with "unlimited resources"), and game mechanics (*e.g.*, "day and night mode"). *See* Compl., ¶ 28. This alone is sufficient to justify the imposition of Rule 11 sanctions. *See Braham v. Sony/ATV Music Publ'g*, No. 215CV8422MWFGJSX, 2015 WL 7074571, at *4 (C.D. Cal. Nov. 10, 2015) (cautioning plaintiff that filing copyright infringement

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1    claim based on unoriginal components of his work may "conflict with his duty

2    under Federal Rule of Civil Procedure 11 not to make factually or legally baseless

3    claims").

4         Underscoring the frivolous nature of Plaintiff's copyright infringement claim,

5    Plaintiff's counsel not only failed to attach the allegedly infringed games to the

6    Complaint, but also has refused Activision's counsel's repeated requests for copies

7    of the games.  *See* Mayer Dec., ¶ 7.[5]  Plaintiff's counsel's deliberate concealment of

8    the games—thereby preventing Activision (and the Court) from comparing the

9    works at issue side-by-side—is tantamount to bad faith and confirms their

10   knowledge that Plaintiff's copyright infringement claim is baseless.  *See Esplanade*

11   *Prods., Inc. v. Walt Disney Co.*, No. CV1702185MWFJCX, 2017 WL 5635024, at

12   *10 (C.D. Cal. July 11, 2017) (plaintiff's "failure to [attach or] include, at the least,

13   any clear summary of [plaintiff's work] … indicates, on some level, that [the

14   plaintiff] believed including those details would have been detrimental to its

15   [copyright] claims").

16        **Right of Publicity.**  Counsel's decision to assert this claim is

17   incomprehensible.  Other than a common sounding name, there is not a single point

18   of resemblance between Plaintiff's owner, Shon Brooks (the financial consultant),

19   and the Brooks Character.  *See* Mayer Decl., ¶ 4.  A few minutes of legal research

20   would have confirmed that this claim could not survive.  *See, e.g., Aguilar v.*

21   *Universal City Studios, Inc.,* 174 Cal. App. 3d 384, 391 (Ct. App. 1985) (rejecting

22   claim by Bertha Aguilar that film character named "Bertha" was based on her

23   because the plaintiff's life experiences were "so dissimilar" to the "Bertha"

24   character that "no reasonable person could connect the two"); *Polydoros v.*

25

---

26   [5] As set forth in the MTD, Plaintiff's failure to attach, describe, or even include
     images from its purported games in the Complaint is independently fatal to its
27   copyright infringement claim.  Notably, unlike the *Call of Duty* games, Plaintiff's
     purported games, *Save One Bank* and *Stock Picker*, are not readily available for
28   purchase.  *Id.*, ¶ 5.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

*Twentieth Century Fox Film Corp.,* 67 Cal. App. 4th 318, 322-23 (1997) (rejecting claim by Michael Polydoros that a film character named "Michael Palledourous" was based on him, because despite some similarities, "no person seeing this film could confuse the [plaintiff and the fictional character]"); *Washington v. Take-Two Interactive Software, Inc.*, 2012 WL 5359709 at *11 (Cal. App. Oct. 31, 2012) (rejecting claim that video game character was based on plaintiff because "there is not a single feature that directly links [the character] to the plaintiff, such as 'distinctive tattoos, birthmarks, or other physical features").

\*      \*      \*

Given the well-established authority refuting each of Plaintiff's claims, no attorney conducting an objectively reasonable inquiry could claim in good faith that such claims were warranted under existing law.  It is inconceivable that Plaintiff's counsel—who are highly trained and experienced intellectual property lawyers (*see* Mayer Decl., Exs. 3-4)—did not know this.  *See, e.g.*, *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.*, 790 F.2d 1421, 1427 (9th Cir. 1986) (affirming imposition of Rule 11 sanctions on experienced law practitioners who "must have known" the claim asserted was invalid).  In any event, Plaintiff's counsel cannot "avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head," *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994), especially after Activision's counsel brought the numerous issues with Plaintiff's Complaint to their attention.  *See* Mayer Decl., ¶¶ 7-11.

## III.   THE COURT SHOULD STRIKE THE COMPLAINT AND AWARD ACTIVISION ITS ATTORNEYS' FEES AS A SANCTION FOR COUNSEL'S RULE 11 VIOLATIONS.

Under these circumstances, it is appropriate both to strike Plaintiff's Complaint as against Activision with prejudice and impose monetary sanctions on

Mitchell
Silberberg &
Knupp LLP

13835936.8

19                         CASE NO. 3:21-CV-02003
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

1  Plaintiff's counsel of record.  The Court has broad discretion in fashioning an

2  appropriate sanction for a Rule 11 violation.  *See Mellow v. Sacramento Cty.*, 365 F.

