Craig B. Whitney (SBN 217673)
Frankfurt Kurnit Klein & Selz, P.C.
28 Liberty Street
New York, NY 10005
(t) (212) 826-5583; (f) (347) 438-2106
cwhitney@fkks.com

Attorneys for Defendant
Rockstar Games, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKS ENTERTAINMENT, INC., | CASE NO. 3:21-CV-02003-TWR-MDD |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROCKSTAR GAMES, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 11** |
| ACTIVISION BLIZZARD, INC., AND ROCKSTAR GAMES, INC., | |
| Defendants. | [Notice of Motion, Declarations of Craig B. Whitney and Andrew Ungberg, and [Proposed] Order Filed Concurrently Herewith] |
| | Date:  May 26, 2022 |
| | Time: 1:30 pm |
| | Courtroom: 3A (3rd Floor) |
| | Judge: The Hon. Todd W. Robinson |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ............................................................... 1

II.   RELEVANT FACTUAL ALLEGATIONS ................................................. 3

III.  ARGUMENT ..................................................................................... 5

    A.   Legal Standard ......................................................................... 5

    B.   The Brooks Parties Filed a Factually Baseless Complaint Against Rockstar and Failed to Conduct a Reasonable and Competent Factual Inquiry ..................................................... 6

        1.   The Factual Allegations Against Rockstar Are Baseless ...................................................................... 6

        2.   Procopio Failed to Undertake a Reasonable and Competent Inquiry into the Facts Before Filing the Complaint ......................................................... 9

    C.   Procopio Filed a Legally Frivolous Complaint and Failed to Conduct a Reasonable and Competent Legal Inquiry ................... 13

        1.   The Legal Allegations Against Rockstar Are Baseless ................................................................... 13

        2.   Procopio Failed to Undertake a Reasonable and Competent Inquiry into the Law Before Filing the Complaint ....................................................... 16

    D.   The Brooks Parties Should Also Be Sanctioned for the Reasons Identified in Activision's Brief .............................................. 17

IV.   CONCLUSION ................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ..................................................................... 13

*Antelope Valley Allied Arts Ass'n v. Lancaster Redevelopment Agency*,
  No. CV 10-10039 DSF, 2012 WL 13006002 (C.D. Cal. 2012) ........................... 8

*Bus. Guides, Inc. v. Chromatic Communic'ns Enterprises, Inc.*,
  498 U.S. 533 (1991) ................................................................................. 16

*Buster v. Greisen*,
  104 F.3d 1186 (9th Cir. 1997) ...................................................................... 16

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) .................................................................... 5, 9

*Est. of Blue v. Cty. of Los Angeles*,
  120 F.3d 982 (9th Cir. 1997) .................................................................. 14, 15

*Frontera Television Network LLP v. Sada*,
  No. 12-00920 VAP (DTBx), 2012 WL 13128038 (C.D. Cal. Dec. 13,
  2012) ................................................................................................ 11, 12

*Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*,
  112 F.R.D. 664 (S.D.N.Y. 1986) .................................................................... 8

*G.C. & K.B. Invs., Inc. v. Wilson*,
  326 F.3d 1096 (9th Cir. 2003) ....................................................................... 6

*Goel v. Coal. Am. Holding Co.*,
  No. CV 11-02349 JGB (EX), 2013 WL 12122302 (C.D. Cal. Feb.
  26, 2013) ............................................................................................... 16

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
  801 F.2d 1531 (9th Cir. 1986) ....................................................................... 5

*Havensight Cap. LLC v. Nike, Inc.*,
  No. CV 14-7153-R, 2015 WL 12832061 (C.D. Cal. 2015) ............................... 14

*Heller v. Cepia L.L.C.*,
  560 Fed. Appx. 678 (9th Cir. 2014) ................................................................ 7

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ....................................................................... 15

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2017 WL 11633138 (C.D. Cal. 2017) .............................................................. 6

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  No. 04-00689, 2007 WL 6137003 (C.D. Cal. 2007)..........................................6, 9

*Martinez v. City of W. Sacramento*,
  No. 2:16-cv-02566-TLN-JDP, 2021 WL 2227830 (E.D. Cal. 2021) .................5

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006) ...........................................................................15

*Mitchell v. Reg'l Serv. Corp.*,
  No. C 13-04212 JSW, 2014 WL 12607809 (N.D. Cal. 2014) ....................14, 15

*Moser v. Bret Harte Union High Sch. Dist.*,
  366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................................................5

*In re Napster, Inc. Copyright Litig.*,
  No. C MDL-00-1369, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005) ..................15

*Nguyen v. Simpson Strong-Tie Co.*,
  No. 19-cv-07901-TSH, 2020 WL 5232564 (N.D. Cal. 2020) ..................8, 9, 13

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
  897 F.3d 1008 (9th Cir. 2018) .........................................................................14

