Lisel M. Ferguson (Bar No. 207637)
E-mail: lisel.ferguson@procopio.com
Tiffany Salayer (Bar No. 226189)
E-mail: tiffany.salayer@procopio.com
PROCOPIO, CORY, HARGREAVES &
  SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Plaintiff
*Brooks Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKS ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC. and ROCKSTAR GAMES, INC.,<br><br>Defendants. | Case No. 3:21-cv-02003-TWR-MDD<br><br>**DECLARATION OF LISEL M. FERGUSON IN SUPPORT OF PLAINTIFF BROOKS ENTERTAINMENT, INC.'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>**(ECF Nos. 34, 35)**<br><br>Dept:    Courtroom: 3A<br>Date:    May 26, 2022<br>Time:    1:30 pm<br>Judge:  Hon. Todd W. Robinson |

I, Lisel M. Ferguson, declare as follows:

1. I am an attorney at law duly licensed to practice before all courts in the State of California and this Court. I am employed as a Partner with Procopio, Cory, Hargreaves & Savitch, LLP, the attorneys of record for Plaintiff BROOKS ENTERTAINMENT, INC. ("Brooks").

2. If called upon, I could and would competently testify to the facts contained in this declaration, since the facts set forth herein are personally known to

1

1   me, except those stated upon information and belief, and as to those facts I am

2   informed and believe them to be true.

3        3.     This declaration is submitted in support of PLAINTIFF BROOKS

4   ENTERTAINMENT, INC.'S RESPONSE TO DEFENDANT'S MOTIONS FOR

5   SANCTIONS PURSUANT TO FED. R. CIV. P. 11.   Nothing set forth in this

6   declaration is intended to waive the attorney-client privilege between our firm and

7   Brooks.

8        4.     On June 7, 2021, Fran S. Brooks A.K.A. Shon Brooks of Brooks

9   Entertainment contacted a Procopio firm partner, Stephen Beuerle to discuss a case he

10  wanted to file against ACTIVISION BLIZZARD, INC. ("Activision") and

11  ROCKSTAR GAMES, INC. ("Rockstar").   Thereafter, Mr. Brooks retained Procopio

12  to investigate a possible suit against Activision and Rockstar for theft of Mr. Brooks'

13  copyrighted scripts, his trademarks, and his name, image, and likeness.

14       5.     Before filing the complaint in this action, I and others at Procopio

15  conducted an investigation to determine the basis for a possible complaint.  We learned

16  that Mr. Brooks had negotiations with Rockstar from 2010 to 2014 to co-produce a

17  videogame.   In the course of those discussions, Mr. Brooks had exchanged many

18  emails with employees of Rockstar and had numerous face-to-face meetings where he

19  had shared copyrighted scripts for the games.   We learned that Rockstar employee

20  Gordon Hall left Rockstar to go work for Activision, and that subsequently Activision

21  had produced one or more games and multiple internet trailers which used parts of his

22  copyrighted scripts, his trademarks, his name, and his likeness.

23       6.     Emails between Brooks and Rockstar between 2010 and 2014 showed

24  that Brooks and Rockstar were discussing entering into a partnership and/or a working

25  relationship to develop a game during this timeframe.   The emails and documents,

26  including copyrighted game scripts, were shared with Sara Shafer, Gordon Hall, and

27  Sam Hauser, all of whom worked for Rockstar.  During this same time, Shon Brooks

28

had multiple face-to-face meetings with Sara Shafer at Rockstar wherein they discussed the potential partnership and shared information. Multiple emails corroborated the existence of these meetings by stating the dates and times of the meetings. For over a month and a half, I and others at Procopio reviewed these documents and had multiple discussions with Mr. Brooks between our first telephone call on June 8, 2021 and early August to investigate his potential allegations against Rockstar and Activision.

7.     Through my investigation, and upon information and belief, I had a good faith belief that the Call of Duty: Infinite Warfare videogame was being developed by Gordon Hall when he was working at Rockstar and that he brought this with him when he moved to Activision. My investigation showed that there appeared to be an overlap of Gordon Hall's work and ownership interest in Rockstar, and subsequently, his work and ownership interest in Activision; and it appeared that Rockstar likely had a financial interest in the Call of Duty game.

