1  KARIN G. PAGNANELLI (SBN 174763); kgp@msk.com
2  MARC E. MAYER (SBN 190969); mem@msk.com
   MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
3  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  Attorneys for Defendant
   Activision Blizzard, Inc.
6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  BROOKS ENTERTAINMENT, INC.,          CASE NO. 3:21-CV-02003-TWR-MDD

12          Plaintiff,                    [Assigned to Judge Todd W. Robinson]

13          v.                            **REPLY MEMORANDUM OF
                                          POINTS AND AUTHORITIES IN
14  ACTIVISION BLIZZARD, INC. AND         SUPPORT OF PLAINTIFF'S
    ROCKSTAR GAMES, INC.,                 MOTION FOR SANCTIONS
15                                        PURSUANT TO FED. R. CIV. P. 11**
            Defendants.
16

17                                        Courtroom:   3A (3rd Floor)
                                          Date:        May 26, 2022
18                                        Time:        1:30 pm

19

20

21

22

23

24

25

26

27

Mitchell     28
Silberberg &
Knupp LLP                                          CASE NO. 3:21-CV-02003
14183518.7   **REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO
                           FED. R. CIV. P. 11**

## I.     INTRODUCTION

Procopio's Memorandum in Opposition (Dkt. No. 37) to Activision's Motion for Sanctions (Dkt. No. 34) fails to offer even a single reasonable explanation for its decision to file and litigate this frivolous lawsuit.  To the contrary, the Opposition puts the objectively unreasonable litigation conduct that prompted Activision's Rule 11 Motion on full display.  The Declaration of Lisel M. Ferguson (Dkt. No. 37-1) now confirms that Plaintiff's counsel did absolutely nothing to confirm the factual allegations or legal theories that underpin the case.  Procopio lawyers did not play or review the game at issue.  Procopio lawyers did not analyze or review the details of the character that purportedly is based upon the Plaintiff.  They did not analyze whether *Call of Duty: Infinite Warfare* was substantially similar to *Stock Picker* or *Save One Bank* in any relevant aspect, such as plot, setting, characters, dialogue, or sequence of events.  They did not review the dispositive case law, such as the *E.S.S.,* *Brown,* or *Polydoros* cases.  They did not even make an effort to confirm that any of the people that purportedly had access to Plaintiff's materials worked at Activision or had anything to do with *Call of Duty*, let alone *Infinite Warfare*.  Instead, it appears that Procopio relied entirely on its client's bizarre and delusional accusations, without conducting any of its own due diligence at any time.  And, when Procopio was advised (on multiple occasions) that the Complaint was incorrect, unsupported, and both legally and factually unsupportable, it brushed aside those warnings and refused to dismiss the case.  This is precisely the type of conduct that Rule 11 is intended to address, and is wholly unbecoming of an experienced intellectual property law firm such as Procopio.

It would be one thing if Procopio had admitted to its error in judgment in filing the Complaint.  But what makes this case extraordinary is that Procopio continued, and to this day still continues—even while its Motion to Withdraw as counsel is pending (Dkt. No. 26)—to argue the merits of this case and double down on its false

CASE NO. 3:21-CV-02003

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

statements, including demonstrably false statements concerning the content of *Infinite Warfare* and the similarities between Sean Brooks the Irish space soldier and Shon Brooks the "financial and entertainment consultant."  Activision gave Procopio ample warning and opportunity to withdraw Plaintiff's factually and legally unsupportable claims.  It knew that Activision would spend substantial time and money in connection with its Motion to Dismiss and SLAPP Motion.  Having made the decision not to withdraw the Complaint after those motions were filed or even during Rule 11's twenty-one-day safe harbor, Procopio has no one to blame but itself for this Motion.  In furtherance of the interests of justice and deterrence, Activision respectfully requests that the Court not only dismiss Plaintiff's Complaint as against Activision with prejudice, but also order Plaintiff's counsel and their law firm, Procopio, to reimburse Activision for its reasonable attorney's fees and costs.

