<pre>
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   BROOKS ENTERTAINMENT, INC.,        )
                                        )
 5        Plaintiff,                    ) No. 21-CV-2003-TWR
                                        )
 6           v.                         ) May 26, 2022
                                        )
 7   ACTIVISION BLIZZARD, INC., and     ) 1:30 p.m.
     ROCKSTAR GAMES, INC.,              )
 8                                      ) San Diego, California
          Defendants.                  )
 9   _____

10

11                  TRANSCRIPT OF MOTIONS HEARING
               BEFORE THE HONORABLE TODD W. ROBINSON
12                  UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Plaintiff:       Procopio Cory Hargreaves & Savitch LLP
                              By:  LISEL FERGUSON, ESQ.
15                            525 B Street, Suite 2200
                              San Diego, California 92101
16
     For the Defendant:       Mitchell, Silberberg & Knupp LLP
17   Activision Blizzard      By:  KARIN PAGNANELLI, ESQ.
                              11377 West Olympic Boulevard
18                            Los Angeles, California 90064

19   For the Defendant:       Frankfurt Kurnit Klein & Selz, PC
     Rockstar Games           By:  CRAIG B. WHITNEY, ESQ.
20                            28 Liberty Street, Floor 35
                              New York, New York 10005
21

22   Court Reporter:          Melinda S. Setterman, RPR, CRR
                              District Court Clerk's Office
23                            333 West Broadway, Suite 420
                              San Diego, California 92101
24                            melinda_setterman@casd.uscourts.gov

25   Reported by Stenotype, Transcribed by Computer
</pre>

SAN DIEGO, CALIFORNIA, MAY 26, 2022, 1:30 P.M.

\* \* \* \*

THE CLERK: Case 21-CV-2003, Brooks Entertainment Inc vs Activision Blizzard, Inc, et al, for motion hearing.

Counsel, will you please state your appearances, and we'll start on the telephone.

MR. WHITNEY: Hi. Good afternoon. This is Craig Whitney from Frankfurt Kurnit Klein and Selz on behalf of Defendant Rockstar Games.

THE COURT: Okay. Good afternoon.

MS. PAGNANELLI: Good afternoon, Your Honor. Karin Pagnanelli from Mitchell, Silberberg and Knupp for Activision Blizzard.

THE COURT: Okay. Thank you.

MS. FERGUSON: Good afternoon, Your Honor. Lisel Ferguson from Procopio on behalf of Plaintiff Brooks Entertainment.

THE COURT: Okay. Thank you.

There are a number of pending motions before the Court, but the only thing on calendar today are the three motions: The plaintiff's motion to withdraw as counsel, filed as ECF26; Defendant Activision's motion for Rule 11 sanctions, filed as ECF34; and Defendant Rockstar's motion for sanctions, filed as ECF35.

With respect to those pending motions, I have read and

1   reviewed all of the paperwork that was submitted by counsel,

2   and I do have a couple of follow-up questions.

3          My first question is for Activision.  On your motion,

4   with respect to the Court's obligation under Rule 11 to do the

01:30   5   analysis, how would you sort of describe the interplay between

6   a 12(b)(6) motion where I would take everything in the

7   complaint at face value versus going outside the record which

8   your motion requires me to do to find factual inaccuracies in

9   the complaint?  What is the interplay between the two?

01:31   10          MS. PAGNANELLI:  Well, Your Honor, I think the case

11   law is relatively clear that the Court makes an analysis of the

12   factual investigation to determine if an objectionably

13   reasonable lawyer would have come to the conclusions that --

14   that counsel here came to.

01:31   15          And the only way to really weigh that is to understand

16   what the investigation was and what facts they learned versus

17   what was alleged, because otherwise you could be in a situation

18   where if you assume everything in the complaint is true, every

19   investigation would be reasonable because anything they write

01:32   20   in the complaint would be -- would be taken as true.

21          Situations where the -- things can -- one can allege

22   anything, but if everything that is alleged or certain facts

23   that are alleged are objectively untrue and especially in a

24   case like this where it is very easy to -- to determine whether

01:32   25   or not some of the allegations are true or not, that is

1    where -- that is where the objective reasonableness comes in.

2         It is -- and the Ninth Circuit in particular but

3    courts have been clear that the fact that you tried hard isn't

4    the standard for lawyers.  You have to actually listen to your

01:32    5    client and then make sure that what they are saying is true.

6         And there is lots of ways to do that.  Here in this

7    case it was pretty simple.  There's SEC publicly documents that

8    demonstrate that Activision Blizzard and Rockstar which is a

9    division of Take Two Interactive are both publicly traded

01:33    10    companies.  They are competitors.  And Rockstar has nothing to

11    do with the creation, the development, the distribution of Call

12    of Duty.

