1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

BROOKS ENTERTAINMENT, INC.,

12

Plaintiff,

13

v.

14

ACTIVISION BLIZZARD, INC. and
ROCKSTAR GAMES, INC.,

15
16

Defendants.

17
18
19
20

Case No.:  21-CV-2003 TWR (MDD)

**ORDER (1) GRANTING
DEFENDANTS' MOTIONS FOR
RULE 11 SANCTIONS;
(2) DISMISSING COMPLAINT
WITH PREJUDICE; (3) DENYING
AS MOOT DEFENDANTS'
MOTIONS TO DISMISS; AND
DENYING AS MOOT PLAINTIFF'S
COUNSEL'S MOTION TO
WITHDRAW**

(ECF Nos. 21, 22, 26, 34, 35)

21
22
23
24
25
26
27
28

Presently before the Court are Defendant Activision Blizzard Inc. ("Activision") and Defendant Rockstar Games Inc.'s ("Rockstar") Motions for Sanctions Pursuant to Rule 11.  (*See* ECF Nos. 34, 35 respectively.)  Counsel for Plaintiff Brooks Entertainment, Inc. ("Brooks") opposed both motions, (*see* ECF Nos. 36, 37), to which Activision and Rockstar filed replies.  (*See* ECF No. 40, 41 respectively.)  The Court held a hearing on the motions on May 26, 2022.  (*See* ECF No. 44.)  Following the hearing, Plaintiff's counsel submitted a collection of documents on which it relied prior to filing Brooks' Complaint, (*see* ECF

No. 45), to which Activision and Rockstar filed responses.  (*See* ECF Nos. 48, 50 respectively.)  Having carefully considered the parties' arguments, the Complaint, and the relevant law, the Court **GRANTS** Defendants' Motions for Sanctions.

## BACKGROUND[1]

Plaintiff Brooks describes itself as a "financial and entertainment consultant corporation [that] helps its customers build their financial empire safely and hosts a TV show aimed at encouraging and empowering youth to take control of their destiny and become successful adults."  (("Compl."), ECF No. 1 ¶ 9.)  Brooks was formed in 2002 by Shon Brooks.  (*Id.*)  Brooks asserts that it has "created content, a platform, concepts and graphics for interactive video games [that] are aimed at empowering youth."  (*Id.* ¶ 10.) The games are titled "Stock Picker" and "Save One Bank."  (*Id.*)

Brooks owns a trademark for "SHON BROOKS," which was "first used in commerce in 1986 and was registered January 15, 2019."  (*Id.* ¶ 14.)[2]  Brooks owns the copyrights for Stock Picker and Save One Bank.  (*Id.* ¶ 15.)  Brooks additionally asserts that "Amazon and Amazon Fashion distribute and manufactures Brooks Entertainment Inc.'s (Fran Shatone) clothing merchandise and technology toys."[3]  (*Id.* ¶ 16.)  Brooks alleges that, "[f]rom 2010 and through 2015[,] Brooks Entertainment was talking to and provided a pitch to Blizzard, Activision and Rockstar Games, Inc. to create a game.  The pitch was copyrighted.  Many meetings and emails were exchanged between these parties through the following individuals[:] Sarah Shafer[,] who worked for Rockstar and was a partner of Blizzard[;] Gordon Hall of Blizzard/Activision[;] and Sam Houser of Rockstar."

---

[1]    The background states facts primarily from the Complaint, which, as discussed *infra* Analysis, contains many inaccuracies.

[2]    The trademark is for "television show production of an entertainment variety, namely, producing a continuing variety show that highlights different celebrity guests, and producing cinema films for television, broadcasted over television, audio and digital video media."  (Compl. ¶ 14.)

[3]    A search on Amazon.com for "Fran Shatone" does not return any matching results.

1   (*Id.* ¶ 19.)   Brooks states that during the talks and meetings, Mr. Brooks "provided
2   Defendants with the content, script, proposal, images and details for these games."  (*Id.* ¶
3   20.)

4           In 2016, Call of Duty: Infinite Warfare ("COD") was released.  (*See* ECF No. 35-5,
5   Ex. A; Compl. ¶ 21.)  Brooks alleges that "Activision along with Rockstar used the main
6   character, content, scripts, images and details it was given in confidence . . . to develop"
7   COD.  (Compl. ¶ 21.)  Further, Brooks contends that "Defendants are using Sean Brooks
8   as its main character in 'Call of Duty'" and that "this character uses the likeness, persona
9   and name of Plaintiff's owner Shon Brooks and further infringes on Plaintiff's trademark
10  for SHON BROOKS."  (*Id.* ¶ 23.)  Finally, Brooks alleges that Defendants use "Sean
11  Brooks" as the main character in their "gambling platform" and "conduct global esports
12  playoffs and championships" using COD, which infringes on Plaintiff's copyrights and its
13  trademark.  (*Id.* ¶¶ 26–27.)  Plaintiff provides the following as examples of material
14  "stolen" from the copyrighted script:

15          a) Sean (Shon) Brooks has missiles at [his] disposal;

16          b) Save One Bank is uniquely played in First Person Shooter and Third Person
17          Shooter and Call of Duty copied the same format and is played in First Person
18          Shooter and Third Person Shooter;

19          c) Both games are played offshore;

20          d) The main characters of the games both bring thieves to justice;

21          e) Shon Brooks has unlimited resources being an undercover agent of the
22          Crystal Bank.  Shon Brooks has access to not only financial means, but access
23          to the latest cars, planes, boats and upscale computer technologies and Sean
24          Brooks in the Call of Duty game copied this by having unlimited resources;

25          f) Shon Brooks navigates through both exotic and action-packed locations and
26          Sean Brooks navigates thru both exotic and action-packed locations;

27

28

g) Shon Brooks controls [a] character during a single and multiplayer campaign and experience and Sean Brooks controls [a] character during a single and multiplayer campaign and experience;

h) Save One Bank script has a day and a night mode for the game and Call of Duty script has a day and night mode for the game;

i) Shon Brooks travelled to the Red Planet or Mars and Sean Brooks travelled to the Red Planet or Mars;

j) Save One Bank script has red orbit sky and Call of Duty now has red orbit sky [that] is identical;

k) Shon Brooks['] scripted game battle scenes take place in a high fashion couture shopping center mall and Sean Brooks['] scripted game battle scenes take place in a high fashion couture shopping center mall.