3  App'x 57, 58 (9th Cir. 2010); *Hudson*, 836 F.2d at 1163 ("The district court has

4  wide discretion in determining the appropriate sanction for a Rule 11 violation.").

5  The sanction imposed must "suffice[] to deter repetition of the conduct or

6  comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

7          Striking the offending pleading is appropriate remedy for a Rule 11 violation.

8  *See* Fed. R. Civ. P. 11, 1993 Adv. Comm. Notes (nonmonetary sanctions include

9  "striking the offending paper").  Accordingly, to the extent the Complaint has not

10  already been dismissed pursuant to Activision's pending MTD and SLAPP Motion,

11  Activision respectfully requests that the Court strike Plaintiff's Complaint with

12  prejudice and terminate the action as against Activision.  *See Combs v. Rockwell*

13  *Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (dismissal with prejudice appropriate

14  under Rule 11); *Gionis v. Cal. Bureau for Private Postsecondary Educ.*, No. 2:13-

15  CV-00912-MCE, 2014 WL 466276, at *4 (E.D. Cal. Feb. 5, 2014) (imposing

16  terminating sanctions under Rule 11 for filing frivolous complaint).

17          In addition, Activision has been forced to expend a substantial amount of

18  money to defend itself against Plaintiff's frivolous claims, including by researching

19  and investigating the claims, collecting documentary evidence, preparing a motion

20  to dismiss and SLAPP motion, and engaging in conferences with Plaintiff's counsel.

21  On a motion, and if warranted for effective deterrence, the Court may order

22  "payment to the movant of part or all of the reasonable attorney's fees and other

23  expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).  "Where

24  the original complaint is the improper pleading, all attorney fees reasonably incurred

25  in defending against the claims asserted in the complaint form the proper basis for

26  sanctions." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993); *see also Kunimoto v.*

27  *Fidell*, 26 F. App'x 630, 633 (9th Cir. 2001) (affirming award of attorneys' fees

28

Mitchell
Silberberg &
Knupp LLP

13835936.8

20          CASE NO. 3:21-CV-02003
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1  under Rule 11 for filing frivolous complaint); *Truesdell v. S. Cal. Permanente Med.*

2  *Grp.*, 209 F.R.D. 169, 178 (C.D. Cal. 2002) ("an appropriate sanction is

3  reimbursement of those attorneys' fees and costs reasonably expended by Defendant

4  as a result of [the] unwarranted filing" of a complaint).

5        Activision therefore respectfully requests that the Court order Plaintiff's

6  counsel to pay all of the reasonable attorney's fees and costs that Activision

7  needlessly incurred in defending against Plaintiff's frivolous claims, including the

8  fees incurred for bringing this Rule 11 Motion.  *See* Fed. R. Civ. P. 11(c)(2) ("If

9  warranted, the court may award to the prevailing party the reasonable expenses,

10  including attorney's fees, incurred for the [Rule 11] motion."); *ADO Fin., AG v.*

11  *McDonnell Douglas Corp.*, 938 F. Supp. 590, 597 (C.D. Cal. 1996) (allowing

12  defendant "to recover the fees and expenses incurred in prosecuting the Rule 11

13  motion").  Given the gravity of Plaintiff and its counsel's conduct and the

14  fundamental nature of the facts that they failed to investigate, a monetary award is

15  necessary to deter future improper conduct by Plaintiff's counsel or others similarly

16  situated.  *See* Fed. R. Civ. P. 11(b)(2), (4).

17        The monetary sanctions sought herein should be imposed jointly against

18  Plaintiff's counsel and their law firm, Procopio.  *See* Fed. R. Civ. P. 11(c)(1)

19  ("Absent exceptional circumstances, a law firm must be held jointly responsible for

20  a violation committed by its partner, associate, or employee.").  Activision is

21  prepared to promptly submit an application for its reasonable attorneys' fees and

22  costs in connection with such appropriate sanctions.

23

24  **IV.   CONCLUSION**

25        Activision respectfully requests that the Court grant its motion for sanctions

26  pursuant to Rule 11 and enter an order (1) dismissing Plaintiff's Complaint as

27  against Activision with prejudice; and (2) directing Plaintiff's counsel (and their law

28

Mitchell
Silberberg &
Knupp LLP

13835936.8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

firm) to pay all of Activision's reasonable attorneys' fees and costs incurred in defending itself in this action; and (3) imposing any other sanctions sufficient to deter repetition of Plaintiff's and its counsel's improper conduct.

DATED: MARCH 2, 2022                    RESPECTFULLY SUBMITTED,

                                        MARC E. MAYER
                                        KARIN G. PAGNANELLI
                                        MITCHELL SILBERBERG & KNUPP LLP


                                        By: _____
                                             Marc E. Mayer
                                             Attorneys for Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**