*Roley v. New World Pictures, Ltd.*,
  19 F.3d 479 (9th Cir. 1994) .............................................................................14

*Shek v. Children Hosp. Rsch. Ctr. of Oakland*,
  No. C 12-04517 WHA, 2012 WL 6217644 (N.D. Cal. 2012) ...........................8

*Smith v. Ricks*,
  31 F.3d 1478 (9th Cir. 1994) ...........................................................................16

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
  786 Fed. Appx. 648 (9th Cir. 2019) .................................................................13

*Terran v. Kaplan*,
  109 F.3d 1428 (9th Cir. 1997) .........................................................................12

*Truesdell v. Southern California Permanente Med. Grp.*,
  209 F.R.D. 169 (C.D. Cal. 2002).................................................................8, 13

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000) ...........................................................................9

*Willis v. City of Oakland*,
  231 F.R.D. 597 (N.D. Cal. 2005) .....................................................................12

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) .........................................................................15

**Statutes**

15 U.S.C. § 1125(a)(1) ........................................................................14, 15

iii                                    CASE NO. 3:21-CV-02003

17 U.S.C. § 507(b) ................................................................................. 14

Cal. Civ. Code § 3344 .......................................................................... 15

Cal. Code Civ. Proc. § 337 ................................................................... 15

Cal. Code Civ. Proc. § 343 ................................................................... 15

**Other Authorities**

Fed. R. Civ. P. 11 .............................................................................. *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ROCKSTAR GAMES, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Rockstar Games, Inc. ("Rockstar") respectfully submits this memorandum of points and authorities in support of its Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") against Plaintiff Brooks Entertainment, Inc. ("Brooks") and its counsel, Procopio, Cory, Hargreaves & Savitch LLP ("Procopio," together with Brooks, the "Brooks Parties").

## I.     PRELIMINARY STATEMENT

The Brooks Parties have dragged Rockstar into this case for no justifiable reason.  They assert claims against Rockstar for trademark infringement, copyright infringement, and commercial appropriation of likeness based on the world-famous *Call of Duty* video game series.  But even a cursory investigation—let alone the reasonable one required under Rule 11—reveals that Rockstar had nothing to do with *Call of Duty*.

The relevant facts are indisputable.  Rockstar has never developed *Call of Duty*, never controlled *Call of Duty*, and never published *Call of Duty*.  Rockstar has earned no revenue at all from the game.  Rockstar informed the Brooks Parties of these facts before they filed the Complaint, pointing out that *Call of Duty* is the property of Activision Blizzard, Inc. ("Activision"), and that Rockstar and Activision have no connection to one another.  Activision is a publicly traded company, while Rockstar is the wholly-owned subsidiary of another publicly traded company, Take-Two Interactive Software, Inc. ("Take-Two").  In fact, Take-Two and Activision are major commercial competitors in the video game industry.   Any alleged wrongdoing stemming from *Call of Duty*, therefore, could not possibly have anything to do with Rockstar.  Accordingly, the Brooks Parties' claims against Rockstar relating to the game are false and frivolous.

Rockstar has gone to great lengths to avoid this motion.  In October 2021, long before the Brooks Parties filed the Complaint, Rockstar explained in response to a

letter it received from Procopio that Rockstar "did not produce or develop Call of Duty and does not control or derive any revenue from the game." (Declaration of Craig Whitney ("Whitney Decl.") Ex. B at 1.) Rockstar informed the Brooks Parties that *Call of Duty* was the product of its industry competitor, Activision, and offered to discuss any documents that the Brooks Parties believed substantiated their claims against Rockstar. (*Id.*) Instead, the Brooks Parties ignored Rockstar's letter and filed the Complaint with no further correspondence.

It is obvious that the Brooks Parties did no further investigation before filing this lawsuit and its baseless allegations. Their failure to do so is particularly egregious because the facts of *Call of Duty*'s ownership are easily verified. Although a simple internet search would have been sufficient, publicly available filings with the Securities and Exchange Commission (SEC) leave no doubt that *Call of Duty* is Activision's "key product franchise" with which Rockstar has no involvement. *See* Rockstar's Motion to Dismiss (ECF No. 22 ("Motion to Dismiss")). None of the SEC filings by either Activision or Take-Two during the two-decade history of the *Call of Duty* franchise suggests otherwise. And the Complaint itself provides no factual basis to believe there is any link between Rockstar and *Call of Duty*. Instead, the Brooks Parties lump Activision and Rockstar together as "Defendants" throughout the Complaint to falsely attribute acts concerning *Call of Duty* to Rockstar.

After the Brooks Parties filed the Complaint, Rockstar's counsel again warned Procopio that Rockstar has no connection to Activision's franchise and repeatedly asked about the Brooks Parties' basis for claiming that Rockstar developed and released *Call of Duty*. They had none. Rather, Procopio's only explanation involved supposed emails between Brooks and former Rockstar employees who left the company years before the alleged release of *Call of Duty: Infinite Warfare*. The Brooks Parties filed no such emails as part of the Complaint and declined to share them with Rockstar notwithstanding Rockstar's multiple requests to review them.