8.     On August 6, 2021, Procopio was retained by Brooks Entertainment, Inc. After being retained, my firm and I continued to investigate the facts and evidence relating to this case. I worked with one of our associates and paralegals to conduct a very detailed analysis of this case for an additional two months before we sent a cease-and-desist letter addressed to Activision and Rockstar on October 8, 2021. Exhibit ("Exh.") 1 attached hereto.

9.     During the detailed investigation and analysis of the case prior to filing, in addition to the steps set forth above, others at my firm and I did the following:

a. We obtained all of the Copyright Registration Certificates and deposit materials for the copyrights owned by Brooks Entertainment which included the following titles: Stock Picker Txu 1684440; Supplemental Registration Certificate Stock Picker PA1397099; Save One Bank PA 1396794; Making a Difference PA 2017658; S.O.B. PA 1-716-431. The

deposit material for the Certificates was obtained from the entity who originally filed the copyrights on behalf of Brooks which was Legal Zoom.  I also ordered copies of the certified deposit material from the U.S. Copyright Office, however it takes four to six months to receive certified copies;

b.  I reviewed the Brooks trademarks for SHON BROOKS Reg. No. 5,653,242 ECF No. 1, Ex. A at 1, SAVE ONE BANK Reg. No. 4,287,528, Exh. 2, and pending trademark "S.O.B" Serial No. 87829671, Exh. 5, and file histories on these trademarks which are relevant to this litigation;

c.  My firm and I conducted extensive internet research and public records research on Activision, Rockstar, Gordon Hall, Sarah Shafer, Sam Hauser and the Call of Duty: Infinite Warfare videogame.  This included, but was not limited to, the review of numerous articles from many sources, game trailers, game videos, games, historical information on the aforementioned entities and persons, SEC information, and 10-K reports from 2011 to 2015.

10.     Through investigation it was learned that Gordon Hall originally worked for Rockstar as Studio President who developed games, and around 2014, he moved over to Activision to become a game developer and Chief Creative Officer.  Sarah Shafer worked for Rockstar during the relevant time frame but left to another position around 2014.  Sam Hauser is a co-founder and president at Rockstar and still works for Rockstar from what we were able to learn.

11.     We determined that "Sean Brooks" was a key character in the game Call of Duty: Infinite Warfare, and his name and character appear in the game and all the media and advertising surrounding the game.  There were many similarities between the character and Shon Brooks of Brooks which were set forth in the Complaint but

also included similarities such as the game and character playing off Shon Brooks' involvement with the Olympics and traveling to Mars, as well as his involvement with NASA.

12.     Through our investigation it was also learned that many items from the copyrighted game scripts were used in the Call of Duty: Infinite Warfare Game on the trailers and advertisements for the games.  A few of which are the following: Call of Duty: Infinite Warfare pursues financial criminals out of financial gain; the Team USA soldiers' headquarters is in New York City's Wall Street District; the villain "Admiral Kotch" lives in a high rise in the financial district in New York City's Wall Street district. There is a backdrop of the New York City Freedom Tower (A.K.A. World Trade Center) in the Financial District, there are several huge bank vault doors with huge levers, and in these scenes, like in Brooks' scripts, the villains blow up and destroy Wall Street, the Stock Market, and the World Trade Center.  United States Soldiers crack the safe and walk through these Save One Bank vaults for 4 ½ hours. The Admiral Kotch duel occurs inside a Wall Street downtown bank near the Hudson Bay next to a high fashion couture shop and the Crystal Bank. The United States soldiers (Reyes and Sean Brooks) kill Admiral Kotch at this downtown Wall Street location.  These scenes are virtually identical to the Brooks Entertainment copyrighted scripts.

13.     On October 27, 2021, Rockstar sent a response to the Brooks cease and desist letter claiming that it had done nothing wrong and had no involvement in the making of the Call of Duty: Infinite Warfare Game. Exh. 3.

14.     Activision did not respond to the initial October 8, 2021 cease and desist before the Complaint was filed almost two months later.

15.     On November 30, 2021, Brooks Entertainment filed a Complaint against Rockstar and Activision asserting claims for copyright infringement, trademark infringement and commercial appropriation of likeness.

16.     On December 7, 2021, I first heard from counsel for Activision by way of an email requesting a phone call.  On December 8, 2021, I had a call with counsel Marc Mayer.