## II.     PROCOPIO VIOLATED RULE 11 BY FILING CLAIMS WITHOUT ANY FACTUAL OR LEGAL BASIS.

### A.     <u>Sanctions Are Warranted For Pursuing Factually Baseless Claims.</u>

The Opposition now confirms that Procopio did not conduct a "reasonable and competent" factual inquiry prior to filing the Complaint.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted).  In fact, Procopio readily admits that it did not play or review any portion of *Infinite Warfare,* even though it is at the center of Plaintiff's claims.  *See* Declaration of Marc E. Mayer (Dkt. No. 34-2) ("Mayer Decl."), ¶ 11 ("[Procopio's counsel] admitted that she had not played *Infinite Warfare*");[1] *see generally* Compl. (alleging that *Infinite Warfare* infringes Plaintiff's copyrights and that use of the name "Sean Brooks" for a character in *Infinite Warfare*

---

[1] Procopio does not refute this admission in the Opposition or otherwise claim to have played or reviewed any portion of *Infinite Warfare*.  Procopio misleadingly lists "game trailers, game videos, [and] games …" among the materials that it reviewed as part of its pre-filing investigation.  Declaration of Lisel M. Ferguson (Dkt. No. 37-1) ("Ferguson Decl."), ¶ 9(c).  This lack of specificity is intentional.  *Cf. id.*, ¶¶ 7, 12-13 (specifically referring to "Call of Duty: Infinite Warfare").

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

(the "Brooks Character") infringes Plaintiff's trademark and publicity rights). Procopio argues that "Rule 11 does not impose a specific requirement" to "personally play the entire six-hour [*Infinite Warfare*] campaign." Opp. at p. 9. But Procopio's conduct goes far beyond failing to play the "entire" campaign. Procopio apparently did not even play (or watch) even a ***portion*** of the *Infinite Warfare* game. *See Valve & Primer Corp. v. Val-Matic Valve & Mfg Corp.*, No. 87 C 8726, 1990 WL 129360, at *3 (N.D. Ill. Aug. 24, 1990) ("In a copyright action, pre-filing inquiry at the very least entails reviewing," *inter alia*, "the [work] of the alleged infringer"), *aff'd*, 940 F.2d 666 (7th Cir. 1991); *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 286 (C.D. Cal. 1991) (imposing Rule 11 sanctions where "not all of the accused products were examined before the filing of the complaint").

Had Procopio actually engaged with the *Infinite Warfare* game in some capacity, or even reviewed materials related thereto (*e.g.*, online videos and articles), it would have immediately realized that all of Plaintiff's claims against Activision are factually baseless from an objective perspective. Far from "minor" or "disputed" (Opp. at p. 7), the factual errors regarding *Infinite Warfare* pervade Plaintiff's entire Complaint. These errors are so easily verifiable and obviously false that there is no question that Procopio failed to conduct a pre-filing inquiry consistent with Rule 11. *See* Mot. at pp. 12-13. For example, no part of *Infinite Warfare* takes place on Wall Street or anywhere in New York; the Brooks Character does not represent "Team USA;" and there is no "bank" level (far less a "Crystal Bank"). *See* Mayer Decl., ¶ 9; *cf.* Compl., ¶ 28; Ferguson Decl., ¶ 12. Procopio seeks leniency because it did not have "the benefit of discovery" (Opp. at p. 8), but *Infinite Warfare* has been available to the public for over ***five*** years and can be purchased at virtually any online or brick-and-mortar retail store; its content speaks for itself and is not subject to reasonable dispute. *See* Declaration of James Lodato (Dkt. No. 34-3) ("Lodato Decl."), ¶¶ 7-10.

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

1    In attempt to deflect from its irresponsible decision not to review the allegedly

2    infringing game, Procopio describes at length the purportedly "detailed," "months"-

3    long factual investigation that it conducted before filing the Complaint, which

4    included "multiple discussions" with Shon Brooks and reviewing various materials.

5    Ferguson Decl., ¶¶ 5-9.[2]  However, even an "extensive" pre-filing inquiry (which

6    Procopio's was not) cannot substitute for a "reasonable and competent" one or

7    somehow insulate counsel from Rule 11 sanctions for filing a baseless Complaint.

8    *Brandt v. Schal Assocs., Inc.*, 121 F.R.D. 368, 379 (N.D. Ill. 1988) (imposing Rule 11

9    sanctions where counsel "no doubt" "engaged in an extensive factual investigation

10   before filing the [Complaint]," but pursued claims that "were [not] justified by the

11   evidence that investigation provided"); *see also Zaldivar v. City of L.A.*, 780 F.2d 823,

12   831 (9th Cir. 1986) ("Of course, the conclusion drawn from the research undertaken

13   must itself be defensible.  Extended research alone will not save a claim that is without

14   legal or factual merit from the penalty of sanctions.").  Procopio's professed "good

15   faith" (*see, e.g.*, Opp. at p. 1) is also irrelevant.  Counsel cannot "avoid the sting of

16   Rule 11 sanctions by operating under the guise of a pure heart and empty head."

17   *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987); *see also Hudson v.*

18   *Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987) (Rule 11 applies in

19   absence of bad faith).