13         And to the extent there is a declaration that is

14    signed under penalty of perjury that says I have looked at

01:33    15    something and I found a connection, we can't just assume that

16    is true because I can't imagine how anyone could find a

17    document that would demonstrate that because it is not true.

18         So I think to make the analysis for you, you probably

19    would need to actually see that document, and if it is -- it is

01:33    20    harder, I think, for -- for Activision and -- and I don't want

21    to speak for Rockstar -- but it is harder because we would have

22    to prove a negative.  How do we prove other than you look at

23    our SEC filings and you determine who owns them, who the major

24    shareholders are.  They list competitors.  I believe they list

01:34    25    each other.  They probably are each other's main competitors,

1   frankly, so it is difficult to prove a negative.

2         But we tried to put in as much as we could to

3   demonstrate what you could find literally on the internet in,

4   you know, probably an hour.  So the -- and I think probably you

01:34   5   do need to look at the evidence, otherwise there is no way to

6   find out this is objectively reasonable.

7         THE COURT:  Okay.  Do you agree or disagree?

8         MS. FERGUSON:  Your Honor, I disagree.  So Your Honor,

9   you read the pleadings obviously.  You know the facts show that

01:35   10   back 2014, 2015, 2016 my client was corresponding with Rockstar

11   at that time.

12         THE COURT:  What facts show that?

13         MS. FERGUSON:  The emails --

14         THE COURT:  I know it is alleged in the complaint.

01:35   15         MS. FERGUSON:  I have emails, and I shared with

16   counsel that I have the emails.

17         THE COURT:  I don't have that in the record before me.

18   I am being asked to make a determination based on the record

19   that I have before me, and unless I missed something, I haven't

01:35   20   seen those emails.

21         MS. PAGNANELLI:  Neither have I, Your Honor.

22         MS. FERGUSON:  The emails between my client and

23   Rockstar in the very beginning were shared with Craig, who is

24   on the phone, I believe, and also Marc Mayer, and I've declared

01:35   25   in my declaration and I put forth facts that state that I had

01:35
01:36
01:36
01:36
01:36
01:36

```
 1   conversations, I saw emails, I saw correspondence that
 2   recognize that Sarah Shafer and Gordon Hall had been in
 3   communication with my client back then and the transcripts for
 4   the copyrights had been shared with them.  So I have all those
 5   emails.
 6           THE COURT:  I did see it in the declaration, but the
 7   underlying emails were not provided to me; is that correct?
 8           MS. FERGUSON:  That is correct, Your Honor.
 9           THE COURT:  Okay.  Please go on.
10           MS. FERGUSON:  So back then there was a connection.
11           Then Gordon Hall who was at Rockstar moved over to
12   Activision.  So to us it looked like he brought with him a lot
13   of information that he had gained at Rockstar and then put into
14   the record and moved to make the game Call of Duty when he
15   moved to Activision.  We filed the complaint based on all of
16   those facts.
17           And additionally, Activision claims that I didn't
18   review the game, which I did review portions.  I didn't sit
19   there and play the six-hour game.  I reviewed excerpts from the
20   game.  I reviewed trailers, and I copied -- I matched that with
21   the copyright transcripts.
22           THE COURT:  What is the excerpts of the game?  I don't
23   understand what that is.
24           MS. FERGUSON:  Portions of the game, 45 minutes of
25   different portions of the game, from minute 45 to minute 130,
```

1  depending on what scene I was looking for based on the

2  copyrighted scripts I had.

3      THE COURT:  Did you review the game in campaign mode

4  or multiplayer mode?

01:37  5      MS. FERGUSON:  In campaign mode.

6      THE COURT:  Okay.  In multiplayer mode, is it true

7  that the character Shon Brooks would never come up?

8      MS. FERGUSON:  Your Honor, I don't honestly know that

9  because I reviewed it in campaign mode.

01:37  10      THE COURT:  Okay.  How would it be reasonable and

11  competent pre-complaint filing investigation not to review the

12  actual offending material?

13      I know you said you read -- or reviewed portions of

14  it, but what portions did you review?  It was unclear from the

01:37  15  submitted paperwork.  What portions did you review?

16      MS. FERGUSON:  I reviewed about five different

17  portions of the game, 45 minutes a portion approximately,

18  30 minutes.  The client had identified to me the portions of

19  the game that matched the copyrighted scripts that he had

01:37  20  provided to the defendants.

21      THE COURT:  Okay.  How would you reconcile your review

22  of Call of Duty:  Infinite Warfare in the portions that you did

23  with, for example, the allegation in the complaint at paragraph

24  23 that the defendants are using Shon Brooks as its main

01:38  25  character in Call of Duty.  This character uses the likeness,

1   persona, and name of plaintiff's owner Shon Brooks, S-H-O-N,

2   Brooks.

3          How would your review of Call of Duty support that in

4   any way whatsoever?