(*Id.* ¶ 28.)

On October 8, 2021, Plaintiff's counsel emailed Activision and Rockstar to inform them that its client, Brooks, owns "many copyrights and trademarks for its works including for "SHON BROOKS," and its games, "STOCK PICKER" and "SAVE ONE BANK" (collectively, the "Brooks IP").[4]  (*See* ECF No. 35-5, Ex. A.)  Plaintiff's counsel claimed that Activision's game, COD, infringes upon the Brooks IP.  (*Id.*)  Further, Plaintiff's counsel alleged that Rockstar "was the one who shared Brooks' copyrights scripts and images with Activision"—alleging "[t]he lead character, many of the scenes, the premise, the story lines, and other characters in th[e] game were stolen from Brooks' games Save One Bank and Stock Picker."  (*Id.*)  Plaintiff's counsel stated that, "[f]rom 2010 and through 2015[,] Brooks was talking to and provided a pitch" to Activision and Rockstar to create a game."  (*Id.*)  Accordingly, "many meetings and emails were exchanged between

---

[4]     Plaintiff's counsel's email stated, "[t]his letter is intended for settlement purposes only pursuant to Federal Rules of Evidence 408.  (*See* ECF No 35-4, Ex. A.)  The court, however, may utilize this evidence for another purpose.  Fed. R. Evid. 408.

21-CV-2003 TWR (MDD)

th[e] parties" through Activision's Sarah Shafer and Michael Dabney and Rockstar's Gordon Hall and Sam Houser.  (*Id.*)

Among the requested remedies, Plaintiff's counsel demanded that Defendants "pay Brooks the amount of 10% of the gross sales" earned to date on COD.  (*See* ECF No. 35-5, Ex. A.)  Plaintiff's counsel also demanded that the "SEAN BROOKS character be *morphed* into . . . SHON BROOKS."  (*Id.* (emphasis added).)

On October 27, 2021, Rockstar responded, informing Plaintiff's counsel that "Rockstar did not produce or develop Call of Duty and does not control or derive any revenue from the game."  (*See* ECF No. 35-5, Ex. B.)  Rockstar invited Plaintiff's counsel to produce "any documents in [Plaintiff's counsel's] possession that [Plaintiff's counsel] believe[s] substantiate Brooks['] claim against Rockstar" for Rockstar to review.  (*Id.*)  Subsequently, Plaintiff initiated this case on November 30, 2021.  (*See generally* Docket.)

## LEGAL STANDARD

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  Fed. R. Civ. P. 11.  "The movant serves the allegedly offending party with a filing-ready motion as notice that it plans to seek sanctions.  After 21 days, if the offending party has not withdrawn the filing, the movant may file the Rule 11 motion with the court."  *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1151 (9th Cir. 2002) (citing Fed. R. Civ. P. 11).

One of the fundamental purposes of Rule 11 is to reduce frivolous claims.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).  "An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law)."  *Id.*  Prior to filing a complaint, an attorney has the duties to "conduct a reasonable factual investigation" and "to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are "warranted by existing law or a good faith argument for an extension, modification or reversal of existing law."  *Id.* (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986)).  The court must "conduct a two-

prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Id.* (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) ("Frivolous" filings are those that are "both baseless and made without a reasonable and competent inquiry.")).  "If Rule 11 was violated, the violation was complete when the complaint was filed." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

## ANALYSIS

## I.    The Parties' Positions

### A.    *Activision*

On January 7, 2022, Activision's counsel put Plaintiff's counsel on notice that if it was "unwilling to dismiss the Complaint" Activision was "prepared to serve [Plaintiff's counsel] with a motion for sanctions under Fed. R. Civ. P. 11." (ECF No. 34-2, Ex. 5.) This intent arose because "the Complaint reflect[ed] such a blatant failure of pre-filing investigation and overt disregard for both the facts and the law" that Activision determined it was necessary to alert the Court and seek compensation for the attorneys' fees incurred by Activision.  (*See id.*)  Activision now requests that "the Court strike the Complaint" and order Plaintiff's counsel to "pay Activision for the fees incurred in its defense of a Complaint" because "no reasonable counsel . . . could have concluded that its filing was consistent with their obligations as officers of the court."  (ECF No. 34 at 1.)

Activision provides examples of some of the "delusional" claims including: (1) "Sean Brooks" is a common name and Activision's character is "Sean," not "Shon" like Plaintiff; (2) Activision's "Sean" is "an armored Irish space marine," while the Plaintiff "Shon" is "an African American San Diego-based financial consultant and cigar salesman;" and (3) Plaintiff claims *Infinite Warfare* is substantially similar to "undisclosed and unpublished concepts for two educational games designed to teach children about the stock market and the U.S. banking system." (*Id.*)  Activision asserts that "it is inconceivable that Plaintiff's counsel—who are highly trained and experienced intellectual property lawyers—did not know this." (*Id.* at 19 (internal citation omitted).)