Despite repeated discussions about the lack of factual basis for Procopio's allegations that Rockstar "released" and "developed" *Call of Duty* (among other false statements), along with Rockstar's Motion to Dismiss and the 21-day safe harbor to review this motion for sanctions, the Brooks Parties have refused to withdraw their Complaint and continue to press these falsities to the Court.

Under these extreme circumstances, Rockstar respectfully requests that the Court dismiss the Complaint against Rockstar with prejudice and order the Brooks Parties to pay Rockstar's reasonable attorney's fees and costs incurred in defending against their frivolous pleading.

## II.   RELEVANT FACTUAL ALLEGATIONS

The Complaint is filled with false statements about Rockstar.  Although the Brooks Parties apparently acknowledge that Rockstar and Activision are independent companies with no corporate relationship (Compl. ¶¶ 6-7), the Complaint repeatedly attributes conduct that involved only Activision to Rockstar.  As a result, the Brooks Parties assert multiple false allegations about Rockstar without basis—where any one alone would violate Rule 11.  In particular, the Brooks Parties falsely allege that Rockstar (i) "develop[ed]" Call of Duty (*id.* ¶ 21), (ii) "released a series of games which are based on the original 'Call of Duty' game," (*id.* ¶ 24), (iii) used Sean Brooks as the main character in *Call of Duty* (*id.* ¶ 23), and (iv) conducted global esports and playoffs and championships with Activision using the *Call of Duty* games (*id.* ¶ 26). None of these allegations are true.  (Declaration of Andrew Ungberg ("Ungberg Decl.") ¶¶ 3-6.)

Even worse, the Brooks Parties' misattributions and false allegations were entirely avoidable.  After Rockstar received a letter from Procopio in October 2021 alleging that Rockstar, working with Activision, infringed Brooks's intellectual property by developing *Call of Duty: Infinite Warfare* (*see* Whitney Decl., Ex. A), Rockstar promptly informed Procopio that it "did not produce or develop Call of Duty

and does not control or derive any revenue from the game." (Whitney Decl. Ex. B at 1.)  Rockstar further explained that, to its knowledge, the *Call of Duty* franchise was owned by Activision—a competitor with no relationship to the company—and that all of the allegations and demands appeared to be directed exclusively towards Activision. (*Id.*)  In case there was any confusion, Rockstar offered to review any documents in Brooks's possession that the Brooks Parties believed substantiated their claims.  (*Id.*)

But the Brooks Parties ignored this letter and, with no further basis, proceeded to file the Complaint.  Given Rockstar's desire to avoid burdening the parties and this Court with frivolous claims, it met and conferred with Procopio on January 11, 2022 and again on February 7, 2022, to discuss the lack of any link between Rockstar and *Call of Duty*.  (Whitney Decl. ¶¶ 5-6.)  During these discussions, Procopio informed Rockstar that it possessed emails between Brooks and former Rockstar employees Sarah Shafer and Gordon Hall dating from 2010 to 2014.  (*Id.*)  But Hall and Shafer left Rockstar in 2011 and 2013, respectively, which Rockstar's counsel informed Procopio.  (*Id.* ¶¶ 5-6; Ungberg Decl. ¶¶ 7-8.)  Indeed, Hall worked *for Activision* starting in 2012.  (Whitney Decl., Ex. C.)  Rockstar's counsel even suggested that Procopio look at Hall's and Shafer's LinkedIn pages, which confirm these undisputed facts.  (*Id.*, Exs. C, D.) Significantly, Procopio did not know whether these alleged emails with Hall and Shafer were from their Rockstar email addresses and conceded that none of the communications in their possession contradicted the information that Rockstar has repeatedly provided.

The Complaint alleges that Brooks was in sporadic "meetings" and exchanged "emails" with Shafer and a different Rockstar employee—its co-founder and president, Sam Houser—from 2010 to 2015.[1]  (Compl. ¶ 19.)  Rockstar, however, is aware of only one written communication between Brooks and Houser: an unsolicited email in late 2014 from Brooks's alleged publicist, which Rockstar included with its Motion to

---

[1] The Complaint appears to acknowledge that Hall worked at Activision, not Rockstar, during the relevant period (Compl. ¶ 19), but Procopio suggested otherwise in discussions with Rockstar's counsel.

Dismiss.  (ECF No. 22-6.)  While the Complaint suggests an extended negotiation process, as noted above, Shafer left Rockstar in August 2013, and the unsolicited email to Houser, sent more than a year later, makes clear that Brooks had not heard back from Rockstar since communicating with Shafer (*id.*), and there is no allegation that Rockstar responded to the unsolicited email or otherwise subsequently engaged with Brooks.  Nonetheless, the Complaint then alleges, contrary to all available evidence, that "Activision *along with Rockstar*" developed *Call of Duty: Infinite Warfare* in 2016, among many other blatantly false allegations.  (Compl. ¶ 21 (emphasis added).)