17.     On January 7, 2022, I received the first formal letter addressing Brooks' claims and the Complaint from Activision's counsel.  Exh. 4.  This letter alleged that Activision felt that the Complaint contained serious factual misrepresentations and errors and that Activision believed it was frivolous.  This letter stated that Activision planned on filing a Motion to Dismiss and Strike and threatened that if Brooks did not dismiss the Complaint, they would file Rule 11 sanctions motion.

18.     On January 11, Attorney Salayer and I spoke with counsel for Rockstar Craig Whitney wherein he advised that it was his position that Rockstar had no involvement in the Call of Duty videogame.  He asked that Rockstar be dismissed or else he planned on filing a motion to dismiss under Rule 12(b)(6) and a motion for sanctions.

19.     On January 24, I sent an email to counsel for Rockstar asking for a phone call to discuss why Rockstar was claiming they were not involved in this matter.  I advised that per the communications I had reviewed from 2010 to 2014, Brooks had been speaking with and providing information to Rockstar.  Exh. 6.

20.     On January 26, I sent a detailed email to counsel for Activision, Marc Mayer, advising him of the facts and evidence I had to support the Complaint against Activision and Rockstar. Exh. 7.  I sent this email in advance of our call to have the call run more smoothly and to advise counsel of the support I had relied on for the Complaint.

21.     On this same day, we had a call with Counsel Whitney who was adamant that Rockstar had nothing to do with any of the Call of Duty games.  He also advised that Rockstar was planning to file a Motion for Sanctions and that Rockstar no longer had copies of emails before around 2015.

22.     Even after Activision counsel's threats, Brooks graciously granted both Rockstar and Activision extensions of time to file responsive pleadings until February 8, 2022.  During this time counsel for all Parties discussed this matter and shared further information to determine if it could be resolved before any response was filed by the Defendants.

23.     On February 8, 2022, Activision filed a Motion to Dismiss and Strike.  ECF No. 21.

24.     On February 8, 2022, Rockstar filed a Motion to Dismiss and Strike.  ECF No. 22.

25.     On March 4, 2022, I sent an email to counsel for Rockstar advising that while we felt Rockstar shared information it learned from Brooks in 2010 to 2014, and that they may have a connection with the creation of the game, we understood from Rockstar that this evidence may no longer exist based on Attorney Whitney's assertions.  ECF No. 35-18, at 1 (Whitney Decl., Ex. O). I stated that we would be dismissing Rockstar from the lawsuit without prejudice.  *Id.*

26.     After I sent my email to Rockstar's counsel on March 4, 2022, in the course of further communications with my client, it was clear that our attorney-client relationship had irreconcilably broken down and that Procopio had grounds to move to withdraw pursuant to Cal. Rule Prof. Conduct 1.16.  The specific communications between my client and me are privileged, and subject to the duty of confidentiality set forth in Cal. Rule Prof. Conduct 1.6 and Cal. Bus. & Prof. Code section 6068(e).

27.     On March 11, 2022, I notified all counsel in this action that Procopio would be filing a motion to be relieved as counsel in this matter.  I requested that counsel agree to extend the hearing date on the Motions to Dismiss to allow more time for Brooks to find counsel.  Counsel never responded if this was acceptable so I was forced to file an Ex Parte request on March 15, 2022 to extend the hearing dates on the Motions to Dismiss.  ECF No. 27.

28.     On March 14, 2022, Procopio filed a Motion to Withdraw based on ethical and professional considerations requiring Procopio's withdrawal of representation, as there has been an irreconcilable breakdown in the attorney-client relationship.  ECF No. 26.

29.     On March 16, 2022, this Court granted an extension on the hearing for the Motions to Dismiss until after the Motion to Withdraw is to be heard.  ECF No. 28.

30.     On March 24, 2022, shortly after Procopio filed its Motion to Withdraw, Activision filed its Motion for Rule 11 Sanctions which it had been threatening since shortly after the Complaint was filed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 28th day of April 2022, at San Diego, California.

s/ Lisel M. Ferguson
Lisel M. Ferguson

DECLARATION OF L. FERGUSON IN RESPONSE TO MOTION FOR SANCTIONS
130558-00LIT001/5817139.1                                        CASE NO. 3:21-CV-02003-TWR-MDD543429.5

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 28, 2022 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

<u>s/ Lisel M. Ferguson</u>
Lisel M. Ferguson

9