20   It also is telling that Procopio still has not produced ***any*** of the evidence that it

21   claims to have relied on (including Plaintiff's own purported games), and fails to

22   articulate what it learned from any particular evidence.  *Cf.* Ferguson Decl., ¶ 10

23   (generally stating that "[t]hrough investigation it was learned . . . ").  It is reasonable

24

---

25   [2] As part of its investigation, Procopio claims to have reviewed "[e]mails between
     Brooks and Rockstar," Plaintiff's "copyrighted game scripts," Plaintiff's "[c]opyright
26   [r]egistration [c]ertificates and deposit materials," Brooks' "trademarks" and related
     "file histories," and various other vaguely-identified materials obtained through
27   "internet research and public records research."  Ferguson Decl., ¶¶ 6, 9.

28

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11**

1   to conclude in these circumstances that if Procopio actually had evidence to support

2   the factual allegations in the Complaint, it would have provided that evidence—either

3   by producing it or making it available to the Court.[3]  *See, e.g.*, *Ryan v. Clemente*, 901

4   F.2d 177, 179 (1st Cir. 1990) ("[Plaintiff's counsel's] own statement [in response to

5   a Rule 11 motion] that he looked at records, examined news accounts, and spoke to

6   witnesses, shows nothing in the absence of a description of what or who the records,

7   news accounts, and witnesses were and what they told him.  The district court could

8   reasonably have thought that, if those sources had produced any information

9   supporting the complaint's factual allegations, [he] would have said so.").

10      Finally, Procopio cannot escape liability by relying on its client's statements.

11  *See, e.g.*, Opp. at p. 8 ("at the time the Complaint was filed, Plaintiff highlighted the

12  similarities between [Sean Brooks and Shon Brooks] which supported Plaintiff's

13  claims").  A reasonable and good faith inquiry would have revealed the falsity of those

14  statements.  *See Nassau-Suffolk Ice Cream, Inc. v. Integrated Res., Inc.*, 114 F.R.D.

15  684, 689 (S.D.N.Y. 1987) ("[I]f all the attorney has is his client's assurance that facts

16  exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not

17  satisfied his [Rule 11] obligation.") (citation omitted).  Review of Plaintiff's public

18  statements and online "press releases" also should have given counsel ample reason

19  not to take its client's statements at face value.  Apparently, Procopio eventually came

20  to that conclusion when it sought to withdraw as counsel, but by then Activision

21  already had incurred significant expense in connection with this lawsuit.

22      **B.    <u>Sanctions Are Warranted For Pursuing Legally Meritless Claims.</u>**

23  **Copyright Infringement.**  Procopio continues to ignore basic, bedrock tenets

24  of copyright law in the Opposition.  It argues that the copyright infringement claim is

25

26  [3] For example, presumably if Procopio saw a video of *Infinite Warfare* that featured a
    bank or financial district, it would have at least have provided a link to that video—
27  as Activision's counsel has expressly requested.  *See* Mayer Decl., ¶ 11.

28

Mitchell
Silberberg &
Knupp LLP
14183518.7

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11**

1   "non-frivolous" because its investigation showed that Activision had access to
2   Plaintiff's game scripts and used portions thereof in *Infinite Warfare*.  Opp. at pp. 10-
3   11.  This is a dubious claim from a factual perspective.[4]  Regardless, any competent
4   copyright lawyer would know—and, certainly, Procopio must know—that a
5   defendant's access and use of the plaintiff's work does not amount to a legally
6   actionable copyright infringement claim.  It is fundamental that "the works at issue
7   [must be] ***substantially similar*** in their ***protected*** elements."  *Cavalier v. Random*
8   *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (emphasis added); *see also Zella v.*
9   *E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007) ("even if access is
10  present" and "[e]ven if a defendant concedes use of a plaintiff's work, the copyright
11  [infringement] claim still fails absent substantial similarity" between the works'
12  "protected elements") (collecting cases).  This requirement totally disposes of
13  Plaintiff's copyright infringement claim.

14       Procopio does not even broach the topic of substantial similarity in the
15  Opposition.  Of course, since Procopio admittedly did not play Activision's *Infinite*
16  *Warfare* game as part of its pre-filing investigation (Mayer Decl., ¶ 11), Procopio
17  could not possibly have assessed whether *Infinite Warfare* is "substantially similar"
18  to Plaintiff's game scripts prior to filing the Complaint.  A comparison of *Infinite*
19  *Warfare* and Plaintiff's game scripts would confirm that they are not remotely
20  similar[5]—which is the only logical reason why Procopio still has not provided copies
21  (or even any clear summary) of Plaintiff's game scripts to date.  *See Esplanade Prods.,*
22  *Inc. v. Walt Disney Co.*, No. CV1702185MWFJCX, 2017 WL 5635024, at *10 (C.D.