01:38   5          MS. FERGUSON:  When I reviewed the portions of the

6   game and the trailer, Shon Brooks was a character in the game

7   that was preeminent.

8          As far as putting similar to, he had a very similar

9   active military style.  He was the same build and stature.

01:38  10   There was connections between the games that were provided to

11   the Activision/Rockstar and the type of character who he was.

12   He went to similar places that they did.  He collected the

13   similar types of weapons and ammunition that they did, so --

14          THE COURT:  There were weapons and ammunition involved

01:39  15   in the Stock Picker and Save One Bank games that your client

16   purportedly gave to some of the individuals?

17          MS. FERGUSON:  Yes, there was, Your Honor.

18          THE COURT:  Weapons?

19          MS. FERGUSON:  They said --

01:39  20          THE COURT:  This whole -- I think one of the

21   similarities was that they both possessed missiles.  What is

22   there in the record that I have before me that either the Stock

23   Picker or the Save One Bank games had anything to do with

24   missiles or there is any similarity whatsoever with the Call of

01:39  25   Duty game that is at issue here?

1     MS. FERGUSON: Your Honor, as I stated in my

2 declaration and I stated in the moving papers that those were

3 the similarities. I didn't provide Your Honor with the

4 copyrighted scripts. If the Court would like the copyrighted

01:39  5 scripts, I have now have certified copies from the copyright

6 office that I have obtained.

7     At the time I filed the complaint, I had the copies

8 that were copyrighted, but I didn't have the certified copies

9 from the copyright office because it takes seven months to get

01:40  10 them with the copyright office these days, and so I have the

11 copies that were deposited and the copies that were shared with

12 Rockstar and Activision back in the beginning.

13     And those purport -- in the scripts they talk about

14 this player will have the missiles to go to planet Mars or to

01:40  15 invade the bank vault on Wall Street. So that is the evidence

16 that I was relying on when I filed the complaint.

17     THE COURT: Okay. Was there any bank involved in Call

18 of Duty at all?

19     MS. FERGUSON: Call of Duty has -- takes place on Wall

01:40  20 Street, and it simulates in my review of it banks and vaults.

21     THE COURT: At what point in Call of Duty are they on

22 Wall Street? Because, quite frankly, I played the game this

23 morning, at least for a little portion, and they are in the New

24 York area. It appears to me that they were New Jersey, and

01:40  25 then they took off for outer space. So my review is

1    inconsistent with your representation.

2         Again, I did not play all six hours of the game, nor

3    was I inclined to do so, but I didn't see that in the game at

4    all.  And wouldn't that be part of the due diligence that you

01:41  5    would engage in before filing the complaint?

6         MS. FERGUSON:  Yes, Your Honor.  And I had seen

7    portions of the game and the trailer that had shown Wall

8    Street.

9         THE COURT:  Okay.  So that portion of the complaint,

01:41  10    your due diligence was of viewing a trailer of the game.

11         MS. FERGUSON:  It was a combination of the trailer of

12    the game, yes, and the game.

13         THE COURT:  Okay.  Anything further?

14         MS. FERGUSON:  Not to those points, Your Honor, unless

01:41  15    you want to address the other motions.

16         THE COURT:  No.  On that issue, do you have anything

17    additional with respect to the underlying aspects of the game?

18    I know that there was a declaration as to what the game entails

19    and what is publicly available and accessible.

01:41  20         Do you have anything to add to the record in that

21    regard?

22         MS. PAGNANELLI:  Well, Your Honor, I am not quite sure

23    what to say.  Call of Duty:  Infinite Warfare is not set in New

24    York.  I am not quite sure what Ms. Ferguson reviewed.  She

01:42  25    didn't review Call of Duty:  Infinite Warfare, and we have a

01:42

01:43

01:43

01:43

01:43

01:44

1    declaration from the client that explains them, and we have

2    submitted, as you know, the game.

3            There are lots of -- there is lots of ways to find out

4    what goes on in the game.  There is a wiki post that goes level

5    through level, and, you know, maybe a ten-minute read that

6    would go through all these things.

7            So I am -- I don't know what to say.  I was hoping

8    that the -- I was really hoping that this hearing was going to

9    be, oh, my gosh, I made a really bad mistake, and my client

10    gave me the wrong videos or portions.

11            But I have no explanation, but -- other than to say

12    that the Call of Duty:  Infinite Warfare is set in the far

13    future in space, and it is not set in Wall Street.