6

Activision further asserts that Corporal Sean Brooks ("the Brooks Character") "appears only as a computer-controlled digital model.  The Brooks Character is not playable, and is just one of the supporting characters in the story." (*See* ECF No. 34-3 ¶ 8.) Lodato, Activision's Director of Production, (*see id.* ¶ 1), also states that there is no evidence any meetings, talks, or negotiations took place between Shon Brooks and Activision.  (*Id.* ¶ 11.)  Finally, Activision states there is (1) no copyright infringement because there is no evidence that the works at issue are substantially similar in their protected elements, (2) use of a trademark in a video game is protected by the First Amendment, and (3) "there is not a single point of resemblance between Shon Brooks and . . . Sean Brooks."  (ECF No. 40 at 5–8.)

Activision has incurred fees from "researching and investigating the claims, collecting documentary evidence, preparing a motion to dismiss and SLAPP motion, and engaging in conferences with Plaintiff's counsel."  (*Id.* at 20.)  Thus, Activision requests that the Court order Plaintiff's counsel to "pay all of the reasonable attorney's fees and costs that Activision needlessly incurred in defending against Plaintiff's frivolous claims, including the fees incurred for bringing this Rule 11 Motion."[5]  (*Id.* at 21.)

### B.   *Rockstar*

On March 2, 2022, Rockstar served Plaintiff's counsel with its Motion for Sanctions and a request that Brooks withdraw his Complaint within twenty-one days.  (*See* ECF No. 35-3 ¶ 18.)  On March 4, 2022, Plaintiff's counsel informed Rockstar that its client, Shon Brooks, would be "willing to dismiss Rockstar from the Action without prejudice."  (*See* ECF 32-3, Ex. B.)  Subsequently, on March 11, 2022, Plaintiff's counsel reversed course and notified Rockstar that its client would no longer "allow [them] to file a Voluntary Dismissal under Rule 41(a)(1)(A)(i)."  (*See* ECF 32-4, Ex. C.)

---

[5]   Activision requests that the sanctions be imposed jointly against Plaintiff's counsel and their law firm, Procopio.  (ECF No. 34 at 21.)

*21-CV-2003 TWR (MDD)*

1    Now Rockstar, incorporating Activision's arguments, (*see* ECF No. 35 at 17),

2  likewise "requests that the Court dismiss the Complaint against Rockstar with prejudice

3  and order the Brooks Parties to pay Rockstar's reasonable attorney's fees and costs incurred

4  in defending against their frivolous pleading." (*Id.* at 3.)  Rockstar contends that the

5  meetings alleged in the Complaint did not take place and, contrary to the extended

6  negotiation process detailed in the Complaint, only one written communication was sent

7  from Brooks' publicist to a Rockstar employee in 2014.  (*See id.* at 4–5.)

8    Further, Rockstar asserts that "[Plaintiff's counsel] has identified no credible

9  evidence that Rockstar created, released, published, or had any involvement in *Call of Duty*

10  in any way." (*Id.* at 13.)  Activision is, in fact, a competitor of Rockstar in the video

11  industry. (ECF 35-2 ¶ 3.)  "Neither Rockstar nor [its parent company] Take-Two have a

12  corporate relationship with Activision." (*Id.*)

13    Rockstar further contends that the Complaint is legally baseless because it is (1)

14  barred by statute of limitations; (2) "[Plaintiff's counsel] cannot allege that Rockstar

15  violated any of Brooks['] exclusive copyright rights through *Call of Duty* because Rockstar

16  did not reproduce, distribute, display, or have any other involvement in that game"; and (3)

17  [Plaintiff's counsel] has no credible basis to allege that Rockstar used Brooks['] trademark

18  or appropriated Shon Brooks['] likeness." (ECF No. 41 at 7.)

19    ***C.  Procopio***

20    Plaintiff's counsel opposes sanctions, asserting that, when it "filed its Complaint, [it]

21  had a good faith and well-supported basis to believe it was well-grounded in fact and law."

22  (ECF No. 36 at 1.)  Plaintiff's counsel asserts that, over the course of six months prior to

23  filing the instant case, it performed an adequate pre-filing investigation that included:

24    (1) numerous meetings and phone calls with the client; (2) reviewing all
25    documents provided by client Brooks Entertainment which included
      numerous emails between Rockstar employees and the client along with
26    documents provided to Rockstar which included copyrighted game scripts
      prepared by Brooks; (3) reviewing the United States Copyright Office
27    Records and the deposit material provided by the entity who filed these
      copyrights on behalf of Brooks; (4) reviewing the trademarks relevant to this
28

8

1
2
3
4

action owned by Brooks and the prosecution histories; (5) reviewing the Call of Duty Game trailer,[6] game excerpts, summaries, internet advertising clips; [and] (6) conducting an extensive search of publicly available information including publications, websites, blogs and internet articles on Activision, Call of Duty: Infinite Warfare, Sam Houser, Gordon Hall, and Sara Shafer.