## III.   ARGUMENT

### A.   Legal Standard

Rule 11 imposes an affirmative duty on counsel to investigate the law and facts before filing a pleading. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Under Rule 11, an attorney who files a pleading "certifies that to the best of the person's knowledge, information, and belief" (a) "the claims, defenses, and other legal contentions are warranted by existing law" or a non-frivolous extension of the law, and (b) "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(2) & (3).  A violation of either provision is sufficient for sanctions. *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986) ("The Rule thus creates an 'affirmative duty of investigation both as to law and as to fact before [papers] are filed.'").  An attorney "may not delegate" its duties to another person and may not "blindly accept the word of his client." *Martinez v. City of W. Sacramento*, No. 2:16-cv-02566-TLN-JDP, 2021 WL 2227830, at *14 (E.D. Cal. 2021).  To the contrary, an attorney is required "to dissuade a client from pursuing specious claims, to avoid possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 977 (E.D. Cal. 2005) (citation omitted).

Where, as here, a "complaint is the primary focus of Rule 11 proceedings," the Ninth Circuit engages in "a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian*, 286 F.3d at 1127 (citation omitted). "Reasonable and competent" is an objective standard and determined by the perspective of "a competent attorney admitted to practice before the district court." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003) (citation omitted). "The subjective intent of the" filer to file a meritorious document is of "no moment." *Id.*

When a party and its counsel files a pleading in violation of Rule 11, a court should "impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). Appropriate sanctions are sufficient "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). They can include "nonmonetary directives," "an order to pay a penalty into court," and "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.*

**B.** **The Brooks Parties Filed a Factually Baseless Complaint Against Rockstar and Failed to Conduct a Reasonable and Competent Factual Inquiry**

**1.** **The Factual Allegations Against Rockstar Are Baseless**

Rule 11 sanctions are appropriate if factual allegations "lack evidentiary support." *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 11633138, at *6 (C.D. Cal. 2017) (quoting *Stiglich v. Contra Costa Cnty. Bd. of Sup'rs*, 106 F.3d 409, 416 (9th Cir. 1997)). A claim is factually baseless if it lacks factual foundation. *See ICU Med., Inc. v. Alaris Med. Sys., Inc.,* No. 04-00689, 2007 WL 6137003, at *3 (C.D. Cal. 2007) (citing *Est. of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997)). Conversely, a claim is founded in fact if an independent

examination reveals "credible evidence" in support of a party's statements. *Hornberger*, 2017 WL 11633138, at *6.

The Brooks Parties filed a Complaint littered with false allegations. As noted above, the Complaint contains blatantly false statements about Rockstar's purported involvement in developing and releasing *Call of Duty*. The Brooks Parties allege that Rockstar (i) developed and then released *Call of Duty: Infinite Warfare* in 2016 (Compl. ¶ 21), (ii) "released a series of games" based on the original *Call of Duty* (*id.* ¶ 24), and (iii) used Sean Brooks as the main character in *Call of Duty*. (*Id.* ¶ 23.) Not one of these allegations is true. (Ungberg Decl. ¶¶ 3-6.) Neither the Complaint nor the Brooks Parties have provided a basis—let alone credible evidence—for a single one of them. The Complaint even acknowledges the "extensive amount of Call of Duty product and advertising in the stream of commerce" (*id.* ¶ 57), yet there is not a single advertisement for *Call of Duty* that mentions Rockstar, nor is Rockstar identified on the game itself. (*See, e.g.*, ECF No. 21-2, Ex. 1.) It is unfathomable that Rockstar, the wholly owned subsidiary of publicly traded Take-Two, could have developed and released the multi-billion dollar *Call of Duty* franchise without a single reference to it *ever* in any public SEC filing or anywhere else. *See Heller v. Cepia L.L.C.*, 560 Fed. Appx. 678, 679 (9th Cir. 2014) (allegations were objectively unreasonable where "no evidence supported" plaintiff's allegations). Any allegation that Rockstar developed or released *Call of Duty* is factually baseless.

The Brooks Parties also allege that Rockstar conducts global esports and playoffs and championships with Activision using the *Call of Duty* games. (*Id.* ¶ 26.) These allegations are illogical and false. Rockstar does not conduct global esports championships using its competitor's *Call of Duty* franchise. The Brooks Parties assert these falsehoods without reference to any website or promotional materials that could have misled them into believing Rockstar had anything to do with these activities. In

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ROCKSTAR GAMES, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS

fact, the homepage of the Call of Duty League website makes clear that the league is run by Activision and makes no mention of Rockstar.  (Whitney Decl., Ex. F.)