---

23  [4] For example, Activision's alleged "access" to Plaintiff's game scripts is totally
24  implausible.  Plaintiff allegedly provided the game scripts to ***Rockstar*** (not
    Activision), and offers no connection to Activision, except that Gordon Hall went on
25  to work for Activision.  Plaintiff never explains how Hall is connected to *Infinite*
    *Warfare*.  In fact, Hall did not work on any of the *Call of Duty* console games and, by
26  the time he joined Activision, *Call of Duty* was already well known to be Activision's
    flagship franchise.

27  [5] *Compare* Declaration of Marc E. Mayer (Dkt. No. 21-3), Exs. 7, 9 (describing
    Plaintiff's *Stock Picker* and *Save One Bank* games) *with* Lodato Decl., ¶¶ 4, 7-8
28  (describing *Infinite Warfare* game).

Mitchell
Silberberg &
Knupp LLP

14183518.7

6                                    CASE NO. 3:21-CV-02003
**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11**

Cal. July 11, 2017) (the failure to attach or at least summarize the plaintiff's work "indicates, on some level, that [the plaintiff] believed including those details would have been detrimental to its [copyright] claims").

Procopio also still fails to identify a single protectable element from Plaintiff's game scripts that Activision purportedly copied.  It is beyond dispute that all of the alleged similarities between the works—including, for example, "exotic and action-packed locations," "main characters" who "bring thieves to justice" and have "unlimited resources," and a "day and a night mode" (Compl., ¶ 28)—are ***not*** eligible for copyright protection.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (no copyright protection for ideas or unoriginal stock elements); *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988) (no copyright protection for *scenes-a-faire*).  Procopio should be sanctioned for pursuing a copyright infringement claim premised solely on elements that are so obviously unprotectable.  *See Braham v. Sony/ATV Music Publ'g*, No. 2:15-CV-8422-MWF, 2015 WL 7074571, at *4 (C.D. Cal. Nov. 10, 2015) (cautioning that filing copyright infringement claim based on unoriginal components of plaintiff's work may "conflict with his duty under Federal Rule of Civil Procedure 11 not to make factually or legally baseless claims").

**Trademark Infringement.**  Procopio does not even address the binding precedent that forecloses Plaintiff's trademark infringement claim.  Following the landmark case *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), courts in the Ninth Circuit consistently have held that Lanham Act claims arising from use of a trademark in a video game are barred by the First Amendment.  *See* Mot. at pp. 16-17 (collecting cases such as *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 889 (C.D. Cal. 2013) and *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1136 (N.D. Cal. 2014)).  It is objectively unreasonable—if not totally disingenuous—for Procopio to argue that Activision's use of the name "Sean Brooks"

Mitchell
Silberberg &
Knupp LLP

14183518.7

7                    CASE NO. 3:21-CV-02003
**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11**

for a character in *Infinite Warfare* infringes upon Plaintiff's purported SHON BROOKS trademark merely because the names are similar. *See* Opp. at p. 11. Any competent attorney researching this claim would quickly conclude that the claim is legally baseless.

**Right of Publicity.**  Apart from having similar names, there is not a single point of resemblance between Shon Brooks and Activision's fictional character Sean Brooks. Even in the Opposition, Procopio does not claim that the Sean Brooks character looks like, sounds like, or has anything else in common with the real-life Shon Brooks. To be actionable, the allegedly misappropriated likeness must be "readily identifiable as [the plaintiff]." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998). Considering Activision's Sean Brooks character is an armored Irish space soldier, and Shon Brooks is an African-American, San Diego-based financial consultant and cigar salesman, it is inconceivable that Procopio ever legitimately believed that Plaintiff has a plausible claim—and a few minutes of legal research would have confirmed as much. *See, e.g.*, Mot at pp. 18-19 (citing cases rejecting right of publicity claims such as *Aguilar v. Universal City Studios, Inc.,* 174 Cal. App. 3d 384, 391 (Ct. App. 1985).