14            THE COURT:  Okay.  Thank you.

15            Mr. Whitney, I don't want to ice you out of this

16    conversation.  Do you have anything to add on behalf of

17    Rockstar?

18            MR. WHITNEY:  Yes, Your Honor.  Plaintiff's counsel

19    just made a stunning, open-court representation that she had

20    provided Rockstar with this correspondence that allegedly forms

21    the basis of the entire complaint, and I don't want to use the

22    word "lie," but that is completely untrue.

23            Not only is that untrue, I've asked for it repeatedly,

24    and plaintiff's counsel has never provided it, did not provide

25    it to this Court, even though it would be the only thing that

1   could potentially save them from clear perjury.

2         And not only that, but plaintiff's counsel said that

3   it shows that there were correspondence between her client and

4   my client in 2014 to 2016, but the two individuals, Gordon Hall

01:44  5   and Sarah Shafer left Rockstar, which we put evidence in the

6   record of it.  You could just look at their publicly available

7   LinkedIn pages to see.  Mr. Hall left in 2011, and Ms. Shafer

8   left in 2013, so it is impossible that there could have been

9   correspondence with them while they were at Rockstar in 2014,

01:44  10  2016.

11         I made this point expressly to plaintiff's counsel in

12   one of our many discussions about this, trying to avoid this

13   motion and to understand how it is possible that they could

14   proceed here, and I asked pointblank, Were those communications

01:45  15  with -- had Rockstar email addresses?  And she couldn't admit

16   to me that they were.

17         And, again, I have never seen such communications, and

18   I -- it is incredulous that that statement was just made in

19   open court, Your Honor.  We made this point in our brief.  The

01:45  20  figments in the -- in the complaint are false, and instead of

21   acknowledging that, counsel is doubling down on this and making

22   statements that are compounding these falsities.

23         I would encourage -- invite them to make a showing of

24   proof that these emails were sent to us because they certainly

01:45  25  were not, and they certainly were not obviously submitted to

1   the Court, and they wouldn't -- they are almost impossible

2   based on their face.

3        So I am -- I am a little bit taken back, a little

4   shocked, but that is not really what is important here.  What

01:45  5   is important here is that there is clearly no basis for the

6   allegations here which are patently untrue.  Rockstar did not

7   have anything to do with Call of Duty.  It doesn't make Call of

8   Duty.

9        It would be like suing Coke for a defective Pepsi,

01:46  10   right?  These are completely different companies.  They are

11   competitors, and they named the -- they identified the wrong

12   company, and we told them that before they even filed the

13   complaint.

14        I wrote to plaintiff's counsel and said that

01:46  15   explicitly, and in respond in the opposition brief, all we

16   heard was, well, I -- I, you know, people say that all the

17   time, and I didn't do anything about it, and they didn't issue

18   any documents.

19        But clearly there was no investigation done.  These

01:46  20   are public companies.  Their relationship is -- would be

21   evidence.  This is a multibillion dollar game franchise.  If

22   Rockstar had anything to do with it, there would be some

23   evidence somewhere in the universe, and there is nothing.

24        And they don't cite to anything.  There is not a

01:47  25   single document cited that shows any connection.  And we

1    submitted evidence showing otherwise, which is difficult to do,

2    but we even have done that, and this is a clearcut case of a

3    baseless complaint that should warrant Rule 11 sanctions, Your

4    Honor.

01:47    5         THE COURT:  Ms. Ferguson.

6         MS. FERGUSON:  So, Your Honor, I do have those emails.

7    I am happy to give them all to the Court.  The client provided

8    the emails to me.  There are Rockstar addresses.  I talked to

9    Mr. Whitney about them.  I thought I provided them to him.  I

01:47    10   didn't give him one or two of them.  Maybe I gave them to

11   Craig.

12        I didn't give him all the emails, no.  I did tell him

13   about the emails I did tell him about what the thread was.  Are

14   the emails authenticated?  No, Your Honor, we're not at trial,

01:47    15   and my client gave me those emails.  So as far as I know those

16   emails are authentic.  My client is not here.

17        I can provide the Court those emails.  I am happy to

18   do that at this juncture.  I am happy to give everybody those

19   emails.  I have them all.  That is what I relied on.

01:48    20        In additional to that, we were looking at the causal

21   connection between Gordon Hall and Activision and Rockstar.  We

22   did our due diligence to figure out that Gordon Hall overlapped

23   between Rockstar and Activision, according to what we learned

24   on the internet.

01:48    25        It wasn't until after we filed the complaint that

01:48 additional information came out, and you can see from the briefing I was in constant communication with my client. Unfortunately now we're hearing a motion to dismiss because I have an ethical duty to withdraw from this case on multiple levels, and I can't breach my duty of candor or confidentially to the client until I am let out of this case, and even after that I can't breach it.