5
6
7
8
9
10
11
12
13
14
15
16
17

(ECF No. 37 at 15.)  Further, Plaintiff's counsel contends it "learned through its investigation that Sean Brooks is a key character" who "resembl[es] Shon Brooks' involvement with the Olympics and his involvement with NASA."  (ECF No. 36 at 2.) "[T]he factual inaccuracies highlighted by Activision are either disputed, or even if those allegations are actually inaccurate, do not completely undermine Plaintiff's case."  (*Id.* at 7.)  Finally, Plaintiff's counsel argues that "because of the pending motion to withdraw it is no longer prosecuting the claims that Rockstar and Activision aver constituted frivolous filings" and that because it requested to withdraw prior to Defendants filing their motions for sanctions, it is "no longer presenting the claims to the Court for purposes of Rule 11."  (ECF No. 37 at 1, 7.)  Should the Court determine sanctions are warranted, however, Plaintiff's counsel requests that the Court order a nonmonetary sanction.  *See id.* (citing *Hucul v. Mathew-Burwell*, No. 16-CV-1244, 2017 WL 476547, at *7 (S.D. Cal. Feb. 6, 2017).

18

## II.    Hearing on the Motions for Sanctions

19
20
21
22
23

At the hearing on May 26, 2022, Plaintiff's counsel stated that "the facts show that back [in] 2014, 2015, 2016 [their] client was corresponding with Rockstar."  (5:10–11.) She instructed the Court that "the emails" contained the facts alleged in the Complaint.  (*Id.* 13–16.)  Plaintiff's counsel stated, "Gordon Hall who was at Rockstar moved over to Activision.  So to us it looked like he brought with him a lot of information that he had

24

25
26
27
28

[6]    The "Official Reveal Trailer | Call of Duty: Infinite Warfare" does not contain any mention of "Sean Brooks."  (*See* https://www.youtube.com/watch?v=EeF3UTkCoxY); The "Official Call of Duty®: Infinite Warfare – Story Trailer" likewise does not contain any mention of "Sean Brooks."  (*See* https://www.youtube.com/watch?v=y_RI3bZhU50).  In the approximately three-minute clip, "Call of Duty: Infinite Warfare - Captain Reyes's counter deception plan," Corporal Sean Brooks gets promoted to Staff Sergeant and has roughly six lines.  (*See* https://www.youtube.com/watch?v=R8pgwFhJIMc.)

9

gained at Rockstar and then put into the record and moved to make the game Call of Duty when he moved to Activision." (*Id.* at 6:11–15.)

Plaintiff's counsel also represented that she "reviewed about five different portions of the game, 45 minutes a portion approximately . . . the client had identified to me the portions of the game that matched the copyrighted scripts that he had provided to the defendants." (*Id.* at 7:16–20.) Plaintiff's counsel stated that upon her review of "the game and the trailer, S[ean] Brooks was a character in the game that was preeminent." (*Id.* at 8:5–7.) Plaintiff's counsel represented that the character Sean Brooks and Plaintiff Brooks were "the same build and stature," "[h]e went to similar places that they did," and "[he] collected the similar types of weapons and ammunition that they did." (*Id.* at 8:8–13.) Additionally, Plaintiff's counsel relied on Brooks' scripts where "they talk about this player will have the missiles to go to planet Mars or to invade the bank vault on Wall Street." (*Id.* at 9–13.) Finally, Plaintiff's counsel stated that she viewed the "trailer that had shown Wall Street." (*Id.* at 10:6–8.)

Plaintiff's counsel offered to provide "all" the emails she had reviewed to the Court, noting that "[t]here are Rockstar addresses," and she "thought [she] provided them" previously to Rockstar. (*Id.* 14:7–9.) According to Plaintiff's counsel, she was "looking at the causal connection between Gordon Hall and Activision and Rockstar. [Plaintiff's Counsel] did [their] due diligence to figure out that Gordon Hall overlapped between Rockstar and Activision, according to what [they] learned on the internet." (*Id.* 14:20–24.) She asserted that it was not until after filing "the complaint that additional information came out." (*Id.* at 14:25–15:1.) Plaintiff's counsel stated, "I think the facts at the time [] the complaint was filed showed that [Rockstar] should be part of the complaint." (*Id.* at 16:4–6.)

After Rockstar put Plaintiff's counsel on notice that Rockstar was improperly named in the Complaint, Plaintiff's counsel did some "more digging" and found "some information that Gordon Hall had been back and forth" and "confirmed that with multiple sources." (*Id.* at 17:1–6.) Plaintiff's counsel further stated that she "confirmed with [her]

associates and paralegals that Gordon Hall didn't leave [Rockstar] in 2011" and that [h]e still ha[d] ties back and forth with Activision in 2014 and '15." (*Id.* at 19:4–7.)  According to Plaintiff's counsel, "the emails that [she] ha[s] that were provided to [her] from the client, they are not authenticated, were at the timeframe later than 2011 and 2014 and 2015 timeframe with Sarah Shafer and Gordon Hall was there." (*Id.* at 19:7–10.)  In response to Plaintiff's counsel's representations, the Court invited Plaintiff's counsel to file "any additional information" to supplement the record.  (*Id.* at 23:3–4.)

## III.   Complaint

Plaintiff filed claims for (1) Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1) ("Section 1114(1)"); (2) Copyright Infringement; and (3) Commercial Appropriation of Likeness pursuant to California Code of Civil Procedure § 3344.  (*See generally* Compl.)  None of these claims are tenable, rendering the Complaint legally baseless.  Further, the facts detailed in the Complaint are blatantly false or exaggerated such that the Complaint is factually baseless.  Finally, had Plaintiff's counsel conducted a reasonable and competent inquiry prior to filing this lawsuit, it would have been apparent that it was drafting a frivolous Complaint.

### A.   *Trademark Infringement*

"A successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005)).  The holder of a registered mark "has a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004); *see also* 15 U.S.C. § 1114(1)(a).