The Brooks Parties either were or should have been aware of these many falsities before they filed the Complaint.  And they were undoubtedly aware following Rockstar's Motion to Dismiss, which included SEC filings that left no doubt that Rockstar and Activision are separate companies competing in the video game industry and that *Call of Duty* is an Activision franchise.  (ECF No. 22-1 at 3-4.)  Indeed, Activision's Director of Production declared under penalty of perjury that Activision is the "developer, publisher, and distributor" of the "*Call of Duty* series of video games."  (ECF No. 21-2 ¶ 2.)  Moreover, Activision is the sole author listed on the publicly filed *Call of Duty: Infinite Warfare* copyright registrations.  (*See* Whitney Decl., Ex. M.)

Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention."  Fed. R. Civ. P. 11, Adv. Comm. Note (1993).  Courts regularly rely on a litigant's refusal to withdraw a frivolous claim when assessing sanctions.  In *Truesdell v. Southern California Permanente Med. Grp.*, for example, the court reasoned that the sanctions were "particularly proper given that Defendant's counsel gave Plaintiff's counsel at least three opportunities to withdraw these claims, and on each occasion cited to relevant authority demonstrating the speciousness of the Complaint."  209 F.R.D. 169, 177 (C.D. Cal. 2002).  There, as here, Defendant's counsel noted the "futility" of the claims even before the complaint was filed.  *Id.* at 177 n.10.

Once the Brooks Parties became aware that they had repeatedly misidentified Rockstar as a developer of *Call of Duty*, they were required under Rule 11 to voluntarily dismiss the action against Rockstar.  *See Nguyen v. Simpson Strong-Tie*

*Co.*, No. 19-cv-07901-TSH, 2020 WL 5232564, at \*5 (N.D. Cal. 2020) ("Plaintiffs' refusal to withdraw or meaningfully amend these allegations, which were core to its FAC, was a violation of Rule 11."); *Shek v. Children Hosp. Rsch. Ctr. of Oakland*, No. C 12-04517 WHA, 2012 WL 6217644, at \*2 (N.D. Cal. 2012) ("The failure of plaintiff to discontinue the action against Mr. Robinson, after knowing that he was not the intended defendant, violated Rule 11 of the FRCP."); *Antelope Valley Allied Arts Ass'n v. Lancaster Redevelopment Agency*, No. CV 10-10039 DSF (FMOx), 2012 WL 13006002, at \*5 (C.D. Cal. 2012) ("Plaintiffs' counsel had a more than adequate opportunity to avoid sanctions by withdrawing the TAC."); *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co.*, 112 F.R.D. 664, 668 (S.D.N.Y. 1986) ("Mr. Feit's blind obstinacy in the face of overwhelming evidence that he was pursuing the wrong defendant is precisely the type of conduct that Rule 11 is designed to deter.").

The Brooks Parties failed to meet their obligations under Rule 11 despite many opportunities to do so. Rockstar was thus forced to bear thousands of dollars in unnecessary costs by moving to dismiss and for sanctions based on the frivolous Complaint. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (defending against "baseless claims" subjects the alleged infringer "to undue costs—precisely the scenario Rule 11 contemplates"); *Nguyen*, 2020 WL 5232564, at \*8 (even if the plaintiff were to amend the complaint "that does not alter the conclusion that the FAC was frivolous, and it does not wipe away the legal expenses [defendant] incurred in moving to dismiss it. Rule 11 does not require that the entire lawsuit be frivolous before sanctions may be imposed").

### 2.   Procopio Failed to Undertake a Reasonable and Competent Inquiry into the Facts Before Filing the Complaint

An attorney has a duty to conduct a reasonable inquiry before filing a complaint. *Christian*, 286 F.3d at 1127. "The reasonable inquiry test is meant to assist courts in

9                    CASE NO. 3:21-CV-02003

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ROCKSTAR GAMES, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**

discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Id.* The party asserting the claim bears the burden of showing that its inquiry was reasonable and competent. *ICU Med., Inc.*, 2007 WL 6137003, at *3.

Procopio did not satisfy its obligation to conduct a reasonable and competent investigation before filing the Complaint. This is clear from the face of the pleading. If Procopio had conducted the minimal investigation—for instance, reviewing public records to determine the ownership of the *Call of Duty* series or either of the parties' public-facing marketing and advertising messages—it would have uncovered that Rockstar has no reported connection with *Call of Duty*. Rather than conduct any investigation, Procopio sought to hide the lack of factual allegations against Rockstar through improper group pleading that effectively attributes Activision's conduct to Rockstar.

The Brooks Parties' only claimed support for these falsified allegations are limited communications between Brooks and three current and former Rockstar employees between 2010 and 2015. Those employees are Sam Houser, the company's co-founder and president, Sarah Shafer, a former human resources director, and Gordon Hall, a former studio president at Rockstar Leeds in the United Kingdom. (Ungberg Decl. ¶¶ 7-8.) None of these alleged communications could possibly provide a credible basis for the factual allegations.