## III.   PROCOPIO DOES NOT DISPUTE THAT IT CONTINUED TO ADVOCATE FACTUALLY AND LEGALLY BASELESS CLAIMS.

Procopio argues in its Opposition that it "conducted a reasonable ***pre-filing*** investigation." Opp. at p. 13 (capitalization omitted and emphasis added); *see also* Ferguson Decl., ¶¶ 5-9 (describing investigation "[*b*]*efore filing* the complaint in this action") (emphasis added). But Procopio's obligation to investigate the basis for Plaintiff's claims did not end with the filing of the Complaint. "Under [Rule 11], attorneys [also are] under a ***continuing obligation*** to ensure that the proceedings do not continue without a reasonable basis in law and fact." *Cruz v. Savage*, 896 F.2d

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

626, 630 (1st Cir. 1990) (emphasis added) (citing *Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir. 1987)); *see also* Fed. R. Civ. P. 11, 1993 Adv. Comm. Notes ("[A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings . . . after learning they cease to have any merit."). Procopio ignores this argument entirely. *Cf.* Mot. at p. 11 (arguing "[t]he duty to perform a reasonable factual inquiry under Rule 11 'is not a one time obligation'") (citation omitted).

After the Complaint was filed, Activision repeatedly advised Procopio of the various facts and legal authorities which render Plaintiff's claims objectively baseless, including on a December 8, 2021 call, in a January 7, 2022 letter, during a January 26, 2022 meet-and-confer, and in the various motion papers that followed. *See* Mayer Decl., ¶¶ 7-13. Yet, even now, Procopio does not claim to have taken any steps to confirm whether the factual allegations in the Complaint had evidentiary support after being confronted with Activision's contradictory facts, including in the sworn declaration of Activision's Director of Production (Dkt. No. 34-3). *Cf.* Ferguson Decl., ¶¶ 5-9. Nor does Procopio claim to have conducted any additional legal research to consider how Plaintiff's claims could possibly survive in the face of the controlling legal precedent cited repeatedly by Activision. *See, e.g.*, Mayer Decl., ¶¶ 8, 10 & Ex. 5; Dkt. Nos. 21-1, 34-1. Instead, Procopio continued to advocate Plaintiff's untenable claims. It also chose not to withdraw or even attempt to correct them during the twenty-on-day safe harbor afforded by Rule 11.[6] *See, e.g.*, *SG Blocks, Inc. v. Hola Cmty. Partners*, No. 2:20-CV-03432-ODW, 2021 WL 2714596, at *4 (C.D. Cal. July 1, 2021) (sanctioning party who insisted on an untenable position).

---

[6] Procopio's motion to withdraw as counsel, though filed in the safe harbor period, is not sufficient to shield Procopio from liability under Rule 11. *See* Dkt. No. 26.

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Mitchell
Silberberg &
Knupp LLP

14183518.7

## IV.   THE COURT SHOULD IMPOSE BOTH MONETARY AND NON-MONETARY SANCTIONS FOR PROCOPIO'S RULE 11 VIOLATION

The Court has broad discretion to impose Rule 11 sanctions, *Mellow v. Sacramento Cty.*, 365 F. App'x 57, 58 (9th Cir. 2010), and the Opposition offers no valid reason why it should not do so here.  In fact, Plaintiff does not cite a single case in which the Court declined to impose sanctions for violation of Rule 11.[7]  Plaintiff contends that any sanction in this case "should be nonmonetary" (Opp. at p. 15), but striking the Complaint will not suffice to deter Procopio given its pending request to withdraw as counsel (Dkt. No. 26).  The imposition of a monetary sanction against Plaintiff's counsel and its law firm, Procopio, not is only appropriate here, *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) ("[W]here the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions."), but manifestly warranted in order to compensate Activision.[8]

## V.   CONCLUSION

For the foregoing reasons, Activision respectfully requests the Court grant its motion for sanctions.

DATED: MAY 12, 2022          MITCHELL SILBERBERG & KNUPP LLP

By:   /s/ Marc E. Mayer
Marc E. Mayer
Attorneys for Defendant

---

[7] Notably, the Court found no Rule 11 violation in *Simpson v. California Pizza Kitchen, Inc.*, No. 13-CV-164-JLS, 2013 WL 12114487, at *4 (S.D. Cal. Oct. 23, 2013) (finding "Plaintiff's claims are not objectively baseless and [counsel] made a reasonable inquiry" before filing).

[8] Plaintiff cites no support for its suggestion that monetary sanctions are reserved for "unusual circumstances" or cases where "discovery has occurred." Opp. at p. 16.

**REPLY MEMORANDUM ISO MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

Mitchell Silberberg & Knupp LLP
14183518.7