So dynamics change, and unfortunately after dynamics change, you can only say so much, and I can't unilaterally dismiss a complaint after it is filed or amend a complaint after it is filed without my client's consent.

THE COURT: I think the record establishes that it was initially the position of either yourself and/or Mr. Brooks that Rockstar should in fact be dismissed out of this complaint. Am I reading that correctly?

MS. FERGUSON: You are correct, Your Honor, and I did represent that to Mr. Whitney, and unfortunately I was subsequently within a few hours told that I couldn't do that.

THE COURT: Okay. Is that something that you believe can properly be taken into consideration in evaluating the Rule 11 motion, your client's initial willingness to dismiss out Rockstar?

MS. FERGUSON: Well, my client's initial willingness to let out Rockstar is clear in the emails that I sent to Mr. Whitney, so --

1    THE COURT:  Would that be some evidence that Rockstar

2  was improperly brought into this case?

3    MS. FERGUSON:  I don't think that they were improperly

4  let out -- brought into this case.  I think the facts at the

01:50    5  time of the complaint was filed showed that they should be part

6  of the complaint.

7    Once we received all of the evidence from Rockstar, I

8  formed my own opinion after getting additional evidence that

9  wasn't provided to me or wasn't publicly available, but I am

01:50   10  not the client, Your Honor.  Unfortunately I am just counsel,

11  and I can only offer my advice, and I can't --

12    THE COURT:  I understand that.  But the subject matter

13  of the Rule 11 sanctions is whether or not you and your firm

14  did the necessary pre-complaint filing due diligence.

01:50   15    MS. FERGUSON:  Right.

16    THE COURT:  And I believe the record before me is that

17  back in October there was correspondence from Rockstar

18  essentially stating we're a competitor to Activision, and we

19  would have nothing whatsoever to do with the development or

01:50   20  anything --

21    MS. FERGUSON:  Of the games.

22    THE COURT:  -- concerning Call of Duty, so --

23    MS. FERGUSON:  And then after --

24    THE COURT:  So you were on notice back in October,

01:51   25  would you agree?

01:51

01:51

01:51

01:51

01:52

01:52

1    MS. FERGUSON:  I would agree I was on notice back in

2  October, Your Honor.  What I did after becoming on notice, I

3  started doing more digging into whether there was a causal

4  connection between Activision and Rockstar.  I did find some

5  information that Gordon Hall had been back and forth.  I

6  confirmed that with multiple sources.

7    We looked at all the SEC records and business records.

8  We continued to do due diligence, and it looked like there was

9  still some causal connection with what we were doing at the

10  time, and after that there was evidence from both Activision

11  and Rockstar.

12    THE COURT:  Prior to filing the complaint?

13    MS. FERGUSON:  After filing the complaint.

14    THE COURT:  Mr. Whitney, any final comments in that

15  regard?

16    MR. WHITNEY:  Your Honor, I would say that nothing

17  that Rockstar provided to plaintiffs was anything but public

18  information pointing out SEC filings and websites, so there was

19  nothing -- there was no evidence that wasn't available to

20  plaintiff's counsel beforehand.

21    In fact, there was very little that we provided.  I

22  just kept correcting what information they have, and they

23  provided nothing other than generalized statements without any

24  support.

25    And, again, these statements about Gordon Hall,

01:52

1    Mr. Hall left Rockstar in 2011, you know, way, way, way before

2    anything was relieved in terms of the game that was at issue

3    here and that he had nothing to do with it.  He was working in

4    the lead office of Rockstar, and I think at some point he did

5    go to Activision, but he didn't go back and forth, so he was

6    not a Rockstar employee after 2011.

7        So I don't know what evidence would have given them

8    any objectively reasonable basis there to file the complaint.

9    I think this is all just a lot of attempt to throw, you know,

01:52   10   the kitchen sink or whatever at the wall and see what sticks to

11   say, oh, I had some basis for this.

12       In actuality there is no single piece of information

13   or piece of evidence that has been proposed here and revealed

14   here that provides any basis for having named Rockstar, which

01:53   15   of course, was acknowledged subsequently -- way subsequently by

16   plaintiffs when they were willing to dismiss Rockstar from this

17   case.

18       THE COURT:  Okay.

19       Yes.

01:53   20       MS. FERGUSON:  Just to address the additional evidence

21   and Gordon Hall's leaving, so after the motions to dismiss were

22   filed, I had declarations from individuals at both Activision

23   and Rockstar attesting to the fact that they were not related,

24   so that is one piece of additional evidence.