Section 1114(1) "requires a showing that the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in

question." *KP Permanent Make-Up*, 543 U.S. at 117; *see also* 15 U.S.C. § 1114(1)(b). "The basic principle underlying federal and state trademark law is 'that distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others' and that the '[o]ne who *first* uses a distinct mark in commerce' thereby 'acquires rights to that mark.'" *Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1236 (9th Cir. 2022) (quoting *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015)). The first use in the marketplace establishes a trademark—"first-in-time, first-in-right"—and registration is not mandatory. *Id.* Registration is, however, prima facie evidence of a trademark's validity. *Id.*

The Ninth Circuit has adopted the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), to evaluate claims under Section 43(a) of the Lanham Act as limited by the First Amendment.[7] *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013). Under the *Rogers* test, "§ 43(a) will not be applied to expressive works unless the [use of the trademark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [use of the trademark] explicitly misleads as to the source or the content of the work." *Id.*

The COD game at issue in this case is subject to First Amendment protection. *See id.* at 1248 ("As expressive works, the *Madden NFL* video games are entitled to the same First Amendment protection as great literature, plays, or books."); *see also Brown v. Entmt. Merchants Ass'n*, 564 U.S. 786, 790 (2011) ("California correctly acknowledges that video games qualify for First Amendment protection."). In *Brown v. Electronic Arts, Inc.*, former NFL star, Hall-of-Famer, entertainer, and public servant Jim Brown challenged the applicability of the *Rogers* test to his case against the maker of the "Madden NFL" game. 724 F.3d at 1239–40. The Ninth Circuit stated "[t]here is no question that he is a public

---

[7]   Although Plaintiff brings his claim under Section 32(b) of the Lanham Act, (*see* Compl. ¶ 32), the elements to establish a trademark infringement claim under Section 32 of the Lanham Act or an unfair competition claim under Section 43(a) of the Lanham Act are the same. *See Brookfield Commc'ns, Inc. v. W. Coast Entmt. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

figure whose persona can be deployed for economic benefit."[8]  *Id.* at 1240.  The Ninth Circuit further rejected the "likelihood of confusion test" as irrelevant because it did not account for "the full weight of the public's interest in free expression when expressive works are involved."  *Id.* (quoting *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 899 (9th Cir. 2002)).

Here, Plaintiff primarily complains that the name "Sean Brooks as the main character" in COD is "virtually the same and confusingly similar" to Shon Brooks. (Compl. ¶ 31.)  As stated above, however, the risk of confusion test has been rejected when evaluating an expressive work, such as COD, in favor of the *Rogers* test.   Thus, the Complaint is legally baseless.  Further, the Court would not even reach the *Rogers* test here because there is no indication of any similarities between Sean Brooks and Shon Brooks such that Defendants' "actual practice is likely to produce confusion."  *See* 15 U.S.C. § 1114(1)(b).

### B.    Copyright Infringement

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant."  *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)).

Plaintiff produced the copyrighted paperwork, (*see* Compl. Ex. B); however, Plaintiff did not produce any "direct evidence of copying" or "circumstantial evidence that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work and (2) there is substantial similarity of the general ideas and expression between the copyrighted work and the defendant's work."  *Unicolors*, 853 F.3d at 984–85. Additionally, "when similar features in a videogame are 'as a practical matter indispensable, or at least standard, in the treatment of a given [idea],' they are treated like

---

[8]    A Google search of "Jim Brown NFL" provides up about 133,000,000 results, "Shon Brooks" provides about 1,120,000 results, and "Sean Brooks" provides about 56,100,000 results.

ideas and are therefore not protected by copyright." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (quoting *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525 (9th Cir. 1987)).

The similarities alleged in this case—for example, a videogame played "offshore," use of "exotic locations," and travelling to other planets, (Compl. ¶ 28)—are so broad and generally applicable to the videogame industry that they could not be protected by copyright, even if Plaintiff had been able to produce evidence of access and similarity. Further, and much more troubling, other allegations are blatantly false.  For example, COD is a first-person shooter game, not first- and third-person as alleged,[9] and Sean Brooks does not conduct a scripted battle scene in a high fashion couture shopping mall.  (ECF No. 34-3 ¶ 9.)  Plaintiff's counsel could have easily verified these facts prior to filing the factually baseless Complaint, just as the Court easily verified them within the first hour and a half of playing the game.  Finally, there is no indication that either Defendant ever received the copyrighted materials.  In fact, the documents Plaintiff's counsel relied upon and shared with the Court show that the emails containing the materials were sent only to former Rockstar HR Manager, Sarah Schafer, and never received any response.  (*See* ECF No 45-1 at 8–11, 58, 61.)

## C.   *Commercial Appropriation of Likeness*

Section 3344 dictates, "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."  Cal. Civ. Code § 3344.

/ / /

---

[9]   A Google search of "Call of Duty Infinite Warfare" provides this information without clicking on any further links.   *See*   https://www.google.com/search?client=firefox-b-1-d&q=call+of+duty+infinite+warfare.

21-CV-2003 TWR (MDD)

Plaintiff asserts that "[t]he character Sean Brooks in Activision's game Call of Duty: Infinite Warfare game uses Shon Brooks['] name and likeness." (Compl. ¶ 25.) Plaintiff again claims he is the "main character" in the COD games. (*Id.* ¶ 56.) That claim, though oft repeated, is simply false: A simple online search and the trailers for COD reveal that Sean Brooks is a minor character. Further, Plaintiff's complaints that the Sean Brooks character in COD is similar to the Shon Brooks character in the Brooks game scripts because he has the "same name, travels in space and battles in the same locations in both games," (*id.* ¶¶ 23, 25–26), are irrelevant for purposes of Section 3344.