As an initial matter, the Brooks Parties have never claimed that any of those communications contain evidence that Rockstar developed or released *Call of Duty*. Even if Brooks shared material with Rockstar employees, which is far from clear, Rockstar cannot be liable for *Call of Duty*'s infringement of any exclusive rights because it has nothing to do with the game. None of the communications in the Brooks Parties' possession can credibly suggest otherwise.

Moreover, the Brooks Parties concocted an unbelievable narrative to bring Rockstar into this action.  Looking at the allegations in their most favorable light, Brooks pitched a financial literacy video game for children to some combination of Shafer, Hall, and Houser sometime between 2010 and 2015.  (Compl. ¶¶ 19-20.)  Rockstar then allegedly used Brooks's intellectual property in the children's game to develop *Call of Duty: Infinite Warfare*, a part of its competitor's pre-existing, world-famous, first-person shooter franchise.  (*Id.* ¶ 21.)  Rockstar then purportedly released the game in partnership with Activision—somehow without any public acknowledgement or reported income—in 2016.  (*Id.* ¶ 21.)

Even giving the Brooks Parties every benefit of the doubt, these allegations defy credulity.  It is undisputed that Hall and Shafer left Rockstar in 2011 and 2013, respectively.  The development of *Call of Duty: Infinite Warfare* did not begin until 2014, as was widely reported  (*See* Whitney Decl., Exs. K, L.)  and followed the release of the previous game in the series, *Call of Duty: Ghosts*, which launched in November 2013.  (Whitney Decl., Ex. J.)  Accordingly, if they had any role in developing the game, Hall and Shafer were not employed by Rockstar when they did so.  Tellingly, when Rockstar's counsel asked Procopio whether the relevant communications occurred after Hall and Shafer had left the company, Procopio admitted that it was unaware of whether the communications came from Rockstar email addresses.  (Whitney Decl. ¶ 6.)  Procopio's lack of attention to such basic factual details permeates its frivolous complaint.

Any communication with Houser cannot substantiate Procopio's outlandish theory either.  As explained in Rockstar's Motion to Dismiss, the only written communication with Houser of which Rockstar is aware was an unsolicited email from Brooks's alleged publicist in December 2014 stating that Brooks had not heard back from Rockstar regarding its "media package" since it was reviewed by Shafer.  (ECF No. 22-6.)  The media package was not included with the email and it is apparent from

the wording of the email that Houser had never interacted with Brooks. (*Id.*) Indeed, the email effectively dispels the Brooks Parties' assertion that Rockstar and Brooks were engaged in an ongoing, multi-year pitch and negotiation process in the years alleged in the Complaint.

Procopio's reliance on a scattering of emails provided by its client does not absolve them of the responsibility to conduct an adequate and competent investigation under Rule 11. In *Frontera Television Network LLP v. Sada*, for example, the attorney alleged that he and his firm conducted a reasonable investigation by "review[ing] documents" provided to him by the plaintiff, including "word documents detailing a chain of events." No. 12-00920 VAP (DTBx), 2012 WL 13128038, at *4 (C.D. Cal. Dec. 13, 2012). But that conduct was not a reasonable and competent inquiry under the circumstances. *Id.* The multitude of blatantly false allegations and irreconcilable facts in the Complaint demonstrated that the investigation was, at best, minimal before filing the Complaint. *Id.*

Similarly, in *Willis v. City of Oakland*, the pre-filing factual investigation was objectively inadequate when the attorney drafted the complaint based on a prepared file without conducting an independent investigation. 231 F.R.D. 597, 600 (N.D. Cal. 2005). As the court explained, the operative question was "Would a reasonable attorney have believed plaintiff's complaint to be well-founded in fact based on what a reasonable attorney would have known at the time?" There, the attorney's conduct was unreasonable because he signed the complaint based on (1) a single interview with plaintiffs, (2) an oral "status" report of unknown content from a now-unavailable witness, and (3) limited contact with an agency having no connection to the events giving rise to plaintiffs' complaint. *Id.* at 598. The court noted that plaintiffs' attorney retained an investigator to get statements from witnesses only after the defendant moved for judgment on the pleadings. *Id.* at 600; *see also Terran v. Kaplan*, 109 F.3d 1428, 1435 n.7 (9th Cir. 1997) (sanctionable to claim mental and emotional stress-

related damages without first interviewing plaintiff's doctor or reviewing medical records).