01:53   25       And in addition to that, there were documents attached

1  to the motions to dismiss.  Perhaps some of them were public

2  records, like Mr. Whitney represents.  I am not sure.  Maybe I

3  didn't find them, but that is additional evidence that I had.

4  As to 2011, I have evidence in the file and I have

01:53  5  confirmed with my associates and paralegals that Gordon Hall

6  didn't leave in 2011.  He still has ties back and forth with

7  Activision in 2014 and '15.  And the emails that I have that

8  were provided to me from the client, they are not

9  authenticated, were at the timeframe later than 2011 and 2014

01:54  10  and 2015 timeframe with Sarah Shafer and Gordon Hall was there.

11  THE COURT:  Okay.

12  Yes.

13  MS. PAGNANELLI:  I don't know if you have any further

14  questions for me, but I -- if there is a piece of evidence that

01:54  15  demonstrates that Rockstar and -- or Take Two and -- which owns

16  Rockstar -- and Activision Blizzard put out Call of Duty

17  together, I think it would be great if we could see it.

18  The fact that sometimes an employee goes from one

19  company to another company in the same industry does not create

01:54  20  a joint venture.  I am sure there are quite a few employees

21  that have gone back and forth from one video game company to

22  another over the last 20 years.  I don't think that is evidence

23  of much of anything.

24  The only information I really have on Mr. Hall is from

01:55  25  his publicly available LinkedIn.  According to his LinkedIn, he

left Activision in, I believe, the fall of 2014.  He wasn't at

Activision proper.  He was at a studio called Blast Furnace,

which is what is on his LinkedIn.

Nowhere on his LinkedIn does he say he worked on Call

of Duty.  He did not.  The lead studio was a mobile game

studio.  All of that is just from his LinkedIn.

There is no evidence that he had anything to do

with -- with Call of Duty.  He's -- and he was employed -- my

understanding, he has since passed away, but my understanding

is he at some point worked for Activision or a studio that is

under the umbrella of Activision for a short period of time in

England on a mobile game, not Call of Duty, and that is looking

at his LinkedIn.

There is no other evidence on him other than, yes, in

our client's declaration they said that he left in

February 2014, but you don't need to know that because his

LinkedIn said he left in the fall of 2014, so either one

demonstrates that he left.

The game was released in the fall of 2016, and again,

it is -- it is not hard to find out that this game was about

traveling through space in the far future and not about

financial responsibility for kindergartners.

THE COURT:  Okay.  Does Activision oppose the ability

of Ms. Ferguson and her firm to supplement the record with the

emails that had been apparently under the discussion among the

1    parties now that they are available?

2        MS. PAGNANELLI:  Activision wouldn't oppose.  We -- as

3    far as I know, there was never any emails with Activision.  She

4    never told us that there was.  I think this is a Rockstar

01:57  5    issue.  But I don't have any objection.

6        We've asked for the emails.  We also asked to see all

7    the videos that she reviewed because it has always been just

8    incredulous to us that this isn't painfully obvious, and we

9    tried so hard to make it clear because this is the last place I

01:58  10   wanted to be, Your Honor, but I haven't seen any of those

11   either.

12       I mean, my speculation is her client sent her a video

13   about some other game, but not Call of Duty:  Infinity Warfare.

14   That is speculation.  But I would have no objection if

01:58  15   Mr. Whitney has no objection.

16       THE COURT:  Okay.  Mr. Whitney, on behalf of Rockstar,

17   would you have any objection to supplementing the record with

18   any additional information on behalf of the plaintiff with

19   respect to the pre-complaint filing due diligence that they

01:58  20   performed to include production of the emails that were

21   apparently reviewed?

22       MR. WHITNEY:  My only objection, Your Honor, is that I

23   think it is a little bit too late at this point.  My point

24   before was in response to the statement that they had been

01:59  25   provided, which they had not, and we have asked repeatedly, and

01:59 1 they put us through this incredibly expensive exercise when --

2 so to allow at this point then to reveal these emails, it would

3 seem to prejudice the parties because we've been asking for

4 them for months and many, many thousands of dollars of legal

5 fees ago, so that would be my objection, Your Honor. I

6 think -- I think that is a little bit prejudicial.

7 THE COURT: I do share your concern, Mr. Whitney, that

8 the production of the emails at this late date is rather

9 untimely given the fact that the demand letter was originally

01:59 10 sent on October the 8th of 2021.

11 But as the parties recognize in their filing, the

12 request for Rule 11 sanction is an extraordinary remedy that is

13 being requested by the parties, and my preference would be to

14 have a full and complete record and ruling on those pending

01:59 15 motions.

16 So, Mr. Whitney, your objection is noted. I share

17 that concern, but my preference is for deciding the motions

18 based on a full and complete record.