Under the language of Section 3344, Defendants did not use Plaintiff's "name, voice, signature, photograph, or likeness in *any* manner." Cal. Civ. Code § 3344 (emphasis added). Shon Brooks is an African American financial consultant from New Jersey, while (the differently spelled) "Sean Brooks" is a Caucasian, Solar Associated Treaty Organization Marine, from Ireland voiced by an Irish actor.[10]



Additionally, the statute requires that the likeness be used "for purposes of advertising or selling," *id.*, but there is no indication of how use of "Shon Brooks'" name and likeness in COD would serve such a purpose. Thus, there is no legal basis for Plaintiff's commercial appropriation claim.

/ / /

---

[10]    *See* https://callofduty.fandom.com/wiki/Sean_Brooks.

21-CV-2003 TWR (MDD)

**IV.     Sanctions Warranted**

Section 3344 provides that the "prevailing party in any action under this section shall also be entitled to attorney's fees and costs."   Cal. Civ. Code § 3344.   Therefore, Defendants would be entitled to attorney's fees for Plaintiff's legally and factually baseless commercial appropriation of likeness claims alone.   The Court's inclination to impose sanctions, however, increases as the Court considers the Complaint's additional shortcomings.

Plaintiff's counsel failed adequately to investigate the accuracy of including Rockstar as a Defendant, as evidenced by Plaintiff's counsel's initial voiced intention to dismiss Rockstar as a Defendant.  *See Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("[The plaintiff's] second counsel recommended that they request voluntary dismissal of the complaint suggests that [the plaintiff's counsel] did not conduct a reasonable inquiry before filing the complaint.").   Additionally, all the information the Court has relied upon—both through its own cursory investigation and the materials submitted by the Parties—was available to Plaintiff's counsel when it decided to file the Complaint.  *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) ("[W]hether a pleading is sanctionable must be based on an assessment of the knowledge that reasonably could have been acquired at the time the pleading was filed."[11] (citing *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986))).

Despite the record in this matter confirming a clear lack of pre-filing diligence undertaken by Plaintiff's counsel, Plaintiff's counsel maintained at oral argument that it was objectively reasonable to file the Complaint. (*See* ECF No. 49, Tr. 5:5–8.)   Plaintiff's counsel persisted that "the facts at the time of the complaint . . . showed that [Rockstar] should be part of the complaint" (*see id.* at 16:4–6), that upon review of "about five

---

[11]     The Ninth Circuit requires the district court to undertake an inquiry focusing "heavily on the information reasonably available to the party at the time of filing."  *See Townsend*, 929 F.2d at 1366.

different portions of the game, 45 minutes a portion approximately" and the trailer, "S[ean] Brooks was a character in the game that was preeminent" (*see id.* at 7:16–17; 8:5–7), and COD "takes place on Wall Street" and in her review of the game and trailer, she in fact, saw Wall Street. (*See id.* at 9:19–20; 10:6–8.)

Following the hearing, the Court granted Plaintiff's counsel a final opportunity to convince the Court to reverse its tentative ruling to grant the motions for sanctions by inviting counsel to submit supplemental briefing regarding "any additional information [Plaintiff's counsel] think[s] pertains to . . . whether or not the complaint is legally and factually baseless from an objective perspective" and "whether the attorneys who filed the complaint conducted a reasonable and competent inquiry before signing it and filing it with the court." (*See id.* at 22:20–23:2.) However, the documents submitted in response to the Court's solicitation—which include many duplicative documents, documents recently pulled from online, irrelevant pages of photos/links, and press distributed by Brooks, (*see* ECF No. 45)—serve only to reinforce the Court's initial inclination that sanctions are warranted. Indeed, as demonstrated in the following chart, the supplemental documents Plaintiff's counsel submitted to the Court actually contradict allegations made in the Complaint, thereby substantiating counsel's lack of initial diligence:

| **Complaint Allegation**<br>**(ECF No. 1)** | **"Documents Relied on by Counsel"**<br>**(ECF Nos. 45-1, 45-2, 45-3)[12]** |
|---|---|
| ¶ 19 (emphasis added): "From 2010 and through 2015[,] Brooks Entertainment was talking to and provided a pitch to Blizzard, Activision and Rockstar Games, Inc. to create a game. The pitch was copyrighted. *Many* meetings and emails were exchanged between these parties through the following individuals[:] *Sarah Shafer who worked for Rockstar* and was a partner with [] Blizzard, *Gordon Hall of* | 1. Plaintiff's first email contact with **Sarah Shafer** was on November 15, 2010, when Michael Dabney (Brooks' PR) emailed Shafer to follow up on a phone call between Brooks and Shafer. (*See* ECF 45-1 at 10–11.) Dabney sent information about Brooks' "financial literacy project based on interactive computer games he is creating." (*See id.*) Shafer, a Manager in Human Resources, responded that she would |

---

12    The pagination cited refers to the numbers stamped by the CM/ECF system.

21-CV-2003 TWR (MDD)

| | |
|---|---|
| *Blizzard/Activision*[,] and *Sam Houser of Rockstar*." | "pass [the information] onto our corporate office to Marketing." (*See id.* at 9.)  On November 17, 2010, Dabney followed up, requesting that Shafer also forward to the New York office "scripts (and images) for the two games" Brooks was "introducing to San Diego Schools in coming months." (*See id.* at 8–9.) Dabney again followed up on December 3, 2010 and indicated he had left Shafer a voicemail as well. (*See id.* at 8.)  Shafer never responded to either follow-up email. |

2. Plaintiff's next attempted contact with **Shafer** was on August 15, 2012. Brooks emailed Shafer after "meeting" with her and sent magazine links that "outline[d] the storyboard" of Save One Bank and Stock Picker. (*See id.* at 57.) The record does not contain any indication of a response from Shafer.