No reasonable attorney would have believed that the facts alleged against Rockstar in Brooks's Complaint were well-founded based on what a reasonable attorney would have known. Procopio either knew or inexcusably failed to investigate who developed and produced *Call of Duty*—the foundation for Brooks's purported claims. Procopio has identified no credible evidence that Rockstar created, released, published, or had any involvement in *Call of Duty* in any way. And the allegations that Rockstar runs e-sports tournaments with its competitor Activision are likewise false and without basis. The evidence contradicting these allegations could have been uncovered by an internet search—far less than what a reasonable attorney would have done. (*See* Whitney Decl. Exs. E, F, G.) Under the circumstances, a reasonable attorney would have conducted an adequate investigation and found the absence of any relationship between Rockstar and the allegedly infringing content at issue. Filing this factually baseless Complaint without a reasonable investigation was frivolous and violated Rule 11.

**C.**   **<u>Procopio Filed a Legally Frivolous Complaint and Failed to Conduct a Reasonable and Competent Legal Inquiry</u>**

        **1.**     **The Legal Allegations Against Rockstar Are Baseless**

The Complaint is also frivolous because it is not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). Sanctions are thus justified on the independent grounds that Procopio prosecuted claims with no reasonable basis in law. *Truesdell*, 209 F.R.D. at 177.

The Complaint is legally baseless for at least two reasons. *First*, the Complaint lacks essential allegations against Rockstar for copyright infringement, trademark infringement, and commercial appropriation of likeness. *See Nguyen*, 2020 WL

5232564, at *5 ("The paucity of fact allegations rendered implausible a core allegation of the FAC, and, as a result, all nine of Plaintiffs' claims.").  To plead a prima facie case of copyright infringement, a party must plausibly allege two requirements: (1) ownership of the allegedly infringed material and (2) that the alleged infringers violate at least one exclusive right granted to copyright holders.  *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  But Procopio cannot allege that Rockstar violated any of Brooks's exclusive rights through *Call of Duty*, because Rockstar did not reproduce, distribute, display, or have any other involvement in that game.  *See Superior Consulting Servs., Inc. v. Steeves-Kiss*, 786 Fed. Appx. 648, 651 (9th Cir. 2019) ("The district court's additional statement that sanctions were warranted because the Complaint 'contained no colorable basis to support a property right' conveyed the determination that the Complaint was also legally frivolous.").  Activision's and Take-Two's SEC filings alone establish that Rockstar has no ownership interest or involvement with *Call of Duty*.

Brooks's trademark infringement and right of publicity claims are legally baseless for the same reason.  To establish a trademark infringement claim under the Lanham Act (15 U.S.C. § 1125(a)(1)), a plaintiff must show that (1) it has a valid, protectable mark, and (2) defendant's use of the mark is likely to cause consumer confusion.  *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018).  Similarly, a right of publicity claim requires, among other elements, defendant's use of plaintiff's identity and the appropriation of plaintiff's name or likeness to defendant's advantage.  *Havensight Cap. LLC v. Nike, Inc.*, No. CV 14-7153-R, 2015 WL 12832061, at *1 (C.D. Cal. 2015) (citing *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)).  But Procopio has no credible basis to allege that Rockstar used Brooks's trademark or appropriated Shon Brooks's likeness in *Call of Duty* or in any other way.

*Second*, the claims against Rockstar—even if they were sufficiently pled—are legally baseless for the independent reason that they are barred by the applicable statutes of limitations.  *See Est. of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (sanctions appropriate where a reasonable investigation would have revealed that plaintiff's § 1983 claim was barred by the statute of limitations); *Mitchell v. Reg'l Serv. Corp.*, No. C 13-04212 JSW, 2014 WL 12607809, at *3 (N.D. Cal. 2014) ("A legally unreasonable filing is when a reasonable investigation would reveal that a claim is barred ... by the statute of limitations.").   As alleged, Brooks's communications with Rockstar terminated in 2015.  (Compl. ¶ 20)  The only other allegation about Rockstar's conduct was that the company in some way assisted Activision with the release of *Call of Duty: Infinite Warfare* in 2016.  (*Id.* ¶ 21.)  Thus, the latest act that Brooks specifically attributes to Rockstar occurred over five years ago.

As explained in Rockstar's Motion to Dismiss, the statute of limitations for copyright infringement is three years from the date the claim accrued, which expired in 2019.  *See* 17 U.S.C. § 507(b); *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir. 1994); *In re Napster, Inc. Copyright Litig.*, No. C MDL-00-1369, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005).   Brooks's trademark infringement and right of publicity claims are also barred by their statutes of limitations, which are four years and two years, respectively.  *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 n.11 (9th Cir. 2006) (courts look to statute of limitations for analogous state law claims when evaluating trademark infringement claim under the Lanham Act); Cal. Code Civ. Proc. §§ 337, 343 (statute of limitations for analogous state law claims is four years); *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012) (California's statutory right of publicity claims, Cal. Civ. Code § 3344, are subject to a two-year statute of limitations).  None of Brooks's causes of action are timely against Rockstar based on alleged conduct that ended in 2016.