19 And, Ms. Ferguson, I will allow you to supplement the

02:00 20 record with any additional information you think pertains to

21 the inquiry that I am tasked with making specifically finding

22 whether or not the complaint is legally and factually baseless

23 from an objective perspective.

24 And more importantly, with respect to your ability to

02:00 25 supplement the record, whether the attorneys who filed the

1   complaint conducted a reasonable and competent inquiry before

2   signing it and filing it with the Court.

3        So any additional information, Ms. Ferguson, that you

4   have in that regard, I will allow you to file it.  I will allow

02:00   5   you to file it within the next seven days.

6        MS. FERGUSON:  Thank you, Your Honor.

7        MS. PAGNANELLI:  Your Honor, could we also ask for any

8   information that shows the link between Rockstar and

9   Activision?

02:01   10       THE COURT:  At this point I don't want to play hide

11   the ball.  My tentative is to grant the motions for sanctions

12   filed as 34 and 35, but I do want to do so only after

13   considering all of the available evidence, and I want

14   plaintiff's counsel to have a full opportunity to develop the

02:01   15   entire record so that my consideration in that regard is well

16   informed or is informed as it can possibly be under the

17   circumstances.

18       So with that having been said, I will stand on that

19   and allow plaintiff's counsel to file whatever information they

02:01   20   believe is relevant to the duty that I must perform given the

21   pending motions that have been filed.

22       The remaining motion is the motion to withdraw as

23   counsel.  That motion is unopposed by both Activision and

24   Rockstar.  There was a representation that counsel for Brooks

02:02   25   Entertainment would be willing to submit ex parte the more

1    specific reasons underlying the motion to withdraw as counsel.

2         Is there any opposition to such a submission on behalf

3    of Activision?

4         MS. PAGNANELLI:  No, Your Honor.

02:02  5         THE COURT:  Is there any opposition to such a

6    submission on behalf of Rockstar?

7         MR. WHITNEY:  No, Your Honor.

8         THE COURT:  Okay.  I will also place a seven-day

9    deadline on the submission of any ex parte.  I would just ask

02:02 10   that Ms. Ferguson or whoever files that information with the

11   Court also file a notice of an ex parte filing so that the

12   parties are on notice that there was an ex parte submission in

13   that regard.

14        And I would also be interested in any argument that

02:03 15   you might have, and this would have to be filed publicly,

16   whether or not the basis for the motion to withdraw as counsel

17   if it pertains to the pending Rule 11 motions whether or not

18   the Court can properly consider them.

19        So, for example, hypothetically, if your position is

02:03 20   now that you informed your client that the complaint is totally

21   baseless and is not legally sustainable and your client still

22   objects to withdrawing the complaint, if that was submitted to

23   me ex parte, whether or not I could consider that information

24   in ruling on the Rule 11 motions.

02:03 25        MS. FERGUSON:  Okay.  And I need to tell you if you

1    can consider that information in ruling on the Rule 11 motion,

2    but what do I have to publicly disclose to the other side?

3    THE COURT:  If you are going to make an argument that

4    the Court is not able to consider whatever proffered

02:03    5    information you choose to advance in support of your motion to

6    withdraw as counsel, if that is somehow privileged or it is not

7    properly taken into consideration in ruling on the Rule 11

8    motions, there should be an opportunity for counsel for

9    Activision and Rockstar to address the propriety of taking that

02:04   10    information into consideration, only assuming that you take the

11    position that I cannot.

12    MS. FERGUSON:  Okay.  Your Honor, my biggest concern

13    is my duty of confidentiality to my client, right?  So whatever

14    I disclose to you ex parte, that is confidential client

02:04   15    information, which I am happy to do ex parte.  I think under

16    the ethics rules can do so.  I don't want that then get me into

17    a bigger mess because it is disclosed to Activision and

18    Rockstar.

19    THE COURT:  No, I am not saying disclose the same

02:04   20    information.  Just if you are going to advance the argument

21    that I cannot consider that information, I want Activision and

22    Rockstar to be on notice that I am in possession of now -- I am

23    now in possession of information that may bear on the Rule 11

24    motions that you are taking the position that I cannot

02:05   25    consider.

1      And I want them to have the opportunity to weigh in

2   that any and all information I should be able to consider or if

3   they agree with you, then that is fine, too.  So not disclosing

4   the substance of the information, it can be very broadly

02:05   5   addressed in whatever motion you file publicly.

6      MS. FERGUSON:  Okay.

7      THE COURT:  Again, I don't know the information.  I

8   just want to set the parameters so that we don't have to come

9   back together and readdress this issue, so if there is -- do

02:05  10   you understand my concern in that regard?

11      MS. FERGUSON:  I understand your concern.  We don't

12   want to be back here again, and neither do I.  I want this case

13   to be over, honestly, Your Honor, but I am trying to understand

14   if I provide you stuff, which I am going to do, I am happy for

02:06  15   you to give them the emails at this juncture because that is

16   information that was there.

17      But any sort of confidential communications I have

18   with my client, I am happy to give you to as well and to make

19   my argument, I just don't want -- I guess I can tell them that,

02:06  20   but whether or not Your Honor is going to consider it for the

21   Rule 11 that would assist me as attorney, but I don't want to

22   do anything contrary to my ethical duties to my client.

23      THE COURT:  Okay.  So to be clear, the emails and any

24   other connection, any other pre-complaint filing investigation

02:06  25   or due diligence that was performed, you are going to file that

1  publicly.

2          MS. FERGUSON:  Correct.

3          THE COURT:  Okay.  And the only thing filed ex parte

4  with the Court would be the basis for your motion to withdraw

02:06   5  as counsel.

6          MS. FERGUSON:  Okay.

7          THE COURT:  Okay.  With respect to the two pending

8  Rule 11 sanction motions, does anyone want to supplement the

9  record in any additional way that we have not already covered

02:07  10  or has not been covered in the written submissions to the

11  Court?

12          MS. PAGNANELLI:  Your Honor, to the extent we could

13  prove a negative, I think we've kind of come up with everything

14  that we could find.  Thank you.

02:07  15          THE COURT:  Okay.

16          Mr. Whitney, on behalf of Rockstar, are you satisfied

17  with the status of the record with respect to those motions?

18          MR. WHITNEY:  Yes, Your Honor.

19          THE COURT:  Okay.  Any additional information?

02:07  20          MS. FERGUSON:  No, Your Honor.

21          THE COURT:  Okay.  Is there anything else that we need

22  to address this afternoon?

23          MR. WHITNEY:  Your Honor, I have one question.  With

24  respect to the supplemental submission by plaintiff, I don't

02:07  25  know that there will be any need to weigh in on it from

1    Rockstar's perspective, and I don't want to speak for

2    Activision, but what -- is there any thought on whether

3    there -- would you let the parties know if you would like to

4    hear from them?  Is there a way we should proceed in that

02:08   5    regard?

6          THE COURT:  What I will do is I've given plaintiff

7    seven days to submit that.  I'll give both counsel for the

8    defendants an additional seven days to file anything that they

9    deem appropriate if something is submitted, and then I will

02:08  10    issue a written order on the Rule 11 sanction motions as well

11    as the motion to withdraw as counsel shortly thereafter.

12          MR. WHITNEY:  Thank you, Your Honor.

13          THE COURT:  Okay.  With that having been said, is

14    there anything additional from the plaintiff?

02:08  15          MS. FERGUSON:  One thing, Your Honor, you had said

16    that you want me to file an ex parte notice of motion.

17    Obviously I am not providing the ex parte motion to counsel

18    based on the withdrawal reasons, but the ex parte notice, do

19    you want me to state that the hearing date or the due date is

02:09  20    seven days from today which would be Thursday?

21          THE COURT:  Sure, that is fine.  I just want something

22    in the publicly filed record that there was an ex parte

23    submission so that there is no ambiguity as to whether or not

24    the Court received any additional information that was on an

02:09  25    ex parte basis.

1    MS. FERGUSON:  Okay.  That submission needs to be

2  filed -- that ex parte notice of submission needs to be filed

3  concurrently with me providing Your Honor with the ex parte.

4    THE COURT:  It all has to be filed within seven

02:09    5  days --

6    MS. FERGUSON:  Gotch you.

7    THE COURT:  -- so you can stagger it if you prefer but

8  within seven days, please.

9    MS. FERGUSON:  Okay.

02:09    10    THE COURT:  Okay.  Thank you all very much.

11    MS. FERGUSON:  Thank you.

12    MS. PAGNANELLI:  Thank you, Your Honor.

13    MR. WHITNEY:  Thank you, Your Honor.

14    (Proceedings concluded at 2:09 p.m.)

15                ---oOo---

16            C-E-R-T-I-F-I-C-A-T-I-O-N

17    I hereby certify that I am a duly appointed, qualified
   and acting official Court Reporter for the United States
18  District Court; that the foregoing is a true and correct
   transcript of the proceedings had in the aforementioned cause;
19  that said transcript is a true and correct transcription of my
   stenographic notes; and that the format used herein complies
20  with the rules and requirements of the United States Judicial
   Conference.
21    DATED:  June 2, 2022, at San Diego, California.

22

23                    /s/ Melinda S. Setterman
   _____
24                    Melinda S. Setterman,
                    Registered Professional Reporter
                    Certified Realtime Reporter
25