3. On December 21, 2012, Brooks' publicist, Paris Crosby, emailed **Shafer**, indicating that Brooks had spoken with her that week and he was sending a summary of marketing information about the two games. (*See* ECF No. 45-2 at 62–63.)  The record does not contain any indication of a response from Shafer, who **left Rockstar in September 2013**. (*See id.* at 59.)

4. The next set of communications between **Shafer** and Brooks took place in **November/December 2014** (*See* ECF No. 45-1 at 2–7; ECF No. 45-3 at 39–51.)  The LinkedIn messages, in which Shafer noted she moved to Arizona and was a technical recruiter,

included Shafer providing her personal email address, Brooks thanking Shafer for providing contact information, and coordinating logistics to meet up. (*See* ECF No. 45-1 at 2–7.) Shafer stated that she would "check in with Gordon Hall and see what he's up to." (*See id.* at 2.) The record does contain any indication of the relevance of this potential check in.

5. The final evidence of communication with **Shafer** was on December 18, 2014, when Shafer responded to Crosby, "This looks good to me" after reviewing the letter Crosby planned to send to Houser and Hall. (*See id.* at 65–71.) Shafer additionally noted that "sending this to Sam Houser first is a good idea, however should you not receive a response . . . ." (*See id.* at 68.)

6. The only email sent to **Gordon Hall** was sent from Crosby to "gwhall.com" on December 18, 2014. (*See* ECF No. 45-1 at 61–64.) Shafer shared Hall's email in a LinkedIn message to Brooks on December 15, 2014. (*See* ECF No. 45-3 at 23.) Shafer stated that "Hall used to work for Rockstar . . . [but is] now the Chief Creative Officer at Activision/Blizzard Mobile." (*See id.*) Hall left Rockstar in 2011, (*see id.* at 46), or 2012, (*see id.* at 5), to work for Activision. (*See id.*) Thus, Hall had left Rockstar, at minimum two years prior to the first time Brooks attempted contact. The record does not contain any indication of a response from Hall and the email did not contain any copyrighted materials.

| | |
|---|---|
| | 7. The only email sent to **Sam Houser** was sent from Crosby to "rockstargames.com" on December 17, 2014. (*See* ECF No. 45-1 at 58–60.) Shafer shared Houser's email in a LinkedIn message to Brooks on December 15, 2014, and referred to Houser as the "Rockstar CEO." (*See* ECF No. 45-3 at 23.) As was the case with Gordon Hall, the record does not contain any indication of a response from Houser, and the email did not contain any copyrighted materials. |
| ¶ 20: "During these talks and meetings between 2010 and 2015[,] Brooks presented SAVE ONE BANK and STOCK PICKER to Defendants. Brooks provided Defendants with the content, script, proposal, images and details for these games." | In November 2010, Dabney sent the scripts, images, press release, and background information to Shafer. (*See* ECF No. 45-1 at 8–11.) Nothing in the documents relied upon, however, indicates that Shafer ever passed this information on to anyone at Rockstar, which did not even create COD, or Activision. |
| ¶ 21: "In 2016[, COD] . . . was released to the public by Defendants. Activision along with Rockstar used the main character, content, scripts, images and details it was given in confidence by Brooks Entertainment to develop this infringing game." | Nothing in the documents relied upon indicates that anyone at Activision *ever* received "main character, content, scripts, images [or] details" from Brooks. |
| ¶ 23: "Defendants are using Sean Brooks as its main character in 'Call of Duty' [and] this character uses the likeness, persona and name of Plaintiff's owner Shon Brooks and further infringes on Plaintiff's trademark for SHON BROOKS." | The images Plaintiff's counsel provided of "Agent Brooks," (*see* ECF No 45-1 at 22–23), do not bear *any* resemblance to COD's Corporal Brooks. |
| | Plaintiff's counsel also included a September 3, 2016 article by Screen Rant, "Everything You Need to Know About Call of Duty: Infinite Warfare." (*See* ECF No. 45-1 at 76.) That article never used the name "Sean" and said simply that, "[a]ssisting Reyes in the fight [is] . . . |

20

| | |
|---|---|
| | Corporal Brooks," who was listed as the sixth of eight named characters. (*See* ECF No. 45-2 at 1.)[13] |
| ¶ 41: "Defendants and each of them had access to the Brooks Registered Copyrights and other Brooks Entertainment materials as these items were shared with Defendants from 2010 to 2015[,] when the parties were negotiating an agreement to work together for a licensing deal.  The negotiations between the parties intended that Brooks Entertainment was to be the sole creator of the games and that Defendants would be the co-publisher.  Defendants and each of them also had access to Brooks Entertainment S.O.B television series[,] which has aired for years on major networks and featured Shon Brooks." | Nothing in the documents relied upon indicate that anyone at Activision *ever* received "Brooks Registered Copyrights and other Brooks Entertainment materials." Further, nothing in the documents relied upon indicate that negotiations were *ever* taking place, as unreturned emails do constitute a "negotiation." |
| ¶ 46: "Plaintiff is informed and believes that Defendants' acts of infringement are willful because, *inter alia*, the Defendants are sophisticated businesses with full knowledge of the strictures of federal copyright law and the basic requirements for licensing the use of copyrighted content for commercial exploitation.  Defendants' use of Plaintiff's copyrighted material is nearly identical to what was presented to it during the negotiations between the parties." | Nothing in the documents relied upon indicate that COD is "nearly identical to what was presented to it during the negotiations between the parties," *i.e.*, Plaintiff's video games Save One Bank and Stock Picker. |
| ¶ 56: "Plaintiff has discovered that Defendants are using the name, likeness[,] and persona of its CFO Shon Brooks in the Call of Duty Games as the main character. Plaintiff is the owner of the name, | As noted above, *see supra* page 20, the images Plaintiff's counsel provided of "Agent Brooks," (*see* ECF No 45-1 at 22–23) do not bear *any* resemblance to COD's Corporal Brooks. |

---

[13]     Further confirming the obvious falsity of Plaintiff's "main character" allegation, the Court never encountered the character Corporal Brooks despite having played the game for an hour and a half.

21-CV-2003 TWR (MDD)

| | |
|---|---|
| likeness[,] and persona of Shon Brooks. Defendants did not obtain the consent of Plaintiff to use the name, likeness[,] and persona of Shon Brooks. (¶ 56.) | As also noted above, *see supra* page 20, Plaintiff's counsel also included a September 3, 2016 article by Screen Rant, "Everything You Need to Know About Call of Duty: Infinite Warfare." (*See* ECF No. 45-1 at 76.) That article never used the name "Sean" and said simply that, "[a]ssisting Reyes in the fight [is] . . . Corporal Brooks," who was listed as the sixth of eight named characters. (*See* ECF No. 45-2 at 1.) |
| ¶ 20: "Many aspects of the copyrighted script were stolen, just a few of the items which were copied include the following: a) Sean (Shon) Brooks has missiles at disposal; . . . c) Both games are played offshore; d) The main characters of the games both bring thieves to justice; . . . g) Shon Brooks controls character during a single and multiplayer campaign and experience and Sean Brooks controls character during a single and multiplayer campaign and experience." | Discrepancies from the Screen Rant article include: <br> • COD "brings players into a spaced-based action adventure across the solar system." (*See* ECF No. 45-1 at 78.) <br> • "There are an assortment of assault rifles, SMGs, LMGs, sniper rifles, and shotguns[,] along with handguns and launchers." (*See* ECF No. 45-2 at 6.) <br> • "Relations have deteriorated to a point where the entire Solar System is poised on the brink of war." The game focuses on warring organizations, with no mention of thieves. (*See* ECF No. 45-1 at 82.) <br> • Player is the "captain," not Corporal Brooks. (*See* ECF No. 45-2 at 1.) <br><br> Discrepancies from the description of "Save One Bank" include: <br> • Indicates that the game takes place in a "financial world." (*See* ECF No 45-1 at 30.) <br> • "This game will have high end weaponry, knives, bazooka, rocket launchers, grenades, fire fighters, computer warfare and more." (*See id.* at 38.) |

In *Greenberg v. Sala*, the Ninth Circuit cautioned that courts should be "reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, *if the litigant has conducted a reasonable inquiry into the facts*." 822 F.2d 882, 887 (9th Cir. 1987) (emphasis added). Such is not the case here. The record in this matter compels the Court to conclude that: (1) Plaintiff's counsel failed to conduct a reasonable pre-filing inquiry into the relevant facts; and (2) Plaintiff's counsel signed and filed a complaint alleging claims that are facially legally and factually baseless. Accordingly, the Court **AWARDS** Defendants sanctions in the form of (a) attorneys' fees and costs, and (b) dismissal with prejudice of Plaintiff's Complaint. *See Hugo Neu-Proler Co. v. Loc. 13 Int'l Longshoremen & Warehouse Union*, 238 F.3d 428 (9th Cir. 2000) (finding that awarding attorneys' fees was an "appropriate sanction" for a "frivolous" claim that was "factually and legally 'baseless' and made without a 'reasonable and competent inquiry'"); *see also JAT Wheels Inc. v. JNC Wheel Collection*, No. CV 14-04898 JVS MRWX, 2014 WL 4568323, at *3 (C.D. Cal. Sept. 8, 2014) (striking frivolous claims and awarding attorneys' fees incurred in bringing a motion for sanctions); *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986) (affirming the award of attorneys' fees and costs as a sanction for filing a complaint lacking a factual foundation for jurisdiction); *Uziel v. Superior Ct.*, No. CV 19-1458-DSF (JEM), 2021 WL 5830040, at *5 (C.D. Cal. Oct. 19), *report and recommendation adopted*, 2021 WL 5830036 (C.D. Cal. Nov. 22, 2021) (awarding attorneys' fees incurred in defending action where plaintiff's frivolous claims "infected" entire action).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motions for Sanctions. (ECF Nos. 34, 35.) The Court **DISMISSES WITH PREJUDICE** Plaintiff's Complaint (ECF No. 1), **DENIES AS MOOT** Defendants' Motions to Dismiss (ECF Nos. 21, 22), **DENIES AS MOOT** Procopio, Cory, Hargreaves & Savitch LLP's Motion to Withdraw as Counsel for Plaintiff Brooks Entertainment, Inc. (ECF No. 26), and **ORDERS**

Plaintiff's counsel to reimburse Activision and Rockstar for the reasonable attorneys' fees and costs they have incurred throughout their litigation of this case in an amount to be determined by the Court based on supplemental briefing.

Defendants therefore **SHALL FILE** documentation supporting their reasonable fees and costs <u>on or before August 11, 2022</u>, and Procopio **MAY FILE** an optional response limited to challenging the fees and costs Defendants claim <u>on or before August 25, 2022</u>. Upon submission of these briefs, the Court will take the fee issue under consideration on the papers without oral argument.

**IT IS SO ORDERED.**

Dated:  July 12, 2022

Honorable Todd W. Robinson
United States District Judge