1

### 2.   Procopio Failed to Undertake a Reasonable and Competent Inquiry into the Law Before Filing the Complaint

3      On top of the Brooks Parties' inadequate factual investigation, Procopio

4   conducted an unreasonable and incompetent legal investigation.

5      To begin with, "[e]ven the most cursory legal inquiry" would have revealed that

6   the Complaint against Rockstar lacked "the required elements" for its claims. *Holgate*

7   *v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).  Had Procopio conducted a minimal

8   investigation, it would have determined that the Brooks Parties could not plead the

9   required elements of Brooks' claims—such as any infringement of Brooks's exclusive

10  rights in *Call of Duty*—as to Rockstar.   Instead, Procopio grouped Rockstar with

11  Activision as "Defendants" to cover up that any claims arising from *Call of Duty* are

12  legally baseless with respect to Rockstar.

13      Additionally, a reasonable and competent investigation would have determined

14  that claims based on Rockstar's purported conduct that terminated in 2016 are not

15  viable under any of Procopio's theories.  *See Est. of Blue*, 120 F.3d at 985 (holding

16  that a reasonable investigation would have revealed that plaintiff's claim was barred

17  by the statute of limitations); *Mitchell*, 2014 WL 12607809, at *6 ("[C]learly, if

18  Mitchell had made a reasonably competent inquiry regarding the statute of limitations

19  and egregious standards, she would have found that her claims were not well-grounded

20  in fact or law."); *see also Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)

21  (finding Rule 11 sanctions appropriate when suit was barred by res judicata and "a

22  reasonable and competent inquiry would have led to the same conclusion").

23      Under the circumstances, Rule 11 required that counsel conduct at least a

24  modest inquiry to satisfy themselves that sufficient legal grounds support the filing of

25  claims against Rockstar based on the *Call of Duty* franchise. *See Bus. Guides, Inc. v.*

26  *Chromatic Communic'ns Enterprises, Inc.*, 498 U.S. 533, 543 (1991).  The allegations

27

28

themselves makes clear that Procopio did not conduct an adequate investigation here and that sanctions are warranted.

### D. The Brooks Parties Should Also Be Sanctioned for the Reasons Identified in Activision's Brief

Although Brooks's claims against Rockstar violate Rule 11 for the reasons set forth above, they are also sanctionable for all of the reasons identified by Activision. In its Motion for Sanctions, Activision points out the absurd foundational premise of the Brooks Parties' claims—that the world-famous *Call of Duty* franchise rips off two educational games Brooks designed to teach children about the stock market and based its "main character" off an unknown individual named Shon Brooks. *See Smith v. Ricks*, 31 F.3d 1478, 1489 (9th Cir. 1994) ("[O]ne need only recite [plaintiff's] claims to recognize their absurdity.")   Activision identifies numerous demonstrably false factual statements regarding *Call of Duty*, including that "Sean Brooks" is the "main character," has unlimited resources, and has scripted battle scenes in a high fashion couture shopping mall.  (Compl. ¶¶ 23, 28(e), 28(k).)  Moreover, the brief establishes that the Brooks Parties' trademark infringement, copyright infringement, and misappropriation of likeness claims are "legally baseless" because "no 'plausible, good faith argument can be made by a competent attorney' in support of the proposition[s] asserted." *Goel v. Coal. Am. Holding Co.*, No. CV 11-02349 JGB (EX), 2013 WL 12122302, at *6 (C.D. Cal. Feb. 26, 2013) (citation omitted).  Accordingly, Rockstar incorporates the arguments advanced in Activision's brief as if fully set forth herein, and moves for sanctions because the Complaint is baseless against Rockstar for those additional reasons as well.

## IV. CONCLUSION

Based on the foregoing, Rockstar respectfully requests that this Court grant its motion, dismiss the Complaint against Rockstar with prejudice as a result, and assess monetary sanctions against Brooks and Procopio for Rockstar's reasonable attorneys'

fees for the costs incurred in preparing this Motion and the Motion to Dismiss, filed on February 8, 2022, and any related briefing and hearings, and any other sanctions this Court deems proper.[2]

Dated:  March 2, 2022

Respectfully submitted,

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _____*/s/ Craig B. Whitney*_____
Craig B. Whitney

*Attorneys for Defendant Rockstar Games, Inc.*

---

[2] Rule 11 provides the Court with authority to sanction the Brooks Parties by striking the Complaint and requiring them to pay "all of the reasonable attorney's fees and other expenses directly resulting from the violation," including the fees incurred in bringing the Rule 11 motion.  Fed. R. Civ. P. 11(c)(1-2), (4); *id.*, 1993 Adv. Comm. Notes.   At the request of the Court, Rockstar will submit an application for its reasonable attorneys' fees and costs in connection with defending against the Brooks Parties' frivolous Complaint.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ROCKSTAR GAMES, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS